1  ROBERT W. BROWNLIE (Bar No. 138793)
   robert.brownlie@dlapiper.com
2  JENNIFER M. FELDMAN (Bar No. 216645)
   jennifer.feldman@dlapiper.com
3  DLA PIPER LLP (US)
   401 B Street, Suite 1700
4  San Diego, CA  92101-4297
   Tel:   619.699.2700
5  Fax:   619.699.2701

6  Attorneys for Defendants
   SouthWest Water Company, Anton C. Garnier,
7  Mark A. Swatek, Cheryl L. Clary, and Peter J.
   Moerbeek

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12  ROBERT G. PERRIN and DIANE L. PERRIN, Individually and on Behalf of All Others Similarly Situated, | CASE NO.  2:08-cv-07844-JHN-AGRx |
| 13 | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| 14        Plaintiffs, | |
| 15        v. | |
| 16  SOUTHWEST WATER COMPANY, *et. al.*, | Date:        April 19, 2010 |
| 17        Defendants. | Time:        9:30 am<br>Judge:       Hon. Jacqueline H. Nguyen<br>Courtroom: 1600 |
| 18 | |

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ............................. 1

II.  STATEMENT OF UNDISPUTED FACTS ................................................. 3

III. SUMMARY JUDGMENT IS APPROPRIATE ............................................. 4

IV.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
     THE SECTION 11 CLAIM BECAUSE THE UNDISPUTED FACTS
     SHOW THAT PLAINTIFFS LACK STANDING ......................................... 5

V.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
     THE SECTION 15 CLAIM BECAUSE THE SECTION 11 CLAIM
     FAILS ............................................................................................................. 7

VI.  CONCLUSION ............................................................................................. 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

CASES

*Abbey v. Computer Memories, Inc.*,
634 F. Supp. 870 (N.D. Cal. 1986) ................................................................................. 5, 6, 7

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......................................................................................................... 4

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......................................................................................................... 4

*Fischman v. Raytheon Mfg. Co.*,
188 F.2d 783 (2d Cir. 1951) .............................................................................................. 5

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983) .......................................................................................................... 5

*Hertzberg v. Dignity Partners*,
191 F.3d 176 (9th Cir. 1999) ............................................................................................ 5

*In re Apple Computer Sec. Litig.*,
886 F.2d 1109 (9th Cir. 1989) .......................................................................................... 4

*In re Exodus Comm., Inc. Sec. Litig.*,
No. C 01-2661, 160, 163, 2005 WL 1869289, at *44 (N.D. Cal. Aug. 5, 2005) .................... 7

*In re National Golf Properties, Inc.*,
No. CV 02-1383, 2003 WL 23018761 (C.D. Cal. Mar. 19, 2003) ........................................ 5

*Kirkwood v. Taylor*,
590 F. Supp. 1375 (D. Minn. 1984) ............................................................................... 4, 7

*Krim v. pcOrder, Inc.*,
402 F.3d 489 (5th Cir. 2005) ............................................................................................ 5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .......................................................................................................... 4

*Persky v. Turley*,
Nos. CIV 88-1830, CIV 88-2089, 1991 WL 327434 (D. Ariz. Dec. 19, 1991) ................. 6, 7

*Shapiro v. UJB Financial Corp.*,
964 F.2d 272 (3d. Cir. 1992) ............................................................................................ 6

*Topalian v. Ehrman*,
954 F.2d 1125 (5th Cir. 1992) .......................................................................................... 4

DLA PIPER LLP (US)
SAN DIEGO

WEST\21859479.1

NO. 2:08-cv-07844-JHN-AGRx

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES
## (continued)

Page

STATUTES

15 U.S.C. § 77k(a) ................................................................................................ 5

15 U.S.C. § 77o ..................................................................................................... 7


OTHER AUTHORITIES

Fed. R. Civ. P. 56(c) ............................................................................................. 4

SEC Rule 144 ............................................................................................. 1, 2, 3, 4

Securities Act § 11 ........................................................................................ passim

Securities Act § 15 ................................................................................... 1, 5, 7

DLA PIPER LLP (US)
SAN DIEGO

WEST\21859479.1

NO. 2:08-cv-07844-JHN-AGRx

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Claim I of the Consolidated Amended Complaint ("CAC") alleges a violation of Section 11 of the Securities Act of 1933 (the "Securities Act"), which imposes liability for false statements made in a registration statement.  A registration statement is a document filed with the United States Securities and Exchange Commission (the "SEC") pursuant to which a company registers stock that will be offered or sold to the public.  In order for a shareholder to have standing to bring a claim for violation of Section 11, the shareholder must be able to prove that his shares were registered pursuant to the registration statement that he claims contained false statements – i.e., that his shares can be traced to the challenged registration statement.  Here, the indisputable facts establish that Plaintiffs cannot trace their shares back to the challenged registration statements.  Thus, Plaintiffs do not have standing with respect to their Section 11 claim.  Moreover, Claim III of the CAC is a control person claim under Section 15 of the Securities Act.  Liability under Section 15 is predicated on the existence of liability under Section 11. Because Plaintiffs do not have standing with respect to their Section 11 claim (and thus cannot establish Section 11 liability), Plaintiffs' Section 15 claim necessarily fails.  Defendants SouthWest Water Company ("SWWC"), Anton C. Garnier, Peter J. Moerbeek, Mark A. Swatek, and Cheryl L. Clary (collectively herein, the "Defendants"), therefore, now move for partial summary judgment on Claims I and III of the CAC on the grounds that Plaintiffs lack standing to bring a Section 11 claim.

SWWC is a publicly traded company, with nearly 25 million shares of common stock outstanding.  These shares entered the market through 16 registration statements (only two of which Plaintiffs challenge) and through sales of unregistered stock under SEC Rule 144.  SWWC also has various stock plans pursuant to which it issues common stock.  SWWC's transfer agent establishes common stock reserves for shares to be issued pursuant to these stock plans.  The

1    shares placed in the reserves include shares that became registered under the

2    Securities Act under a variety of different registration statements and unregistered

3    shares that became freely tradable under SEC Rule 144.  Because the shares of

4    stock in the reserves are undifferentiated and fungible, it is impossible to determine

5    the origin of any particular share of stock issued pursuant to a stock plan or to trace

6    a particular share of stock to a specific registration statement.

7         The Plaintiffs asserting Section 11 claims allege that they purchased SWWC

8    stock through one such stock plan – SWWC's Amended and Restated Dividend

9    Reinvestment and Stock Purchase Plan (the "DRIP Plan").  The DRIP Plan permits

10   an SWWC shareholder to elect to use a dividend declared by SWWC to purchase

11   SWWC common stock rather than receiving the dividend in cash.  Shares issued

12   pursuant to the DRIP Plan are drawn from the reserves discussed in the preceding

13   paragraph.  Thus, while on April 5, 2005 and April 19, 2006, SWWC filed

14   registration statements for certain shares associated with the DRIP Plan (the "DRIP

15   Registration Statements"), such shares were placed in the general reserve pool

16   (together with shares registered pursuant to other registration statements) and the

17   actual shares purchased by Plaintiffs pursuant to the DRIP Plan are not necessarily

18   those shares that were registered pursuant to the DRIP Registration Statements.  In

19   fact, the shares received by Plaintiffs pursuant to the DRIP Plan could have come

20   from shares previously registered in any number of SWWC's 16 registration

21   statements or become freely tradable under other means, such as Rule 144.

22        Plaintiffs' Section 11 claims, however, are based only on statements in the

23   two DRIP Registration Statements.  Since Plaintiffs cannot trace their SWWC stock

24   to the DRIP Registration Statements, they do not have standing to assert Section 11

25   claims.

26        For these reasons, as detailed below, Defendants respectfully request that

27   partial summary judgment be entered on Claims I and III of the CAC.

28   /////

## II.   STATEMENT OF UNDISPUTED FACTS

SWWC uses a transfer agent to facilitate and keep records of the transfer of its shares.  (Declaration of DeLise Keim in Support of Motion for Partial Summary Judgment ("Keim Decl."), ¶ 3.)   BNY Mellon acts as the Company's transfer agent.  (Keim Decl. ¶ 4; *see also* Declaration of James Kirkland in Support of Motion for Partial Summary Judgment ("Kirkland Decl."), ¶ 2.)  As SWWC's transfer agent, BNY Mellon processes all stock transfer requests, produces daily stock transfer journals, maintains shareowner records and outstanding share figures, and resolves shareholders' inquiries.  (Kirkland Decl., ¶ 2.)

SWWC has 24,875,369 shares of common stock outstanding (as of October 31, 2009, as reported in its most recent quarterly report [Form 10-Q] filed with the SEC) and an average daily trading volume that exceeds 100,000 shares per day.  (Keim Decl., ¶ 3.)  Since 1999, SWWC has issued a total of sixteen registration statements.  (Keim Decl., ¶ 5, Ex. A.)

As SWWC's transfer agent, BNY Mellon establishes common stock reserves for shares to be issued pursuant to SWWC's various stock plans.  (Kirkland Decl., ¶ 3.)  The pools of shares placed in reserve include shares that became registered under the Securities Act under a variety of different registration statements and unregistered shares that became freely tradable under SEC Rule 144.  (*Id.* at ¶ 3.)  Because the shares of stock are undifferentiated and fungible, it is impossible to determine the origin of any particular share of stock within a pool or to trace a particular share of stock to a specific registration statement.  (*Id.*)  The inability to trace a particular share of stock to a specific registration statement is not unique to SWWC and is typical of publicly traded companies.  (*Id.*)

SWWC issues dividends to its shareholders.  (Keim Decl., ¶ 6.)  At the times relevant to this case, shareholders had the option of receiving a cash dividend or participating in the Company's DRIP Plan.  (*Id.*)  If shareholders elected to participate in the DRIP Plan, in lieu of receiving a cash dividend, that dividend was

1   used to purchase shares of SWWC common stock at the market price for the shares

2   on the investment date, or in certain instances as detailed in the terms of the DRIP

3   Plan, at a discount.  (*Id.* at ¶ 7.)

4   　　　When a shareholder elected to participate in the DRIP Plan, and a dividend

5   was to be paid, SWWC communicated to BNY Mellon the amount of the cash

6   dividend due the shareholder.  (*Id.* at ¶ 8.)

7   **III.   SUMMARY JUDGMENT IS APPROPRIATE**

8   　　　Summary judgment is appropriate when there is no genuine issue as to any

9   material fact and the moving party is entitled to judgment as a matter of law.  *See*

10   Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

11   (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *In re Apple Computer*

12   *Sec. Litig.*, 886 F.2d 1109, 1112 (9th Cir. 1989).  A defendant satisfies its summary

13   judgment burden where evidence negates the existence of a material element of a

14   claim or where no evidence supports an essential element of the claim.  *Celotex*,

15   477 U.S. at 323-25.

16   　　　The burden then shifts to the plaintiff to demonstrate that summary judgment

17   should not be granted.  *Id*.  To meet this burden, the plaintiff "must do more than

18   simply show that there is some metaphysical doubt as to material facts."

19   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The

20   plaintiff may not merely rest upon the pleading allegations or upon other

21   unsupported assertions, but must designate specific evidence to show a genuine

22   issue of material fact.  *See Celotex*, 477 U.S. at 324; *see also Topalian v. Ehrman*,

23   954 F.2d 1125, 1131 (5th Cir. 1992). Where, as here, a plaintiff fails to raise a

24   genuine issue of material fact as to his standing to sue, summary judgment for the

25   defendants is appropriate.  *See Kirkwood v. Taylor*, 590 F. Supp. 1375, 1380-83

26   (D. Minn. 1984) (granting summary judgment to defendants where plaintiffs could

27   not demonstrate standing to sue under Section 11 of the Securities Act).

28   /////

As will be shown below, Defendants are entitled to summary judgment as a matter of law on the Section 11 and 15 claims because Plaintiffs lack standing to sue.

## IV.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE SECTION 11 CLAIM BECAUSE THE UNDISPUTED FACTS SHOW THAT PLAINTIFFS LACK STANDING

Section 11 of the Securities Act affords a remedy to civil litigants for materially false or misleading statements or omissions made in a registration statement accompanying a public stock offering. 15 U.S.C. § 77k(a).  Liability under Section 11 is broad, requiring Plaintiffs to prove only that they purchased securities from the allegedly false and misleading registration statement.  *In re National Golf Properties, Inc.*, No. CV 02-1383, 2003 WL 23018761, at *1 (C.D. Cal. Mar. 19, 2003), citing *Hertzberg v. Dignity Partners,* 191 F.3d 176, 180-82 (9th Cir. 1999).  Thus, Section 11 provides virtual absolute liability, as Plaintiffs are not required to demonstrate scienter or reliance.  *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 (1983); *Krim v. pcOrder, Inc.*, 402 F.3d 489, 495 (5th Cir. 2005).

While Section 11 affords an extraordinary remedy, this remedy is expressly restricted to the "narrow class of persons" consisting of "those who purchased securities that are the direct subject of the prospectus and registration statement." *Krim*, 402 F.3d at 495, citing *Fischman v. Raytheon Mfg. Co.*, 188 F.2d 783, 786-87 (2d Cir. 1951).  In limiting standing to "any person acquiring such security," Congress specifically conferred standing on a subset of security owners and acknowledged that, in providing such an expansive remedy, it is critical to narrow the class of persons to whom such a remedy is available to only those who can trace their stock directly to the challenged registration statement.  *Krim*, 402 F.3d at 495.

Summary judgment is appropriate here because it is indisputable that Plaintiffs cannot trace their shares to the DRIP Registration Statements as they are required to do.  *See Abbey v. Computer Memories, Inc.*, 634 F. Supp. 870, 876

(N.D. Cal. 1986) (motion for summary judgment granted where defendant demonstrated it would be impossible for plaintiff to trace his shares to the registration statement at issue.)   In *Abbey*, the Court addressed the issue of whether defendants were entitled to judgment as a matter of law because plaintiffs could not fulfill the tracing requirement under Section 11.  *Id.* at 872.  The defendants submitted affidavits indicating that it was impossible for plaintiffs to show that their stock came from the offering at issue.  *Id.* at 873.  The Court granted the defendants' motion for summary judgment as it was satisfied that no genuine issue of fact existed as to the tracing issue because it was indisputable that the plaintiffs were unable to trace their shares to the challenged registration statement and offering.  *Id.* at 876.

In cases involving Section 11 claims in the context of dividend reinvestment plans, courts have indicated that where plaintiffs can prove no set of facts that could entitle them to relief, summary judgment is appropriate.  *See Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 286 (3d. Cir. 1992) (denying *motion to dismiss* on section 11 claim because at some point the plaintiffs may be able to establish that their dividend reinvestment shares are traceable to the registration statement at issue); *Persky v. Turley*, Nos. CIV 88-1830, CIV 88-2089, 1991 WL 327434, at *7 (D. Ariz. Dec. 19, 1991) (denying motion to dismiss section 11 claim but noting that before the plaintiffs would be able to recover, they would have to trace their dividend reinvestment shares to the registration statement at issue, and stating that arguments that plaintiffs cannot trace their stock are best made in a motion for summary judgment).

To establish standing on their Section 11 claim, Plaintiffs must trace their shares to the specific DRIP Registration Statements that they claim were false. Despite Plaintiffs' allegation that they purchased shares "pursuant to" or "traceable to" the DRIP Registration Statements, the undisputed facts show that Plaintiffs will not be able to trace their shares to those registration statements because: (1) shares

1   other than those issued in the DRIP Registration Statements entered the public

2   market prior to the DRIP Registration Statements (Keim Decl. ¶ 5, Ex. A), and

3   (2) the SWWC stock received by Plaintiffs under the DRIP Plan was held by the

4   Company's transfer agent in undifferentiated pools of shares not tied to particular

5   offerings or registration statements.  (Kirkland Decl. ¶ 3.)  As evidenced in the

6   declarations provided herewith, Plaintiffs cannot trace their shares to the particular

7   registration statements from which they originated.  The DRIP Registration

8   Statements were not initial offerings, and there were already existing shares in the

9   market and in the transfer agent's reserve funds at the time those registration

10  statements were filed.  Accordingly, Plaintiffs, and even the transfer agent, have no

11  way of tracing the shares received by Plaintiffs here to any particular registration

12  statement.  Because the undisputed facts show that Plaintiffs cannot trace their

13  shares to the DRIP Registration Statements upon which Defendants' liability here

14  would be based, summary judgment is appropriate.  *Kirkwood*, 590 F. Supp. at

15  1380-83; *Abbey*, 634 F. Supp. at 876; *Persky*, 1991 WL 327434, at *7.

16  **V.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
        THE SECTION 15 CLAIM BECAUSE THE SECTION 11 CLAIM
17      FAILS**

18          Section 15 imposes secondary liability for violations of the Securities Act on

19  person who, directly or indirectly, control any person liable under the Securities

20  Act.  15 U.S.C. § 77o.  Unless the alleged controlled person is liable, the control

21  person can have no liability under Section 15.  *In re Exodus Comm., Inc. Sec. Litig.*,

22  No. C 01-2661, 160, 163, 2005 WL 1869289, at *44 (N.D. Cal. Aug. 5, 2005).  The

23  undisputed facts demonstrate that Plaintiffs cannot establish a claim under Section

24  11, and thus summary judgment is appropriate on both the Section 11 claim and the

25  Section 15 claim.

26  /////

27  /////

28  /////

1    **VI.**    **CONCLUSION**

2        For the reasons set forth above, Defendants respectfully request that the

3   Court grant this motion for partial summary judgment.

4

   Dated:  January 12, 2010        DLA PIPER LLP (US)

5

6                        */s/ Robert W. Brownlie*

7                        Robert W. Brownlie
                       Jennifer M. Feldman

8                        401 B Street, Suite 1700
                       San Diego, CA  92101-4297
                       Telephone:  619 699-2700

9                        Facsimile:   619 699-2700

10                       Attorneys for Defendants
                      SouthWest Water Company, Anton C. Garnier,

11                      Mark A. Swatek, Cheryl L. Clary, and Peter J.
                     Moerbeek

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-8-