1  Glancy Binkow & Goldberg LLP
   Lionel Z. Glancy (#134180)
2  1801 Avenue of the Stars, Suite 311
   Los Angeles, California 90067
3  Telephone: (310) 201-9150
   Facsimile: (310) 201-9160
4  info@glancylaw.com

5  Cohen Milstein Sellers & Toll PLLC
   Daniel S. Sommers (*pro hac vice*)
6  1100 New York Avenue, N.W.
   Suite 500, West Tower
7  Washington, DC  20005
   Telephone:  (202) 408-4600
8  Facsimile:    (202) 408-4699
   dsommers@cohenmilstein.com
9
   *Co-Lead Counsel for Lead Plaintiffs and the Class*
10
   [Additional counsel located on signature page]
11

12                 UNITED STATES DISTRICT COURT

13                 CENTRAL DISTRICT OF CALIFORNIA

14

15  Robert G. Perrin and Diane L. Perrin      Case No.  2:08-CV-07844-JHN-AGRx
    Individually and on Behalf of All
16  Others Similarly Situated,                **OPPOSITION OF LEAD
                                              PLAINTIFFS TO DEFENDANT
17                  Plaintiffs,               SOUTHWEST WATER
                                              COMPANY'S, ANTON C.
18  v.                                        GARNIER'S, MARK A. SWATEK'S,
                                              CHERYL L. CLARY'S, AND
19  SouthWest Water Co., *et. al.*,           PETER J. MOERBEEK'S MOTION
                                              TO DISMISS CONSOLIDATED
20                  Defendants.               AMENDED CLASS ACTION
                                              COMPLAINT
21
                                              Date:        May 10, 2010 (*Scheduled*)
22                                                         May 17, 2010 (*Proposed*)
                                              Time:        2:00 p.m.
23                                            Judge:       Hon. Jacqueline H. Nguyen
                                              Courtroom:   1600
24

25

26

27

28

Cohen Milstein
Sellers & Toll
PLLC
Attorneys At Law

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION...................................................................................1

II.   FACTUAL BACKGROUND .................................................................3

III.  ARGUMENT .........................................................................................5

      A.   Legal Standard ..........................................................................5

      B.   The Complaint Adequately Alleges Each False and/or
           Misleading Statement ................................................................7

      C.   The Complaint Adequately Alleges Scienter .......................... 10
           1.   GAAP Violations and the Magnitude of the Restatement
                Support a Strong Inference of Scienter................................... 11
           2.   The Lack of Internal Controls Supports a Strong
                Inference of Scienter............................................................... 14
           3.   Numerous Additional Red Flags Support a Strong
                Inference of Scienter............................................................... 16
           4.   False Certifications Support a Strong Inference of
                Scienter.................................................................................... 19
           5.   Confidential Witness Allegations and the Fact that the
                Accounting Fraud Related to Business Activities Central
                to SouthWest's Business Support a Strong Inference of
                Scienter.................................................................................... 20
           6.   Motive Allegations Support a Strong Inference of Scienter..... 22
           7.   The Complaint Alleges Scienter Against Each Defendant....... 24

      D.   The Complaint Adequately Alleges Control Person Liability ........... 25

IV.   CONCLUSION ................................................................................... 25

COHEN MILSTEIN
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Adaptive Broadband Sec. Litig.*,
   No. C 01-1092, 2002 U.S. Dist. LEXIS 5887 (N.D. Cal. Apr. 2, 2002) ........... 25

*In re Am. Serv. Group, Inc.*,
   No. 06-0323, 2009 U.S. Dist. LEXIS 28237 (M.D. Tenn. Mar. 30, 2009) ....... 17

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ...................................................................... 7

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
   324 F. Supp. 2d 474 (S.D.N.Y. 2004) .................................................. 15

*Atlas v. Accredited Home Lenders Holding Co.*,
   556 F. Supp. 2d 1142 (S.D. Cal. 2008) ................................................ 14

*Backe v. Novatel Wireless, Inc.*,
   642 F. Supp. 2d 1169 (S.D. Cal. 2009) ................................................ 11

*Batwin v. Occam Networks, Inc.*,
   No. 07-2750, 2008 U.S. Dist. LEXIS 52365 (C.D. Cal. July 1, 2008) .. 14, 16, 21

*Bell Atl. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................... 7

*Brown v. Earthboard Sports USA, Inc.*,
   481 F.3d 901 (6th Cir. 2007) .......................................................... 16, 18

*In re Catalina Marketing Corp. Sec. Litig.*,
   390 F. Supp. 2d 1110 (M.D. Fla. 2005) ............................................... 14

*Comm. Workers of Am. Plan for Employees' Pensions & Death Benefits v.
   CSK Auto Corp.*,
   No. 06-1503, 2007 U.S. Dist. LEXIS 22782 (D. Ariz. Mar. 28, 2007) ............ 16

*In re CornerStone Propane Partners, L.P. Sec. Litig.*,
   355 F. Supp. 2d 1069 (N.D. Cal. 2005) ............................................... 23

*In re Cylink Sec. Litig.*,
   178 F. Supp. 2d 1077 (N.D. Cal. 2001) ............................................... 12

*In re Daou Sys., Inc. Sec. Litig.*,
   411 F.3d 1006 (9th Cir. 2005) ...................................................*passim*

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) .......................................................... 25

*In re Exodus Commc'ns, Inc. Sec. Litig.*,
   No. C-01-2661, 2005 U.S. Dist. LEXIS 34449 (N.D. Cal. Sept. 12, 2005) ........ 7

COHEN MILSTEIN
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW

ii

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

*In re Friedman's, Inc. Sec. Litig.*,
  385 F. Supp. 2d 1345 (N.D. Ga. 2005) ............................................................ 16

*Glazer Capital Mgmt., LP v. Magistri*,
  549 F.3d 736 (9th Cir. 2008) ......................................................................... 19

*Glover v. DeLuca*,
  No. 03-0288, 2006 U.S. Dist. LEXIS 76093 (W.D. Pa. Sept. 29, 2006) ........... 17

*In re Hansen Natural Corp. Sec. Litig.*,
  527 F. Supp. 2d 1142 (C.D. Cal. 2007) ........................................................... 16

*In re Health Mgmt., Inc. Sec. Litig.*,
  970 F. Supp. 192 (E.D.N.Y. 1997) ................................................................. 19

*Howard v. Everex Sys.*,
  228 F.3d 1057 (9th Cir. 2000) ....................................................................... 25

*In re Impax Lab., Inc. Sec. Litig.*,
  No. 04-04802, 2007 U.S. Dist. LEXIS 52356 (N.D. Cal. July 18. 2007) ........... 11

*Institutional Investors Group v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009) .......................................................................... 14

*Kaltman v. Key Energy Servs.*,
  447 F. Supp. 2d 648 (W.D. Tex. 2006) ............................................................ 8

*In re Lattice Semiconductor Corp. Sec. Litig.*,
  No. 04-1255, 2006 U.S. Dist. LEXIS 262 (D. Or. Jan. 3, 2006) ................ 11, 19

*In re Leslie Fay Cos. Inc.*,
  871 F. Supp. 686 (S.D.N.Y. 1995) ................................................................. 19

*In re McKesson HBOC, Inc. Sec. Litig.*,
  126 F. Supp. 2d 1248 (N.D. Cal. 2000) ......................................................... 12

*Metzer Inv. GMBH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ...................................................................... 23

*In re MicroStrategy Inc. Sec. Litig.*,
  115 F. Supp. 2d 620 (E.D. Va. 2000) ............................................................. 13

*Middlesex Ret. Sys. v. Quest Software Inc.*,
  527 F. Supp. 2d 1164 (C.D. Cal. 2007) ................................................ 13, 14, 19

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp. ("America West")*,
  320 F.3d 920 (9th Cir. 2003) .................................................................... 22, 23

*Norfolk County Ret. Sys. v. Ustian*,
  No. 07-7014, 2009 U.S. Dist. LEXIS 65731 (N.D. Ill. July 28, 2009) ............. 16

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004) ....................................................................... 24

COHEN MILSTEIN
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW

iii

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

*In re OCA, Inc.*,
  No. 05-2165, 2006 U.S. Dist. LEXIS 90854 (E.D. La. Dec. 14, 2006)............. 19

*In re Omnivision Techs.*,
  No. C-04-2297, 2005 U.S. Dist. LEXIS 16009 (N.D. Cal. July 29, 2005)........ 25

*In re PainCare Holdings. Sec. Litig.*,
  541 F. Supp. 2d 1283 (M.D. Fl. 2007) ....................................................... 15, 19

*In re Petco Animal Supplies Inc. Sec. Litig.*,
  No. 05-CV-0823-H, 2006 U.S. Dist. LEXIS 97927 (S.D. Cal. July 31,
  2006) ................................................................................................................ 25

*In re ProQuest Sec. Litig.*,
  527 F. Supp. 2d 728 (E.D. Mich. 2007) ............................................................ 18

*Ramirez v. City of Buena Park*,
  560 F.3d 1012 (9th Cir. 2009) .......................................................................... 25

*In re Rent-Way Sec. Litig.*,
  209 F. Supp. 2d 493 (W.D. Pa. 2002) ............................................................... 14

*Rubke v. Capitol Bancorp, Ltd.*,
  551 F.3d 1156 (9th Cir. 2009) ............................................................................ 6

*S. Ferry LP, #2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) ....................................................... 11, 17, 21, 22

*In re Secure Computing Corp.*,
  184 F. Supp. 2d 980 (N.D. Cal. 2001) ............................................................... 23

*In re SeeBeyond Techs. Corp. Sec. Litig.*,
  266 F. Supp. 2d 1150 (C.D. Cal. 2003) .............................................................. 23

*Siracusano v. Matrixx Initiatives, Inc.*,
  585 F.3d 1167 (9th Cir. 2009) ..................................................................... 22, 23

*Stocke v. Shuffle Master, Inc.*,
  615 F. Supp. 2d 1180 (D. Nev. 2009) ...................................... 11, 12, 19, 23

*In re Suprema Specialties, Inc. Sec. Litig.*,
  438 F.3d 256 (3d Cir. 2006) ................................................................................ 7

*In re Syncor Int'l Corp. Sec. Litig.*,
  No. 05-55748, 2007 WL 1729968 (9th Cir. Oct. 9, 2007)............................... 23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ........................................................................ 5, 6, 10, 11

*In re Telxon Corp. Sec. Litig.*,
  133 F. Supp. 2d 1010 (N.D. Ohio 2000) .......................................................... 17

*Tsirekidze v. Syntax-Brillian Corp.*,
  No. 07-02204, 2009 U.S. Dist. LEXIS 8464 (D. Ariz. Jan. 30, 2009) ............... 7

COHEN MILSTEIN
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW

iv

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

*In re U.S. Aggregates, Inc. Sec. Litig.*,
    235 F. Supp. 2d 1063 (N.D. Cal. 2002)............................................................ 12

*In re UTStarcom, Inc. Sec. Litig.*,
    617 F. Supp. 2d 964 (N.D. Cal. 2009)........................................................ 11, 23

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    No. 08 Civ. 7422, 2009 U.S. Dist. LEXIS 114819 (S.D.N.Y. Dec. 9,
    2009) ...................................................................................................... 8, 15

*In re Veeco Instruments, Inc. Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006)............................................................ 13, 15


**STATUTES**

15 U.S.C. § 78u-4(b)(1) ............................................................................. 9


**OTHER AUTHORITIES**

17 C.F.R. § 210.4-01(a)(1) ......................................................................... 8

Fed. R. Civ. P. 8............................................................................ 7, 8, 9, 10

Fed. R. Civ. P. 9(b) .................................................................... 6, 8, 9, 10

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

1    **I.    INTRODUCTION**

2          For over three and one-half years, spanning fourteen consecutive financial

3    quarters from January 2005 through June 2008, Defendant SouthWest Water

4    Company ("SouthWest" or the "Company") and certain of its officers and directors

5    repeatedly represented to the investing public that the Company's financial

6    statements were presented in accordance with Generally Accepted Accounting

7    Principles ("GAAP") and were free of any material error.  Certain of these

8    defendants also certified over and over again that SouthWest's internal accounting

9    controls – the very controls and procedures designed to ensure that its financial

10   statements were accurately reported – had no undisclosed material weaknesses.  In

11   fact, each of these statements was utterly and indisputably false at the time it was

12   made and Defendants have now been forced to admit as much.  On November 10,

13   2008, SouthWest finally advised the investing public that it should no longer rely

14   upon SouthWest's previously issued financial statements.  Upon learning of this

15   news, the financial markets reacted immediately and severely.  SouthWest's

16   common stock lost 36% of its value in just one day, falling $2.97 to close at $5.25

17   on extremely heavy volume.  Ultimately, SouthWest admitted that, among other

18   things, it had materially misrepresented the Company's financial condition by

19   improperly capitalizing costs that should have been expensed; failed to eliminate

20   intercompany profits; improperly recognized revenue; and failed to record

21   liabilities.  These failures were no surprise to Defendants as they also admitted that

22   SouthWest "did not maintain an environment that consistently emphasized strict

23   compliance" with GAAP which "in certain instances led to inappropriate

24   accounting decisions and entries."

25          The impact on investors of Defendants' disclosures of SouthWest's actual

26   financial condition was dramatic.  Those who purchased SouthWest stock learned

27   that contrary to SouthWest's prior statements, in fact, the Company's "income" for

28   2004 was virtually non-existent; that retained earnings as of December 31, 2005

COHEN MILSTEIN
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW

- 1 -

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

was actually only $5 million rather than the $22 million Defendants had reported; that the figure for 2006 retained earnings was overstated by over 328%, $27 million instead of $6.3 million; and that retained earnings for 2007 had been overstated by over 504%, $13.3 million rather than $2.2 million.  Indeed, with the exception of 2007, Defendants' accounting errors falsely portrayed SouthWest as a profitable company when it was not.

The damage caused to investors simply was not and cannot plausibly be explained as the result of mere innocent error.  The sheer magnitude of the misstatements, the repeated nature of the accounting errors spanning over years and the simplicity of the accounting principles involved – including clear and long-standing principles of cost accounting and revenue recognition – undercut any inference of innocence.  Likewise, the fact that ***virtually every one of the accounting errors cut in favor of SouthWest*** by inflating its financial results is further powerful evidence that the false statements were made either knowingly or recklessly.  Finally, any inference of innocence is put to rest by Defendants' own admissions that its internal accounting controls were inadequate.  Defendants ultimately admitted that the Company had material weaknesses in ***fifteen distinct areas***, demonstrating that SouthWest's financial reporting environment lacked any semblance of controls to ensure the investing public that Defendants had any basis in fact to represent that its financial statements were fairly presented in accordance with GAAP.

In the face of Plaintiffs' detailed allegations, Defendants nonetheless seek dismissal principally on two grounds.  First, they claim that the Complaint somehow does not fairly identify which statements are alleged to be false.  Second, they assert that the Complaint fails to allege that Defendants acted with the mental state of scienter.  Neither argument has merit.

As demonstrated below, the Complaint identifies each of the false statements Plaintiffs allege to be actionable.  Defendants' contention that they are somehow in

COHEN MILSTEIN
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW

- 2 -

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

1   the dark on this point is not only belied by the Complaint which assiduously details
2   each false statement and the reasons supporting why it was false at the time made,
3   but also by the very fact that they have already publicly admitted and identified
4   each of their false statements.  It simply is not credible for them to now contend that
5   they do not know what this case is about.

6       The Complaint further sets forth powerful allegations that this massive,
7   protracted and self-serving accounting fraud – perpetrated in an environment
8   functionally devoid of any meaningful financial controls – was not the product of
9   simple incompetence by Defendants – two of whom were themselves experienced
10  accountants.  The multiple facts evidencing Defendants' knowing or reckless
11  conduct – when considered collectively – easily satisfy the pleading standards set
12  forth by the Supreme Court and the Ninth Circuit.  Accordingly, the motion to
13  dismiss should be denied in its entirety.

14  **II.    FACTUAL BACKGROUND**

15      This is a securities class action on behalf of all persons or entities who
16  acquired SouthWest stock between May 10, 2005 and November 10, 2008 (the
17  "Class Period") against SouthWest and certain of its officers and directors and
18  affiliates.  ¶ 1.[1]  SouthWest provides water, wastewater treatment, and public works
19  in nine states.  ¶ 28.  Defendant Anton Garnier was the CEO and Chairman of
20  SouthWest's Board of Directors until his resignation on May 15, 2006.  ¶ 29.
21  Defendant Mark Swatek became the CEO when Garnier resigned and remains in
22  that position today.  ¶ 30.  Defendant Cheryl Clary, a certified public accountant,
23  was the Company's Senior Vice President of Finance and Chief Financial Officer
24  during the Class Period.  ¶ 31.  Defendant Moerbeek was SouthWest's President
25  and Chief Operating Officer and has been a certified public accountant for over
26  thirty years.  ¶ 32.[2]

27  [1] All citations herein in the format "¶ __" are to Plaintiffs' Consolidated Amended Class Action Complaint.
28  [2] Together, Garnier, Swatek, Clary, and Moerbeek are the "Individual Defendants."

COHEN MILSTEIN
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW

- 3 -

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

1    Defendants continuously presented a highly favorable picture of the
2    Company's financial condition, results of operations, and internal controls.  ¶¶ 240-
3    404.  For example, Defendants claimed that SouthWest had experienced
4    incremental quarterly increases in operating income during each of the first three
5    quarters of each of the respective fiscal years during the Class Period and had
6    achieved sequential growth in annual reserves during that time.[3]  Also, in each
7    quarter during the Class Period, Defendants stated that SouthWest's internal
8    controls suffered from no material weaknesses or that all material weaknesses had
9    been disclosed.[4]  Defendants also repeatedly claimed that the Company's financial
10   statements had been prepared in accordance with GAAP.[5]

11   As Defendants were eventually forced to admit, their financial statements
12   were false at the time they were made and the claimed financial performance was
13   dramatically overstated.  On November 10, 2008, the Company announced that its
14   financial statements for 2005, 2006, and 2007, and the first two quarters of 2008
15   could no longer be relied upon and would be restated.  ¶¶ 4, 405-06.  The Company
16   acknowledged that it had committed widespread accounting errors and made
17   "inappropriate accounting decisions" over the previous years, which had inflated
18   the Company's financial results.  ¶¶ 3, 171, 406.  Specifically, Defendants
19   capitalized costs that should have been expensed, failed to eliminate intercompany
20   profits, under-appreciated assets, recognized revenue on the cash basis instead of
21   the accrual basis, failed to account for existing liabilities, and improperly accounted
22   for acquisitions, among other violations of GAAP.  ¶¶ 2, 127-61, 239.  The
23   Company also revealed that its financial internal controls "system" had suffered
24   from *fifteen* material weaknesses during the Class Period, each of which went to the
25   very core of its financial reporting, including that it "did not maintain an

26   ---
[3] ¶¶ 17, 240, 242, 252, 254, 262, 264, 275, 277, 284, 293, 295, 302, 306, 315, 318,
27   329, 331, 340, 342, 349, 351, 357, 360, 367, 369, 382, 385, 393, 396.
[4] ¶¶ 244-45, 256-57, 266-67, 281-87, 297-99, 308-10, 320-22, 334-36, 344-46, 353-
28   55, 362-64, 375-78, 387-90, 398-400.
[5] ¶¶ 241, 253, 263, 276, 294, 305, 317, 330, 341, 350, 359, 371, 384, 395.

COHEN MILSTEIN
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW

- 4 -

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

1  environment that consistently emphasized strict adherence to generally accepted

2  accounting principles." ¶¶ 3, 171.[6]  This revelation was striking given that Clary,

3  Garnier, and Swatek repeatedly signed certifications required by the Sarbanes-

4  Oxley Act ("SOX") representing they had designed internal controls, had recently

5  evaluated those controls, and that the controls were effective.  ¶¶ 104-07, 166.

6        The effects of the Company's financial restatement ("Restatement") were

7  staggering.  Revenue was adjusted downward for each of the years 2004, 2005,

8  2006, and 2007.  ¶ 55.  Operating income, net income, and income from continuing

9  operations were all drastically cut for the years 2004, 2005, and 2006.[7]  *Id.*  For

10  example, the Restatement turned nearly $2.4 million of 2005 net income into a

11  $397,000 *loss* for that year.  *Id.*  Income from continuing operations was also

12  adjusted downward for the first and second quarters of 2008.  ¶¶ 60-61.  Retained

13  earnings for 2005, 2006, and 2007 were each drastically cut: from $22.2 million to

14  $5 million for 2005, from $27 million to $6.3 million for 2006, and from $13.3

15  million to $2.2 million for 2007.  ¶¶ 62-64.  Finally, net cash for 2006 and 2007

16  were reduced to only 21% and 26% of their previously reported levels, respectively.

17  ¶¶ 65-66.

18  **III.   ARGUMENT**

19        **A.     Legal Standard**

20        The Supreme Court's decision in *Tellabs, Inc. v. Makor Issues & Rights,*

21  *Ltd.,* 551 U.S. 308 (2007), reaffirms that, even in securities fraud cases, courts must

22  accept the factual allegations in a plaintiff's complaint as true and draw all

23  reasonable inferences in the plaintiff's favor on a motion to dismiss.  *See id.* at 322.

24        To establish a claim under Section 10(b) and Rule 10-b(5), a plaintiff must

25  _____

26  [6] Significantly, the absence of internal controls existed throughout the Class Period.
¶ 171 (noting that the internal control deficiencies resulted in the adjustments to
financial statements dating throughout the Class Period).

27  [7] These figures were adjusted upward for 2007, but only because of the reversal of

28  an unusually large $17.3 million goodwill impairment charge taken in the fourth
quarter of that year.  ¶ 55.

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

1   demonstrate (1) a misrepresentation or omission of material fact, (2) scienter, (3) a

2   connection with the purchase or sale of a security, (4) transaction and loss

3   causation, and (5) economic loss.  *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006,

4   1014 (9th Cir. 2005).  Rule 9(b) and the Private Securities Litigation Reform Act

5   ("PSLRA") require a complaint to "plead with particularity both falsity and

6   scienter[.]"  *Id*. at 1014-15.

7       To plead scienter, the Complaint must create a strong inference that

8   Defendants acted knowingly or with deliberate recklessness.  *See id*. at 1014-15.

9   "[C]ourts must consider the complaint in its entirety . . . . The inquiry . . . is

10  whether *all* of the facts alleged, taken collectively, give rise to a strong inference of

11  scienter, not whether any individual allegation, scrutinized in isolation, meets that

12  standard."  *Tellabs*, 551 U.S. at 322-23.  A strong inference of scienter arises if,

13  "[w]hen the allegations are accepted as true and taken collectively," a reasonable

14  person would "deem the inference of scienter at least as strong as any opposing

15  inference[.]"  *Id*. at 324.  The "inference that the defendant acted with scienter need

16  not be irrefutable, *i.e*., of the 'smoking-gun genre,' or even the 'most plausible of

17  competing inferences.'"  *Id*. at 324.

18      "No scienter is required for liability under § 11; defendants will be liable for

19  innocent or negligent material misstatements or omissions."  *Daou*, 411 F.3d at

20  1027.  "The plaintiff in a § 11 claim must demonstrate (1) that the registration

21  statement contained an omission or misrepresentation, and (2) that the omission or

22  misrepresentation was material, that is, it would have misled a reasonable investor

23  about the nature of his or her investment."  *Id*.  Significantly, "the heightened

24  pleading requirements of the PSLRA do not apply to section 11 claims."  *Rubke v.

25  Capitol Bancorp, Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009).[8]  Instead, in ruling on a

26  ─────────────────────────

[8] Defendants wrongly contend that the Section 11 claims "sound in fraud," and that
27  Rule 9(b)'s particularity requirements are therefore applicable (Memo. of Points &
    Auth. in Supp. of Mot. to Dismiss Consolidated Amended Class Action Complaint
28  ("SW Br."), at 5-6), despite the fact that Plaintiffs have explicitly averred that these
    claims are not premised on fraud and have instead plead ordinary negligence.  ¶¶

COHEN MILSTEIN
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW

- 6 -

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

1    motion to dismiss, a court should not require "heightened fact pleading of specifics,

2    but only enough facts to state a claim to relief that is plausible on its face."  *Bell Atl.*

3    *v. Twombly*, 550 U.S. 544, 570 (2007).  *Twombly*'s requirement of "facial

4    plausibility" is satisfied "when the plaintiff pleads factual content that allows the

5    court to draw the reasonable inference that the defendant is liable for the

6    misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Even after

7    *Twombly* and *Iqbal*, the Supreme Court did not impose a heightened pleading

8    standard for claims subject to Rule 8 (such as Section 11 claims).  *See Twombly*,

9    550 U.S. at 569 n.14.

    **B.**    **The Complaint Adequately Alleges Each False and/or Misleading**
10
             **Statement**
11
12           To satisfy the PSLRA, a complaint alleging securities fraud must "specify

13    each statement alleged to have been misleading, the reason or reasons why the

14    statement is misleading, and, if an allegation regarding the statement or omission is

15    made on information and belief, the complaint shall state with particularity all facts

16    on which that belief is formed."  *See Daou*, 411 F.3d at 1014.  In this case, the

17    Restatement serves as an admission that the Company's financial information and

18    its statements about its internal controls and GAAP compliance were materially

19

20    197, 208; *see In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270-72 (3d
     Cir. 2006) ("[W]here, as here, individual defendants are accused in separate claims
21    of the same complaint of having violated Section 11 . . . and Section 10(b), the
     Securities Act claims do not sound in fraud if ordinary negligence is expressly pled
22    in connection with those claims."); *In re Exodus Commc'ns, Inc. Sec. Litig.*, No. C-
     01-2661, 2005 U.S. Dist. LEXIS 34449, at *3-5 (N.D. Cal. Sept. 12, 2005).  In
23    addition, by pleading the Section 11 allegations before and wholly apart from the
     Section 10(b) allegations, Plaintiffs have "carefully segregated" those allegations.
24    *See Suprema*, 438 F.3d at 273 ("Plaintiff carefully segregated its allegations of
     negligence . . . from its allegations of fraud . . . by pleading its Section 11 . . .
25    claims in negligence before – and wholly apart from – pleading its fraud-based
     Section 10(b) claims. This manner of pleading makes for a clear conceptual
26    separation in the complaint between claims sounding in negligence and those
     sounding in fraud."); *Tsirekidze v. Syntax-Brillian Corp.*, No. 07-02204, 2009 U.S.
27    Dist. LEXIS 8464, at *21-22 (D. Ariz. Jan. 30, 2009) (applying *Suprema* even
     where plaintiffs relied on same facts to support Section 10(b) and Section 11
28    claims); *see also In re Exodus*, 2005 U.S. Dist. LEXIS 34449, at *4-5.

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

1    false.[9]

2           The Complaint easily meets the PSLRA pleading standard.  For each of the

3    fourteen quarters covered by the Class Period, the Complaint identifies the false and

4    misleading statements made therein and explains why each statement is false and/or

5    misleading.  For example, with respect to the allegations regarding statements made

6    during the first quarter of 2005, the Complaint alleges statements made by

7    Defendants describing SouthWest's financial results and claiming that the

8    Company's financial statements had been prepared in accordance with GAAP.  ¶¶

9    240-42.  The Complaint then explains that those statements were false and

10   misleading because "the Company's financial results materially misstated revenues,

11   operating income, net income, earnings per share, and stockholders' equity, in

12   violation of GAAP, which in turn materially misstated the company's statements of

13   financial condition and cash flows."  ¶ 243.  The Complaint next quotes statements

14   by Defendants Garnier and Clary claiming that all material weaknesses in internal

15   controls had been identified.  ¶ 244.  The Complaint explains that such statements

16   were false because they "failed to disclose that there were several other material

17   weaknesses in internal controls, as enumerated [elsewhere in the Complaint]."  ¶

18   245.  The Complaint's additional allegations of false and misleading statements are

19   structured in the same manner as this example.  ¶¶ 244-403; *see* Appendix A

20   (Structure of Complaint's Allegations of False and Misleading Statements Under

21   the Exchange Act).[10]

22   ---

[9] *See* 17 C.F.R. § 210.4-01(a)(1) ("Financial statements filed with the Commission
23   which are not prepared in accordance with generally accepted accounting principles
     will be presumed to be misleading or inaccurate[.]"); *Kaltman v. Key Energy Servs.*,
24   447 F. Supp. 2d 648, 658 (W.D. Tex. 2006) ("[The company's] announcement of
     the need to restate its earnings constitutes an admission that its public filings are
25   false."); *see also Varghese v. China Shenghuo Pharm. Holdings, Inc.*, No. 08 Civ.
     7422, 2009 U.S. Dist. LEXIS 114819, at *17 (S.D.N.Y. Dec. 9, 2009)
26   ("Misreported financial information clearly amounts to a false statement of fact.").
     [10] It is not clear whether Defendants are challenging the false statements pled under
27   Section 11.  ¶¶ 93-108.  Notably, Defendants do not point to any Section 11
     allegations that they consider to be deficient.  *See* SW Br. at 8 (citing only to ¶¶
28   240-403, which concern the Section 10(b) claims).  In any event, the Section 11
     allegations are sufficient under both the Rule 8 and Rule 9(b) pleading standards.

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

1    Defendants raise a series of boilerplate objections to Plaintiffs' falsity

2    allegations but fail to explain how those objections are applicable here.  Defendants

3    accuse Plaintiffs of "puzzle style pleading," yet tellingly, Defendants do not

4    identify *any* specific allegations that are in any way problematic.  *See* SW Br. at 8

5    (merely citing to ¶¶ 240-403 generally).  Therefore, Plaintiffs and the Court can

6    only guess about which allegations Defendants believe to be deficient.  In any

7    event, as the example above shows, the Complaint's allegations are fully compliant

8    with the PSLRA.  Moreover, as Defendants have admitted that SouthWest's

9    financial statements were materially false and identified the specific portions of the

10   financial statements that were false, it is not credible for them to now argue they are

11   unable to discern which statements are alleged to be actionable.

12    Defendants are also wrong in claiming that the Complaint does not

13   adequately explain why the various statements were false, SW Br. at 8, as the

14   example above plainly demonstrates.  Indeed, for every group of false statements

15   alleged, the Complaint explains in great detail the reasons why the statements are

16   false.[11]  No more is required by the PSLRA.  *See* 15 U.S.C. § 78u-4(b)(1).

17    Defendants also argue that the Restatement does not establish the falsity of

18   financial information that was left unchanged by the Restatement nor of "soft" (*i.e.*,

19   non-financial) information.  SW Br. at 9.  This argument is a non-starter.  First,

20   Plaintiffs do not contend that any portion of the financial statements that was not

21   restated was false or misleading.  Further, Defendants do not explain which

22   statements in the Complaint they consider "soft information" nor do they identify

23   even a single statement that the Complaint alleges to be false which the

24

25   The Complaint alleges with particularity numerous untrue statements of material
     fact that appeared in SouthWest's registration statements and explains why each
26   was untrue and material, ¶¶ 93-108, which is more than adequate to satisfy Rule
     9(b) as well as the lesser Rule 8 standard.  *See Daou*, 411 F.3d at 1028.
27   [11] Each of these paragraphs informs Defendants of the specific reasons why each
     statement was false.  *See, e.g.*, ¶¶ 243, 245, 255, 257, 265, 268, 278-80, 283, 285,
28   287, 296, 299, 307, 310, 319, 322, 332-33, 336, 343, 346, 352, 355, 361, 364, 372-
     74, 378, 386, 390, 397, 400.

COHEN MILSTEIN
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW

- 9 -

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

1   Restatement did not actually establish as false.  If by "soft information," they are

2   referring to the statements claiming the financials were prepared in accordance with

3   GAAP or the statements purporting to identify all material weaknesses in internal

4   controls, those were certainly rendered false by the Restatement.  The Restatement

5   was premised on the occurrence of gross GAAP violations and the Restatement

6   conceded that such violations had occurred, ¶¶ 116-61, 171, 174-78, rendering false

7   Defendants' statements[12] that the financials were compliant with GAAP.  Also, the

8   Restatement identified *fifteen* material weaknesses that had not been previously

9   disclosed, ¶¶ 67-68, 171, which rendered false Defendants' earlier statements[13] that

10  all material weaknesses had been disclosed or that the controls were effective.[14]

11          **C.      The Complaint Adequately Alleges Scienter[15]**

12          The inquiry as to whether "*all* of the facts alleged, collectively, give rise to a

13  strong inference of scienter . . . is inherently comparative." *Tellabs*, 551 U.S. at

14  322-23.  "[A] court must consider plausible, nonculpable explanations for the

15  defendant's conduct, as well as inferences favoring the plaintiff" and "[t]he

16  inference that the defendant acted with scienter need not be . . . the most plausible

17  of competing inferences[.]"  *Id*. at 324.

18          As discussed below, the evidence supporting scienter is overwhelming: the

19  enormity of the accounting errors and GAAP violations that persisted for years, the

20  simplicity of the accounting rules that were violated, the sheer number of

21  accounting errors, the near total lack of internal controls, the fact that almost all the

22  errors favored the Company, the numerous red flags including letters from the SEC

23  ---

[12] ¶¶ 241, 253, 263, 276, 294, 305, 317, 330, 341, 350, 359, 371, 384, 395.
[13] ¶¶ 244-45, 256-57, 266-67, 281-87, 297-99, 308-10, 320-22, 334-36, 344-46, 353-55, 362-64, 375-78, 387-90, 398-400.
[14] Defendants also take issue with the Complaint's use of block quotes, arguing that the Complaint does not indicate which statements within the block quotes are alleged to be false.  Defendants point to no specific block quote that they find problematic, and even a quick look at the Complaint shows their argument is meritless.
[15] Scienter is not an element of Plaintiffs' Section 11 claims, regardless of whether Rule 8 or Rule 9(b) governs that claim's pleading standard.  *See Daou*, 411 F.3d at 1027.

OPPOSITION TO MOTION TO DISMISS CONSOLIDATED AM. CLASS ACTION COMPLAINT

questioning the Company's accounting, Defendants' false certifications in which they admitted knowledge on these subjects, corroboration by a confidential witness, Defendants' positions and accounting sophistication and the importance of the transactions at issue, and Defendants' incentive compensation and insider trading. Taken together, these facts create a strong inference that each of the Defendants knew their statements were false when made, or were utterly reckless in not so knowing, which easily outweighs any conceivable non-culpable inference.

Defendants have not endeavored to weigh competing inferences, nor have they even presented a non-culpable inference. Instead, Defendants repeatedly claim that each of Plaintiffs' scienter allegations is insufficient, by itself, to raise a strong inference. In doing so, Defendants ignore *Tellabs*'s command to look at scienter allegations "holistically" – not to "scrutinize each allegation in isolation[.]" *Id.* at 326; *accord S. Ferry LP, #2 v. Killinger*, 542 F.3d 776, 784-85 (9th Cir. 2008) ("*Tellabs* counsels us to consider the totality of circumstances, rather than to develop separately rules of thumb for each type of scienter allegation."). Each of the scienter allegations discussed below provides support for a strong inference of scienter and, when considered together, are more than sufficient to meet the PSLRA standard, as courts have repeatedly held in cases involving similar facts as here.[16]

### 1.    GAAP Violations and the Magnitude of the Restatement Support a Strong Inference of Scienter

---

[16] *See, e.g., Stocke v. Shuffle Master, Inc.*, 615 F. Supp. 2d 1180, 1188-93 (D. Nev. 2009) (strong inference of scienter as to false financial statements was established where Plaintiffs pled GAAP violations, false SOX certifications, and weak internal controls); *Backe v. Novatel Wireless, Inc.*, 642 F. Supp. 2d 1169, 1187 (S.D. Cal. 2009) (scienter established based on defendants' positions within company, small size of company, violation of basic GAAP, lack of internal controls, stock sales, and corroboration by confidential witness); *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 973-77 (N.D. Cal. 2009) (scienter established by overstated revenue, GAAP violations, awareness of internal control problems, resignations, and stock sales); *In re Impax Lab., Inc. Sec. Litig.*, No. 04-04802, 2007 U.S. Dist. LEXIS 52356, at *20-32 (N.D. Cal. July 18. 2007) (scienter established by GAAP violations, resignations, importance of business area to company); *In re Lattice Semiconductor Corp. Sec. Litig.*, No. 04-1255, 2006 U.S. Dist. LEXIS 262, at *33-56 (D. Or. Jan. 3, 2006) (scienter established by GAAP violations, Defendants' access to information about financial data, SOX certifications).

COHEN MILSTEIN
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW

- 11 -

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

The numerous and blatant GAAP violations alleged in the Complaint provide support for a strong showing that Defendants acted knowingly or recklessly with respect to the accounting fraud.  Although GAAP violations are insufficient to establish scienter *on their own*, the Ninth Circuit has squarely held that "[v]iolations of GAAP standards can [] provide evidence of scienter." *Daou*, 411 F.3d at 1016; *accord In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1273 (N.D. Cal. 2000) ("When significant GAAP violations are described with particularity in the complaint, they may provide powerful indirect evidence of scienter.  After all, books do not cook themselves."); *In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077, 1082 (N.D. Cal. 2001); *Stocke*, 615 F. Supp. 2d at 1189-90.[17]  In the Complaint, Plaintiffs set forth the Company's improper accounting practices, the GAAP provisions that were violated, the amount of the improper accounting and fiscal periods affected, and the impact of the improper accounting on each affected financial statement.  ¶¶ 51-66, 116-78.

The GAAP violations alleged in the Complaint are especially probative of scienter because they were of basic accounting principles, they were pervasive in that they affected several different areas of the Company's business, they were numerous, and they occurred repeatedly over a long period of time.  Notably, Defendants do not argue that the applicable accounting rules were complex or that the violations were not obvious, nor could they.  Defendants violated several basic and longstanding GAAP rules[18] pertaining to the timing of the depreciation of expenses, the need to record revenue[19] under the accrual basis rather than the cash

---

[17] Defendants have not cited any authority to contradict this principle. *In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d 1063, 1073 (N.D. Cal. 2002) simply held that a GAAP violation is not necessarily sufficient to establish scienter on its own.  Also, in *U.S. Aggregates* and unlike here, the GAAP violations alleged in the Complaint were not solely responsible for the magnitude of the restatement. *Id.*

[18] Most of these rules have been in place for decades. *See* Declaration of Michael Goldberg, Ex. A at 1-1 (FASCON 1, issued 1978); Ex. B at 5-1 (FASCON 5, issued 1984); Ex. C at 6-1 (FASCON 6, issued 1985); Ex. C at 5-1 (SFAS 5, issued 1975); Ex. D at 57-1 (SFAS 57, issued 1982); Ex. E at 71-1 (SFAS 71, issued 1982); Ex. F at 141-1 (SFAS 141, issued 2001).

[19] "[C]ourts have recognized that accounting manipulations involving premature

COHEN MILSTEIN
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW

- 12 -

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

basis, capitalization of assets, and accounting for intercompany transactions, among other rules. *See, e.g.*, ¶¶ 11, 134, 36. Moreover, the accounting errors were massive and dated from 2004 through the second quarter of 2008. ¶¶ 55-61. That Defendants violated these several basic provisions of GAAP, and for so long, supports an inference that their conduct was knowing or, at minimum, reckless. *See In re MicroStrategy Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 635-36 (E.D. Va. 2000) (scienter properly pled where complaint detailed "the magnitude of the restated financials and the pervasiveness and repetitiveness of . . . GAAP violations; the simplicity of the accounting principles violated . . . and the importance of the contracts involved").

Particularly revealing is the fact that almost all of the accounting errors *favored* the Company and served to inflate its financial results. ¶¶ 127-61 (describing seven types of errors, only one of which – goodwill accounting – underreported results). If the accounting errors were merely inadvertent, one would expect roughly equivalent numbers of "harmful" and "helpful" errors. But here, almost all of the errors led to *upward* adjustments to the Company's financials. ¶¶ 55, 59-61. A statistical anomaly such as this is the fingerprint of intentional misconduct. In *Middlesex Retirement System v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1181-82 (C.D. Cal. 2007), the court held that the complaint adequately pled that the defendants had intentionally back-dated stock options where those options had suspiciously been granted on dates that "reflect either the lowest prices for a period exceeding six months, or are prices that immediately preceded rapid increases in the price of [the Company's stock]." The court held that such "extremely fortunate dates give rise to a strong inference that backdating has occurred and that it was done intentionally." *Id.* at 1182. As in *Middlesex*, here it

---

revenue recognition . . . are especially indicative of conscious misbehavior since such violations do not commonly occur inadvertently, but instead suggest a conscious decision to improperly recognize revenue." *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 231-32 (S.D.N.Y. 2006).

COHEN MILSTEIN
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW

- 13 -

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

is "highly improbable that a failure to comprehend the proper accounting treatment . . . would so consistently benefit Defendants." *Id.* at 1183.

In addition, the sheer magnitude of the Restatement is also strong evidence that Defendants knew, or were reckless in not knowing, that the accounting was flawed.  As an indication of magnitude, practically all of the 2004 income was wiped out by the Restatement, shareholder equity as of December 31, 2005 was reduced from $22.2 million to $5.0 million, 2006 retained earnings were reduced from $27 million to $6.3 million, and 2007 retained earnings were reduced from $13.3 million to $2.2 million.  ¶¶ 10, 55-66.  In other words, Defendants had overstated the 2006 and 2007 retained earnings by over 328% and 504%, respectively.  Defendants also falsely represented that SouthWest was profitable in 2005, 2006, and for the first two quarters of 2008, when it was not.  The enormity of the Restatement is highly probative of scienter. *See Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 271 (3d Cir. 2009) ("the magnitude of the alleged [accounting errors] strengthens the inference of scienter").[20]

### 2. The Lack of Internal Controls Supports a Strong Inference of Scienter

During the Class Period, the Company suffered from a near total lack of internal controls over its financial reporting.  In conjunction with the Restatement, the Company belatedly identified *fifteen* material weaknesses that each went to the very core of its financial reporting, including that it "did not maintain":

- "an effective control environment";
- "an environment that consistently emphasized strict adherence to generally

---

[20] *See also Atlas v. Accredited Home Lenders Holding Co.*, 556 F. Supp. 2d 1142, 1156 (S.D. Cal. 2008) ("[T]he sizable impact on [the company's] reported earnings of these alleged violations of GAAP also supports an inference of scienter."); *Batwin v. Occam Networks, Inc.*, No. 07-2750, 2008 U.S. Dist. LEXIS 52365, at *37-38 (C.D. Cal. July 1, 2008) (overstatement of revenues by over 30 and 40% "over an extended period of time" – two and a half years – gives "rise to a strong inference of scienter"); *In re Catalina Marketing Corp. Sec. Litig.*, 390 F. Supp. 2d 1110 (M.D. Fla. 2005) (overstatement of income by 43% supports inference of scienter); *In re Rent-Way Sec. Litig.*, 209 F. Supp. 2d 493, 506-07 (W.D. Pa. 2002).

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

accepted accounting principles";
- "complete and accurate business documentation to support certain transactions and accounting records";
- "effective monitoring of controls over [several] areas";
- "sufficient and consistent accounting policies with respect to generally accepted accounting principles";
- "effective controls over the application of generally accepted accounting principles commensurate with financial reporting requirements";
- "effective controls over the completeness and accuracy of our accounting for acquisitions";
- "effective controls over the completeness, accuracy and valuation of our accounting estimates related to [various] claims process[es]";
- "effective controls over the completeness and accuracy of our accounting for the impairment of goodwill";
- "effective controls over the completeness and accuracy of our accounting for regulated entities";
- "effective controls over the completeness and accuracy of property, plant and equipment and related depreciation expense";
- "effective controls over the completeness and accuracy of unbilled utilities revenue"; and
- "effective controls to ensure the completeness of the recording of [various expenses] on a timely basis," among others. ¶ 171.

In short, SouthWest effectively had no internal controls.

"[A] failure to maintain sufficient internal controls to avoid fraud is sufficiently indicative of scienter."  *Veeco*, 235 F.R.D. at 232; *accord China Shenghuo*, 2009 U.S. Dist. LEXIS 114819, at *21.  Here. Defendants knew or recklessly disregarded that their accounting was flawed and could not be trusted. At minimum, Defendants were willfully blind to the numerous accounting violations.  *See In re PainCare Holdings. Sec. Litig.*, 541 F. Supp. 2d 1283, 1293 (M.D. Fl. 2007) (holding that lack of internal controls showed, at least, that "Defendants took great care *not* to 'know' [of fraud]" and rejecting idea that "a Company can ignore the elephant in the room, as long as no one *told* them it was there"), *adopted by district court*, 541 F. Supp. 2d 1283, 1286 (2008); *In re Atlas*

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

1 | *Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 492 n.9 (S.D.N.Y.

2 | 2004) ("[T]he allegations concerning deficient internal controls bolster[] the other

3 | factual allegations in the Complaint that tend to show that the individual defendants

4 | recklessly issued the company's financial statements.").[21]

5 |     The lack of internal controls is especially probative here, where Defendants

6 | understood that internal control deficiencies existed yet failed to correct them.  ¶¶

7 | 420-21, 430-31; *see Batwin*, 2008 U.S. Dist. LEXIS 52365, at *40-41 (failure to

8 | correct internal control deficiencies that had been brought to the attention of the

9 | defendants gave rise to a strong inference of scienter).  Also, the degree to which

10 | Defendants' statements about internal controls were false is evidence that

11 | Defendants knew those statements were false; it is one thing to claim that internal

12 | controls are effective when one or two problems exist, but it is quite another to do

13 | so when there are *fifteen* pervasive material weaknesses.

14 |            **3.**    **Numerous Additional Red Flags Support a Strong Inference of Scienter**

15 |

16 |     In addition to the sheer magnitude of the accounting errors and internal

17 | control deficiencies, there were several other red flags that support a strong

18 | inference of scienter.  *See Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901,

19 | 918 (6th Cir. 2007) ("Specific factual allegations that a defendant ignored red flags,

20 | or warning signs that would have revealed the accounting errors prior to their

21 | inclusion in public statements, may support a strong inference of scienter.").[22]

22 | [21] The cases cited by Defendants on this point, at best, hold that a lack of internal controls, without additional facts, is not necessarily sufficient on its own to show

23 | scienter.  *See In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1158 (C.D. Cal. 2007) ("[W]ithout additional facts, a lack of internal controls generally

24 | does not suffice to show scienter."); *Comm. Workers of Am. Plan for Employees' Pensions & Death Benefits v. CSK Auto Corp.*, No. 06-1503, 2007 U.S. Dist.

25 | LEXIS 22782, at *27 (D. Ariz. Mar. 28, 2007) ("Without [supporting] facts, a lack of internal controls generally does not suffice to show scienter.").  These cases do

26 | not suggest that detailed allegations of deficient internal controls are not sufficient, especially when combined with other scienter allegations, as here.

27 | [22] *See also In re Friedman's, Inc. Sec. Litig.*, 385 F. Supp. 2d 1345, 1361 (N.D. Ga. 2005); *Norfolk County Ret. Sys. v. Ustian*, No. 07-7014, 2009 U.S. Dist. LEXIS

28 | 65731, at *24-35 (N.D. Ill. July 28, 2009) (red flags contributed to strong inference

Cohen Milstein
Sellers & Toll
PLLC
Attorneys At Law

- 16 -

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

1    During the Class Period, the Company reported different financial data to

2 various state regulatory agencies than it did in its SEC filings.  ¶ 422.  In one

3 instance, the Company was asked to explain the discrepancy in its reports of

4 depreciation accounting.  ¶ 423.  Although the Company claimed that different

5 accounting rules were applicable to the two filings, it also admitted that there were

6 "no depreciation studies  . . . justifying the depreciation rates used by the

7 Company."  ¶ 424.  Significantly, the Restatement was based in part on errors in

8 depreciation accounting and the Company identified internal control weaknesses in

9 that specific area.  ¶¶ 127-36, 171(13).[23]

10    Defendants Clary and SouthWest also received warnings from the SEC that

11 went directly to reporting and accounting issues surrounding the Restatement.  ¶¶

12 428-29.  In particular, in an October 12, 2006 letter, the SEC questioned

13 SouthWest's report of a $15.7 million increase in revenue and concluded that "the

14 disclosure of your revenue recognition between affiliates is unclear."  ¶ 428.

15 Despite this warning, Defendants continued to improperly recognize revenue

16 between affiliates.  ¶¶ 142-47. [24]

---

17 of scienter); *In re Am. Serv. Group, Inc.*, No. 06-0323, 2009 U.S. Dist. LEXIS

18 28237, at *146-47 (M.D. Tenn. Mar. 30, 2009) (red flags established strong
inference of scienter); *In re Telxon Corp. Sec. Litig.*, 133 F. Supp. 2d 1010, 1030

19 (N.D. Ohio 2000) ("[A]llegations of obvious 'red flags,' or warning signs that
financial reports are misstated, can, where the misstatements are of a substantial

20 magnitude, give rise to a strong inference of fraudulent intent.")
[23] Defendants challenge these allegations based on the fact that the Company was

21 asked about the accounting discrepancy towards the end of the Class Period.  SW
Br. at 17.  However, the Company provided the different financial data to state

22 regulators in June 2007.  ¶ 423.  Therefore, well before the end of the Class Period,
the Company was presenting inconsistent financial information – information now

23 admitted to be false.  Defendants also argue that the Complaint does not specifically
allege that Defendants knew about the discrepancy.  SW Br. at 17.  However,

24 knowledge about such a critical part of the Company's business as an application
for a rate increase is presumed by high-level Company officials such as the

25 Individual Defendants.  *See South Ferry LP v. Killinger*, 542 F.3d 776, 784 (9th
Cir. 2008).

26 [24] *Glover v. DeLuca*, No. 03-0288, 2006 U.S. Dist. LEXIS 76093 (W.D. Pa. Sept.
29, 2006), cited by Defendants, is factually dissimilar.  There, the court held that

27 "based on the content of the letters between the SEC and [the defendants,]" the
court was unable to draw an inference of scienter because there was "no factual

28 support for Plaintiff's speculation" that the SEC was concerned about improper
acquisition accounting.  *Id.* at *46-47.  Here, the SEC specifically questioned the

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

1   These red flags did not go unnoticed by Defendant Swatek, in particular, as

2   he acknowledged many of the internal control problems during the Class Period.

3   For example, on March 16, 2007, Swatek acknowledged that the Company's

4   acquisition spree had led to accounting systems problems.  Swatek stated that the

5   Company was using "11 different ledgers in five billing systems all with numerous

6   manual interfaces" which he noted was "clearly inefficient[.]"  ¶ 420.  He also

7   stated that the Company was "manually working our way through numbers to close

8   each month and each quarter and annually."  *Id*.  After the Class Period, Swatek

9   made similar statements about the prior state of the Company, noting that

10  SouthWest had been "a confederation of acquired companies" each with their "own

11  accounting practices and policies[.]"  ¶ 421.[25]  Furthermore, shortly before the Class

12  Period, the Company disclosed internal control weaknesses in areas that ultimately

13  proved to be subjects of the Restatement, demonstrating that Defendants were

14  aware of such weaknesses at the start of the Class Period.  ¶¶ 430-31.

15  Defendants try to minimize the warning signs by arguing that they merely

16  show corporate mismanagement, but not scienter.  SW Br. at 15.  Although one or

17  two internal control deficiencies might only suggest negligence, *fifteen* deficiencies

18  are highly indicative of extreme recklessness or intentional misconduct.  Also,

19  Defendants' argument is belied by their SOX certifications, discussed below, in

20  which Clary, Garnier, and Swatek represented that they were knowledgeable about

21  the state of internal controls.  *Cf. In re ProQuest Sec. Litig.*, 527 F. Supp. 2d 728,

22  745 (E.D. Mich. 2007) ("[Defendants] cannot have it both ways. They cannot say

23  that the SOX certifications concerning knowledge of and adequacy of internal

24  controls were truthful, yet, at the same time claim that the controls were so deficient

25  that one 'rogue' employee could single-handedly be the cause of all the company's

26

27  Company's accounting, so the letter is necessarily relevant to what Defendants
    knew, or were reckless in not knowing, about the Company's flawed accounting.
28  [25] Nevertheless, the accounting errors alleged in the Complaint took place at the
    corporate level, not at the subsidiaries' levels.  ¶ 54.

COHEN MILSTEIN
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

accounting problems.").[26]

### 4.     False Certifications Support a Strong Inference of Scienter

Clary's, Garnier's, and Swatek's false certifications[27] under Sections 302 and 906 of SOX provide further support of a strong inference that they acted knowingly or recklessly.  *See Stocke*, 615 F. Supp. 2d at 1190; *Middlesex*, 527 F. Supp. 2d at 1189-90 ("For these certifications to have any substance, signatories to the certifications must be held accountable for the statements."); *Lattice*, 2006 U.S. Dist. LEXIS 262, at *47-51.

Here, Clary, Garnier, and Swatek each filed certifications that they knew or recklessly disregarded were false when signed.  These certifications asserted that the financial statements were accurate, that the signing officers had designed internal controls to ensure that material information was made known to the officers, and that the officers had evaluated the effectiveness of the internal controls.  ¶¶ 104-07, 166.  Moreover, they certified that all material weaknesses had been disclosed or that internal controls were effective.  These statements were false. Defendants knew or were reckless in not knowing about the control deficiencies. Given the magnitude of the internal control problems, the numerous red flags, and Swatek's statements acknowledging these problems, the Defendants who signed SOX certifications were at least "severely reckless in certifying the accuracy of the financial statements." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 747 (9th Cir. 2008); *see also In re OCA, Inc.*, No. 05-2165, 2006 U.S. Dist. LEXIS 90854, at *75 (E.D. La. Dec. 14, 2006) (finding support for scienter where

---

[26] Moreover, several courts have expressly rejected Defendants' argument that the failure to respond to red flags constitutes mere negligence, SW Br. at 15.  *See, e.g., In re Health Mgmt., Inc. Sec. Litig.*, 970 F. Supp. 192, 203 (E.D.N.Y. 1997) ("[T]he allegations of [the defendant's] ignorance of all of these red flags present evidence of its fraudulent intent"); *In re Leslie Fay Cos. Inc.*, 871 F. Supp. 686, 699 (S.D.N.Y. 1995), *modified on other grounds*, 918 F. Supp. 749 (1996) ("[W]hile [the defendant's] ignorance of warning signs might in one sense demonstrate it was merely negligent, allegations that, with gross recklessness, [the defendant] ignored multiple 'red flags' could reasonably support an inference that [the defendant] acted with intent."); *Paincare*, 541 F. Supp. 2d at 1293.

[27] ¶¶ 104-07, 244, 256, 266, 281, 297, 308, 320, 334, 344, 353, 362, 375, 387, 398.

COHEN MILSTEIN
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW

- 19 -

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

1  defendants certified controls were effective while at the same time failing to

2  disclose internal control problems).

3          5.      **Confidential Witness Allegations and the Fact that the**
                   **Accounting Fraud Related to Business Activities Central to**
4                  **SouthWest's Business Support a Strong Inference of**
                   **Scienter**
5

6          The Complaint alleges statements by a confidential witness ("CW1") that

7  corroborate the other scienter allegations and support a strong inference that

8  Defendants acted knowingly or recklessly.  CW1 was formerly an internal control

9  information systems consultant at SouthWest, whose duties including assessing the

10 state of the Company's policies and procedures relating to SOX compliance.  ¶ 441-

11 42.  According to CW1, SouthWest did not maintain documented policies and

12 procedures and, critically, the Company knew that such policies and procedures

13 were necessary for SOX compliance.  ¶ 444.  CW1 recognized that SouthWest

14 would have problems justifying its accounting, would have a hard time forecasting

15 expenses and determining financial data for various accounts, and would be unable

16 to determine whether its acquisitions resulted in a profit or loss.  ¶ 446-48.  CW1

17 attended meetings along with Swatek and Clary to discuss the numerous problems

18 and delays encountered in Project Cornerstone, which ostensibly aimed to improve

19 SouthWest's internal controls.  ¶¶ 31-32; 449-52.[28]

20         These allegations meet the PSLRA pleading standard because CW1 is

21 described with sufficient particularity to establish his or her reliability and personal

22 knowledge and CW1's statements are themselves indicative of scienter.  *See Daou*,

23 411 F.3d at 1015-16.  CW1's position, experience, and duties are described in the

24 Complaint which is sufficient to establish CW1's reliability and personal

25 _____

26 [28] Defendants argue that the mere existence of the Cornerstone project negates an
   inference of scienter.  SW Br. at 20.  However, the Complaint alleges that,
27 according to CW1, SouthWest's management was "neither concerned with, nor did
   they have an interest in, establishing SOX compliance procedures" and that the
28 Company therefore failed to provide the time or resources necessary to make the
   project successful.  ¶ 452.

COHEN MILSTEIN
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW

- 20 -

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

1  knowledge. ¶¶ 441-42; *see Daou*, 411 F.3d at 1016 (describing witnesses' job

2  description and responsibility sufficient to meet PSLRA pleading standard). CW1

3  has decades of experience in his or her field and was the person "responsible for

4  assessing and consulting for SOX compliance at SouthWest." ¶ 442. CW1 also

5  personally attended meetings with Swatek and Clary, giving CW1 personal

6  knowledge about information imparted to Swatek and Clary at those meetings. ¶¶

7  449, 451. Defendants' argument that CW1 is not a reliable witness because he or

8  she is neither an accountant nor a financial statement auditor, SW Br. at 19, ignores

9  CW1's experience and role at the Company.

10      Defendants also claim that CW1 joined SouthWest too late in the Class

11  Period to provide relevant information. SW Br. at 19-20. Actually, CW1 joined

12  SouthWest in April 2008, seven months before the Class Period ended and before

13  several of Defendants' false statements were made. ¶¶ 380-400, 441. Accordingly,

14  CW1 was well-positioned to possess the knowledge attributed to CW1.

15      A strong inference of scienter is also supported because the transactions and

16  business activities that form the basis of the restated financial statements relate to

17  SouthWest's core operations and the acquisitions it undertook during the Class

18  Period. Indeed, the Ninth Circuit recently emphasized that "the core-operations

19  inference can be one relevant part of a complaint that raises a strong inference of

20  scienter." *South Ferry*, 542 F.3d at 784; *see also Batwin*, 2008 U.S. Dist. LEXIS

21  52365, at*34 (roles of officers particularly significant at small company of 80-100

22  employees). Here, each of the Individual Defendants was a high-ranking Company

23  officer who regularly dealt with the issues addressed by the Restatement, as

24  evidenced by their signatures on SEC filings and their statements during conference

25  calls. ¶¶ 29-32. The Complaint alleges that only 25 employees worked at the

26  corporate headquarters where the Company's accounting for many of the

27  Restatement areas was performed. ¶¶ 453, 455. The Complaint also alleges that

28  the Restatement areas consist of the largest assets and central businesses of the

COHEN MILSTEIN
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW

- 21 -

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

1   Company.  ¶ 454.  For example, the Company's largest asset, by far, was its

2   property, plant, and equipment, ¶¶ 49, 454, depreciation of which was materially

3   understated throughout the Class Period, ¶¶ 127-36, 191.  As a result, these facts

4   strongly support the inference that each of the Defendants knew or recklessly

5   disregarded the false financial statements.[29]

6           **6.      Motive Allegations Support a Strong Inference of Scienter**

7           The Complaint alleges numerous motives to commit fraud, each of which

8   contributes to a strong inference of scienter.  *See Siracusano v. Matrixx Initiatives*,

9   *Inc.*, 585 F.3d 1167, 1182 (9th Cir. 2009) ("[M]otive can be a relevant

10  consideration, and personal financial gain may weigh heavily in favor of a scienter

11  inference[.]") (quoting *Tellabs*, 551 U.S. at 324).  In particular, a correlation

12  between financial results and stock options or cash bonuses for individual

13  defendants can support a strong inference of scienter.  *No. 84 Employer-Teamster*

14  *Joint Council Pension Trust Fund v. Am. W. Holding Corp. ("America West")*, 320

15  F.3d 920, 944 (9th Cir. 2003).  Motive allegations, however, are not necessary to

16  allege scienter.  *Siracusano*, 585 F.3d at 1182.  Here, the Complaint alleges that

17  Garnier's compensation was tied to SouthWest's financial performance and even

18  alleges the specific breakdown of the performance-based measures, including the

19  percentage of the incentive award attributable to earnings per share and net income

20  targets.  ¶¶ 456-59.  Garnier was eligible to receive cash bonuses of up to *100% of*

21  *his base salary* if the Company met its financial goals.  *Id*.  Significantly, the

22  Company did not meet its financial goals in 2004 (before the Class Period began),

23  

24  ---

[29] Defendants quote *South Ferry* as stating "[w]here a complaint relies on
    allegations that management had an important role in the company but does not
25  contain additional detailed allegations about the defendants' actual exposure to
    information, it will usually fall short of the PSLRA standard."  SW Br. at 20.
26  However, that holding applies only where "reliance on the core-operations
    inference . . . is the only basis for scienter in the complaint."  *South Ferry*, 542 F.3d
27  at 784.  *South Ferry* makes clear that "corporate management's general awareness
    of the day-to-day workings of the company's business" may establish scienter when
28  combined with "other allegations supporting scienter."  *Id*. at 785.  Here, there are
    numerous other allegations supporting scienter, as discussed herein.

COHEN MILSTEIN
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW

- 22 -

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

1    and consequently Garnier lost out on much of his incentive compensation that year.

2    ¶ 456.  During the Class Period however, the Company claimed to have met its

3    financial targets and Garnier therefore received large cash bonuses.  ¶ 457.  These

4    allegations are sufficient to support an inference of scienter.  *See America West*, 320

5    F.3d at 944.[30]

6         Furthermore, the Complaint alleges that Garnier, Moerbeek, and Clary each

7    sold thousands of shares of stock during the Class Period, on suspicious dates, and

8    that such sales were dramatically inconsistent with their pre-Class Period trading.

9    ¶¶ 460-63.  These allegations of insider trading are sufficient to demonstrate a

10   motive to commit fraud.  *See In re Secure Computing Corp.*, 184 F. Supp. 2d 980,

11   989-90 (N.D. Cal. 2001); *In re SeeBeyond Techs. Corp. Sec. Litig.*, 266 F. Supp. 2d

12   1150, 1168-69 (C.D. Cal. 2003) (stock sales contributed to inference of scienter).[31]

13        Defendants claim that some of Garnier's stock sales were made pursuant to a

14   10b5-1 plan, yet that fact is not alleged in the Complaint and Defendants cite to no

15   evidence to support their claim.  Even if Defendants' unsupported assertions are

16   assumed to be true, such a plan would not be relevant at the pleading stage.  *See*

17   *Stocke*, 615 F. Supp. 2d at 1193 ("[A] 10b5-1 trading plan does not provide an

18   absolute defense to a claim of insider trading. Rather, it requires an additional

19   factual finding of good faith. Not only can this Court not make such factual

20   findings when considering a motion to dismiss, but this Court must also draw all

21   inferences in favor of the non-moving party.").[32]

22   ---

[30] The cases cited by Defendants do not support their position on this issue. In *In re*
23   *CornerStone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069 (N.D. Cal.
     2005), the court held that the defendants' bonus incentives, which, as here, were
24   tied in part to net income targets, "squarely contribute to a strong inference of
     scienter[.]"  *Id.* at 1091-92.  Defendants also quote a statement from *In re Syncor*
25   *Int'l Corp. Sec. Litig.*, No. 05-55748, 2007 WL 1729968, at *2 (9th Cir. Oct. 9,
     2007), discussing "[s]tock-based bonuses" which are not at issue here.
26   [31] Defendants correctly note that the Complaint does not allege stock sales by
     Swatek. SW Br. at 22.  However, stock sales are not required to demonstrate
27   scienter.  *See Siacusano*, 585 F.3d at 1182.
     [32] *See also UTStarcom*, 617 F. Supp. 2d at 976 n.16.  Defendants' cited authority is
28   not to the contrary.  *Metzer Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d
     1049, 1067 n.11 (9th Cir. 2008), merely stated, in dicta, that sales according to

COHEN MILSTEIN
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW                                    - 23 -                    OPPOSITION TO MOTION TO DISMISS
                                                                             CONSOLIDATED AM. CLASS ACTION
                                                                             COMPLAINT

1    Defendants also falsely claim that "Plaintiffs have allegedly a past pattern of

2   sales that nullify an inference of scienter" for Moerbeek and Clary.  SW Br. at 23.

3   In fact, the opposite is true.  The Complaint alleges that Moerbeek and Clary sold

4   *no* stock for the two years preceding the Class Period, ¶ 462, which is drastically

5   inconsistent with their Class Period sales.  *See Nursing Home Pension Fund, Local*

6   *144 v. Oracle Corp.*, 380 F.3d 1226, 1232 (9th Cir. 2004) (that the defendant had

7   not sold stock for five years made his class period sales "highly inconsistent with

8   his prior trading history" and supported a strong inference of scienter).

9              **7.      The Complaint Alleges Scienter Against Each Defendant**

10   Defendants raise yet another boilerplate and inapplicable argument by

11   claiming that "Plaintiffs direct their scienter allegations at the collective group

12   instead of each individual," yet Defendants fail to specify even a single example of

13   such a problem.  SW Br. at 12.  The truth is that the Complaint is replete with

14   scienter allegations that identify specific Individual Defendants.[33]  Moreover, some

15   scienter allegations (*e.g.*, the size of the Restatement and the simple nature of the

16   accounting violations) by their very nature are applicable generally, but that does

17   not lessen their relevance.

18   Additionally, Plaintiffs are not seeking to impose liability against individuals

19   based on statements made before they joined the Company or for which they are

20   otherwise not responsible.  Each of the Individual Defendants made false

21   statements, by signing SEC filings and by making statements in conference calls

22   and press releases, and it is irrelevant that they are not each responsible for every

23   false statement that is alleged in the Complaint.

24   Finally, while many courts within the Ninth Circuit have held that the group-

25   published doctrine – which permits an inference that certain documents are the

26   collective work of high-level company officials – remains viable after the

27   _____

predetermined plans "may" rebut an inference of scienter, but did not explain when

28   they would do so nor what showing must be made on a motion to dismiss.
[33] *See, e.g.,* ¶¶ 420-21, 428-29, 432, 440, 451, 456-63.

COHEN MILSTEIN
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW

- 24 -                    OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

1   PSLRA,[34] it is unnecessary to resolve that question because liability here does not

2   depend on that doctrine.  The Complaint identifies the Individual Defendants that

3   signed false SEC filings as well as those who made false statements during

4   conference calls or in press releases.[35]  No more is required.  *See Howard v. Everex*

5   *Sys.*, 228 F.3d 1057, 1061 (9th Cir. 2000); *Adaptive Broadband*, 2002 U.S. Dist.

6   LEXIS 5887, at *56 ("By signing the forms, which are alleged to contain a

7   deliberately reckless and false report of [] revenue, these Defendants have

8   themselves become liable for securities fraud.").

9           **D.**    **The Complaint Adequately Alleges Control Person Liability**

10         Defendants' only argument regarding Plaintiffs' Section 20(a) and 15(a)

11   claims is that the Complaint does not adequately allege a primary violation.  SW

12   Br. at 24.  Because the Complaint adequately alleges primary violations of Section

13   10(b) and Section 11 for the reasons discussed above, the Section 20(a) and 15(a)

14   claims alleging control person liability are sufficiently pled.  ¶¶ 33, 505-08.

15   **IV.**    **CONCLUSION**

16         For all the reasons set forth herein, Plaintiffs respectfully submit that

17   Defendants' motion to dismiss the Complaint should be denied.[36]  In the alternative,

18   Plaintiffs request leave to file and serve an amended complaint to address any

19   deficiencies identified by the Court.  *See Eminence Capital, LLC v. Aspeon, Inc.*,

20   316 F.3d 1048, 1052 (9th Cir. 2003) (adherence to liberal grants of leave to amend

21   is "especially important in the context of the PSLRA").

22

23   [34] *See, e.g.*, *In re Petco Animal Supplies Inc. Sec. Litig.*, No. 05-CV-0823-H, 2006
U.S. Dist. LEXIS 97927, at *46-49 (S.D. Cal. July 31, 2006); *In re Adaptive*
24   *Broadband Sec. Litig.*, No. C 01-1092, 2002 U.S. Dist. LEXIS 5887, at *53-54
(N.D. Cal. Apr. 2, 2002); *In re Omnivision Techs.*, No. C-04-2297, 2005 U.S. Dist.
25   LEXIS 16009, at *16-17 (N.D. Cal. July 29, 2005).
[35] *See, e.g.*, ¶¶ 253, 256, 258, 262.
26   [36] Defendants have not addressed Plaintiffs' contemporaneous trading claim under
Section 20A of the Securities Exchange Act.  ¶¶ 509-15.  Defendants have therefore
27   waived any arguments regarding the sufficiency of this claim.  *See Ramirez v. City*
*of Buena Park*, 560 F.3d 1012, 1025 (9th Cir. 2009) (arguments not raised in
28   opening brief are waived).

COHEN MILSTEIN
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW

- 25 -

OPPOSITION TO MOTION TO DISMISS
CONSOLIDATED AM. CLASS ACTION
COMPLAINT

1    Dated:      March 8, 2010

2                                                  By: _s/Michael Goldberg_____
                                                   Lionel Z. Glancy (#134180)
3                                                  Michael Goldberg (#188669)
                                                   Glancy Binkow & Goldberg LLP
                                                   1801 Avenue of the Stars, Suite 311
4                                                  Los Angeles, California 90067
                                                   Telephone: (310) 201-9150
5                                                  Facsimile: (310) 201-9160
                                                   info@glancylaw.com
6
                                                   Frederick W. Gerkens, III
7                                                  1430 Broadway, Suite 1603
                                                   New York, New York 10018
8                                                  Telephone: (212) 382-2221
                                                   Facsimile: (212) 382-3944
9                                                  fgerkens@glancylaw.com

10                                                 Cohen Milstein Sellers & Toll PLLC
                                                   Daniel S. Sommers (*pro hac vice*)
11                                                 S. Douglas Bunch
                                                   Joshua M. Kolsky
12                                                 1100 New York Avenue, N.W.
                                                   Suite 500, West Tower
13                                                 Washington, DC  20005
                                                   Telephone:   (202) 408-4600
14                                                 Facsimile:    (202) 408-4699
                                                   dsommers@cohenmilstein.com
15
                                                   Co-Lead Counsel for Plaintiffs and the
16                                                 Class

17

18

19

20

21

22

23

24

25

26

27

28

Cohen Milstein
Sellers & Toll
PLLC
Attorneys At Law                 - 26 -         OPPOSITION TO MOTION TO DISMISS
                                                CONSOLIDATED AM. CLASS ACTION
                                                COMPLAINT

**Appendix A: Structure of Complaint's Allegations of False and Misleading Statements under the Exchange Act**

| False and Misleading Statements Relating to the 2005 First Quarter |
| --- |

- Statements relating to financial results and GAAP compliance (¶¶ 240-42)
  - Explanation of falsity (¶ 243)
- Statements relating to internal controls (SOX Certifications) (¶ 244)
  - Explanation of falsity (¶ 245)

| False and Misleading Statements Relating to the 2005 Second Quarter |
| --- |

- Statements relating to financial results and GAAP compliance (¶¶ 252-54)
  - Explanation of falsity (¶ 255)
- Statements relating to internal controls (SOX Certifications) (¶ 256)
  - Explanation of falsity (¶ 257)

| False and Misleading Statements Relating to the 2005 Third Quarter |
| --- |

- Statements relating to financial results and GAAP compliance (¶¶ 262-64)
  - Explanation of falsity (¶ 265)
- Statements relating to internal controls (SOX Certifications) (¶¶ 266-67)
  - Explanation of falsity (¶ 268)

| False and Misleading Statements Relating to the 2005 Fourth Quarter and Year |
| --- |

- Statements relating to financial results and GAAP compliance (¶¶ 275-77)
  - Explanation of falsity (¶¶ 278-80)
- Statements relating to internal controls (SOX Certifications) (¶¶ 281-82)
  - Explanation of falsity (¶ 283)
- Statements relating to Sarbanes-Oxley Act compliance (¶ 284)
  - Explanation of falsity (¶ 285)
- Statements relating to revenues and internal controls (¶ 286)
  - Explanation of falsity (¶ 287)

| False and Misleading Statements Relating to the 2006 First Quarter |
|---|

- Statements relating to financial results and GAAP compliance (¶¶ 293-95)
  - Explanation of falsity (¶ 296)
- Statements relating to internal controls (SOX Certifications) (¶¶ 297-98)
  - Explanation of falsity (¶ 299)

| False and Misleading Statements Relating to the 2006 Second Quarter |
|---|

- Statements relating to financial results and GAAP compliance (¶¶ 302-06)
  - Explanation of falsity (¶ 307)
- Statements relating to internal controls (SOX Certifications) (¶¶ 308-09)
  - Explanation of falsity (¶ 310)

| False and Misleading Statements Relating to the 2006 Third Quarter |
|---|

- Statements relating to financial results and GAAP compliance (¶¶ 315-18)
  - Explanation of falsity (¶ 319)
- Statements relating to internal controls (SOX Certifications) (¶¶ 320-21)
  - Explanation of falsity (¶ 322)

| False and Misleading Statements Relating to the 2006 Fourth Quarter and Year |
|---|

- Statements relating to financial results and GAAP compliance (¶¶ 329-31)
  - Explanation of falsity (¶¶ 332-33)
- Statements relating to internal controls (SOX Certifications) (¶¶ 334-35)
  - Explanation of falsity (¶ 336)

| False and Misleading Statements Relating to the 2007 First Quarter |
|---|

- Statements relating to financial results and GAAP compliance (¶¶ 340-42)
  - Explanation of falsity (¶ 343)
- Statements relating to internal controls (SOX Certifications) (¶¶ 344-45)
  - Explanation of falsity (¶ 346)

| False and Misleading Statements Relating to the 2007 Second Quarter |
|---|

- Statements relating to financial results and GAAP compliance (¶¶ 349-51)
  - Explanation of falsity (¶ 352)
- Statements relating to internal controls (SOX Certifications) (¶¶ 353-54)
  - Explanation of falsity (¶ 355)

| False and Misleading Statements Relating to the 2007 Third Quarter |
|---|

- Statements relating to financial results and GAAP compliance (¶¶ 357-60)
  - Explanation of falsity (¶ 361)
- Statements relating to internal controls (SOX Certifications) (¶¶ 362-63)
  - Explanation of falsity (¶ 364)

| False and Misleading Statements Relating to the 2007 Fourth Quarter and Year |
|---|

- Statements relating to financial results and GAAP compliance (¶¶ 367-71)
  - Explanation of falsity (¶¶ 372-74)
- Statements relating to internal controls (SOX Certifications) (¶¶ 375-77)
  - Explanation of falsity (¶ 378)

| False and Misleading Statements Relating to the 2008 First Quarter |
|---|

- Statements relating to financial results and GAAP compliance (¶¶ 382-85)
  - Explanation of falsity (¶ 386)
- Statements relating to internal controls (SOX Certifications) (¶¶ 387-89)
  - Explanation of falsity (¶ 390)

| False and Misleading Statements Relating to the 2008 Second Quarter |
|---|

- Statements relating to financial results and GAAP compliance (¶¶ 393-96)
  - Explanation of falsity (¶ 397)
- Statements relating to internal controls (SOX Certifications) (¶ 398-99)
  - Explanation of falsity (¶ 400)

**PROOF OF SERVICE BY ELECTRONIC POSTING
PURSUANT TO CENTRAL DISTRICT OF CALIFORNIA
LOCAL RULES AND ECF GENERAL ORDER NO. 08-02
AND BY MAIL ON ALL KNOWN NON-REGISTERED PARTIES**

I, the undersigned, say:

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court. I am over the age of 18 and not a party to the within action. My business address is 1801 Avenue of the Stars, Suite 311, Los Angeles, California 90067.

On March 8, 2010, I caused to be filed the following document by posting such documents electronically to the ECF website of the United States District Court for the Central District of California:

1.  **OPPOSITION OF LEAD PLAINTIFFS TO DEFENDANT SOUTHWEST WATER COMPANY'S, ANTON C. GARNIER'S, MARK A. SWATEK'S, CHERYL L. CLARY'S, AND PETER J. MOERBEEK'S MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

2.  **DECLARATION OF MICHAEL GOLDBERG [EXHIBITS A-G]**

3.  **OPPOSITION OF LEAD PLAINTIFFS TO DEFENDANT SOUTHWEST WATER COMPANY'S, ANTON C. GARNIER'S, MARK A. SWATEK'S, CHERYL L. CLARY'S, AND PETER J. MOERBEEK'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

4.  **DECLARATION OF MICHAEL GOLDBERG [EXHIBITS A-B]**

5.  **PARTIAL OPPOSITION OF LEAD PLAINTIFFS TO DEFENDANT KPMG LLP'S REQUEST FOR JUDICIAL NOTICE**

6.  **STATEMENT OF GENUINE ISSUES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT SOUTHWEST WATER COMPANY'S, ANTON C. GARNIER'S, MARK A. SWATEK'S, CHERYL L. CLARY'S, AND PETER J. MOERBEEK'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

7.  **AFFIDAVIT OF DANIEL S. SOMMERS PURSUANT TO RULE 56(f)**

8.  **LEAD PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT KPMG LLP'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

**9.**     **DECLARATION OF MICHAEL GOLDBERG IN SUPPORT OF LEAD PLAINTIFFS' OPPOSITION TO DEFENDANT KPMG LLP'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT [EXHIBITS 1-4]**

**10.**    **LEAD PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITIONS TO DEFENDANT KPMG AND THE SOUTHWEST WATER COMPANY DEFENDANTS' MOTIONS TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

and, simultaneously served upon the following ECF-registered parties:

Blake M Harper     bmh@hulettharper.com, office@hulettharper.com

Daniel S Sommers     dsommers@cohenmilstein.com

Dennis J. Stewart     dstewart@hulettharper.com

Jennifer Marie Feldman     jennifer.feldman@dlapiper.com, sue.walton@dlapiper.com

Joon M Khang     joon@khanglaw.com

Lionel Z Glancy     lglancy@glancylaw.com

Michael M Goldberg     mmgoldberg@glancylaw.com, dmacdiarmid@glancylaw.com, info@glancylaw.com, rmaniskas@glancylaw.com, rprongay@glancylaw.com

Robert A Meyer     rmeyer@loeb.com, ptaylor@loeb.com

Robert W Brownlie     robert.brownlie@dlapiper.com, connie.garner@dlapiper.com, jennifer.feldman@dlapiper.com

Saul D Brenner     sbrenner@loeb.com, vhenderson@loeb.com

Steven J Toll     stoll@cohenmilstein.com

There are no non-ECF-registered parties.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 8, 2010, at Los Angeles, California.

*S/Michael Goldberg*
Michael Goldberg