GLANCY BINKOW & GOLDBERG LLP
LIONEL Z. GLANCY (#134180)
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
E-mail: info@glancylaw.com

COHEN MILSTEIN SELLERS & TOLL PLLC
DANIEL S. SOMMERS (*pro hac vice*)
1100 New York Avenue, N.W., Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email:  dsommers@cohenmilstein.com

*Co-Lead Counsel for Plaintiffs and the Class*
[Additional counsel located on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

_____

| | |
|---|---|
| ROBERT G. PERRIN and     DIANE L. PERRIN, Individually and On Behalf of All Others Similarly Situated,                    Plaintiffs,      v. SOUTHWEST WATER COMPANY, *et. al.*,                    Defendants. _____ | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. 2:08-CV-7844-JHN (AGRx)

**LEAD PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT KPMG LLP'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Date:  May 10, 2010  (*Scheduled*)
          May 17, 2010 (*Proposed*)
Time: 2:00 p.m.
Judge: Hon. Jacqueline H. Nguyen
Courtroom: 1600

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ................................................................. 1

II.    STATEMENT OF FACTS ...................................................................... 4

       A.    The Role of KPMG as SW's Auditor ................................................. 4

       B.    KPMG Falsely Certifies SW's Financials and Internal Controls ...... 5

             1.    The Financials Were Not Prepared In Accordance with
                   GAAP, as KPMG Falsely and Repeatedly Stated ................... 5

             2.    KPMG Fails to Report Upon 15 Material Weaknesses In
                   Internal Controls and Fails to Follow PCAOB Standards ....... 7

III.   ARGUMENT .......................................................................................... 9

       A.    The Relevant Pleading Standards ...................................................... 9

             1.    Standards under Rule 12(b)(6) ............................................... 9

             2.    Rule 8(a), Not 9(b), Is Applicable Here ................................. 9

                   (a)    The Few Allegations KPMG Cites Do Not Morph
                          The Claim Against It Into a Scheme to Defraud ......... 10

                   (b)    Pleading Requirements For Falsity of an "Auditor's
                          Certification" Under §11(a)(4), As Here, Are Distinct
                          From Pleading Requirements For Falsity Under
                          Other Provisions of the Securities Laws...................... 12

       B.    The Complaint Sufficiently Pleads Falsity ...................................... 15

             1.    KPMG Made False and Misleading Statements ................... 16

             2.    The Restatement Eliminates Most Earnings From 2004
                   Forward and Revealed 15 Material Weaknesses ................... 17

C.   The Section 11 Claim Is Not Time-Barred ....................................... 19

1.   Registration Statements Issued During the Class Period
     Are "New" Offerings; the Statute of Repose Did Not Run .... 19

2.   KPMG Concedes It Was Named In Two Initial Complaints;
     There is Relation-Back Under Rule 15(c)(1)(B) for the
     Added §11 Claim.................................................................... 22

D.   KPMG's Standing Arguments Are Baseless ................................... 24

IV.   CONCLUSION ......................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Alpern v. UtilCorp United, Inc.*,
    84 F.3d 1525 (8th Cir. 1996) .................................................................... 22

*Am. Title Ins. Co. v. Lacelaw Corp.*,
    861 F.2d 224 (9th Cir. 1998) ...................................................................... 3

*Ambruster v. Cellcyte Genetics Corp.*,
    2008 WL 1929903 (W.D. Wash. Apr. 28, 2008) ..................................... 23

*Am. Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974) ................................................................................. 19

*Ashcroft v. Iqbal*,
    __ U.S. __, 129 S. Ct. 1937 (2009) ............................................................ 9

*Batwin v. Occam Networks, Inc.*,
    2008 WL 2676364 (C.D. Cal. July 1, 2008) ...................................... 14, 17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................... 9

*Belodoff v. Netlist, Inc.*,
    2009 WL 1293690 (C.D. Cal. Apr. 17, 2009) ......................................... 23

*Carson v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    1998 WL 34076402 (W.D. Ark. Mar. 30, 1998) ...................................... 25

*Deephaven Private Placement Trading, Ltd. v. Grant Thorton & Co.*,
    454 F.3d 1168 (10th Cir. 2006) ........................................................ 2, 4, 13

*DSAM Global Value Fund v. Altris Software, Inc.*,
    288 F.3d 385 (9th Cir. 2002) ................................................................... 13

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ................................................................. 25

*Fellman v. Electro Optical Sys. Corp.*,
    2000 WL 489713 (S.D.N.Y. Apr. 25, 2000) ............................................. 25

*Finkel v. Stratton Corp.*,
    962 F.2d 169 (5th Cir. 1992) ..................................................... 21

*Freedman v. Value Health, Inc.*,
    958 F. Supp. 745 (D. Conn. 1997) ............................................. 14

*Gilligan v. Jamco Dev. Corp.*,
    108 F.3d 246 (9th Cir. 2002) ...................................................... 9

*Greater Pa. Carpenters Pension Fund v. Whitehall Jewellers, Inc.*,
    2005 WL 1563206 (N.D. Ill. June 30, 2005) ............................... 25

*Gridley v. Sayre & Fisher Co.*,
    409 F. Supp. 1266 (S.D. 1976) .................................................. 24

*Guenther v. Cooper Life*,
    759 F. Supp. 1437 (N.D. Cal. 1990) .......................................... 21

*Guerrero v. RJM Acquisitions LLC*,
    499 F.3d 926 (9th Cir. 2007) .................................................... 23

*Hertzberg v. Dignity Partners, Inc.*,
    191 F.3d 1076 (9th Cir. 1999) .................................................. 24

*Hollinger v. Titan Capital Corp.*,
    914 F.2d 1564 (9th Cir. 1990) .................................................. 13

*In re Adams Golf, Inc. Sec. Litig.*,
    381 F. 3d 267 (3d Cir. 2004) ................................................... 10

*In re Adelphia Comm'ns Corp. Sec. & Deriv. Litig.*,
    2005 WL 1278544 (S.D.N.Y. May 31, 2005) ........................... 24

*In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.*,
    794 F. Supp. 1424 (D. Ariz. 1992) ........................................... 21

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
    324 F. Supp. 2d 474 (S.D.N.Y. 2004) ...........................................17, 18, 25

*In re Brooks Automation, Inc. Sec. Litig.*,
    2007 WL 4754051 (D. Mass. 2007) ........................................ 25

*In re CBT Group PLC Sec. Litig.*,
    2000 WL 33339615 (N.D. Cal. Dec. 9, 2000)..................................... 11

*In re Charles Schwab Corp. Sec. Litig.*,
    257 F.R.D. 534 (N.D. Cal. 2009) ........................................ 11

*In re Commtouch Software Ltd. Sec. Litig.*,
    2002 WL 31417998 (N.D. Cal. July 24, 2002)................................. 15, 18

*In re Complete Mgmt., Inc. Sec. Litig.*,
    153 F. Supp. 2d 314 (S.D.N.Y. 2001) ........................................ 22

*In re Countrywide Fin. Corp. Sec. Litig.*,
    2009 WL 943271 (C.D. Cal. Apr. 6, 2009) ........................................ 22

*In re Countrywide Fin. Corp. Sec. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) .....................................2, 9, 11, 22

*In re Cylink Sec. Litig.*,
    178 F. Supp. 2d 1077 (N.D. Cal. 2001) ..................................... 19

*In re Daou Sys., Inc.*,
    411 F.3d 1006 (9th Cir. 2005) ........................................ 9, 11

*In re DDI Corp. Sec. Litig.*,
    2005 WL 3090882 (C.D. Cal., 2005) ........................................ 23

*In re Exodus Comm'ns, Inc. Sec. Litig.*,
    2005 WL 1869289 (N.D. Cal. Aug. 5, 2005) ........................................ 10

*In re Gilead Sciences Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ........................................ 25

*In re Interpool, Inc. Sec. Litig.*,
    2005 WL 2000237 (D.N.J. Aug. 17, 2005) ................................................ 18

*In re JDS Uniphase Corp. Sec. Litig.*,
    2005 WL 43463 (N.D. Cal. Jan. 6, 2005) ................................................... 23

*In re Juniper Networks, Inc. Sec. Litig.*,
    542 F. Supp. 2d 1037 (N.D. Cal. 2008) ..................................................... 23

*In re Levi Straus & Co. Sec. Litig.*,
    527 F. Supp. 2d 965 (N.D. Cal. 2007) ....................................................... 11

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2008) .............................................. 14, 15

*In re Metropolitan Sec. Litig.*,
    532 F. Supp. 2d 1260 (E.D. Wash. 2007) .......................................... *passim*

*In re New Century*,
    588 F. Supp. 2d 1206 (C.D. Cal. 2008) .......................................5, 9, 14, 15

*In re PMA Capital Corp. Sec. Litig.*,
    2005 WL 1806503 (E.D. Pa. July 27, 2005) ............................................. 23

*In re Portal Software, Inc. Sec. Litig.*,
    2005 WL 1910923 (N.D. Cal. Aug. 10, 2005) .......................................... 23

*In re Raytheon Sec. Litig.*,
    157 F. Supp. 2d 131 (D. Mass. 2001) ....................................................... 15

*In re Scottish Re Group Sec. Litig.*,
    524 F. Supp. 2d 370 (S.D.N.Y. 2007) ....................................................... 13

*In re SeeBeyond Tech. Corp. Sec. Litig.*,
    266 F. Supp. 2d 1150 (C.D. Cal. 2003) .................................................... 24

*In re Silicon Graphics, Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) .................................................................... 13

*In re Sipex Corp. Sec. Litig.*,
    2005 WL 3096178 (N.D. Cal. Nov. 17, 2005) .......................................... 17

*In re Software Toolswork, Inc.*,
    50 F.3d 615 (9th Cir. 1994) ..................................................................... 13

*In re Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) ................................................................... 12

*In re Stone & Webster, Inc. Sec. Litig.*,
    414 F.3d 187 (1st Cir. 2005) ................................................................... 10

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006) .................................................................... 24

*In re Wash. Mut., Inc. Sec. Litig.*,
    259 F.R.D. 490 (W.D. Wash 2009) ................................................... 15, 17

*In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*,
    2009 WL 3517630 (W.D. Wash. Oct. 27, 2009) ................................ 14, 15

*In re White Elecs. Designs Corp. Sec. Litig.*,
    416 F. Supp. 2d 754 (D. Ariz. 2006) ....................................................... 11

*In re WorldCom, Inc. Sec. Litig.*,
    2004 WL 540450 (S.D.N.Y. Mar. 19, 2004) ............................................ 19

*In re Worlds of Wonder Sec. Litig.*,
    35 F.3d 1407 (9th Cir. 1994) ................................................................... 13

*In re Xchange, Inc. Sec. Litig.*,
    2002 WL 1969661 (D. Mass. Aug. 26, 2002) .......................................... 23

*Johnson v. Aljian*,
    490 F. 3d 778 (9th Cir. 2007) .................................................................. 19

*Kaltman v. Key Energy Servs.*,
    447 F. Supp. 2d 648 (W.D. Tex. 2006) .................................................... 17

*Kelly v. Rambus, Inc.*,
     2008 WL 5170598 (N.D. Cal. Dec. 9, 2008) .............................................. 13

*Louisiana-Pacific Corp. v. ASARCO*,
     5 F.3d 431 (9th Cir. 1993) ........................................................................ 23

*Martell v. Trilogy Ltd.*,
     872 F.2d 322 (9th Cir. 1982) .................................................................... 23

*P. Stolz Family P'ship LP v. Daum*,
     355 F.3d 92 (2d Cir. 2004) ........................................................................ 21

*Ross v. Warner*,
     480 F. Supp. 268 (S.D.N.Y. 1979) ....................................................... 24-25

*Rubke v. Capitol Bancorp., Ltd.*,
     551 F.3d 1156 (9th Cir. 2009) ............................................................ 13, 14

*SEC v. Caserta*,
     75 F. Supp. 2d 79 (E.D.N.Y. 1999) .......................................................... 16

*SEC v. KPMG LLP*,
     412 F. Supp. 2d 349 (S.D.N.Y. 2006) ........................................................ 4

*Siracusano v. Matrixx Initiatives, Inc.*,
     585 F.3d 1167 (9th Cir. 2009) .................................................................... 9

*Swartz v. KPMG LLP*,
     476 F. 3d 756 (9th Cir. 2007) .................................................................. 11

*Va. Bankshares, Inc. v. Sandberg*,
     501 U.S. 1083 (1991) ................................................................................ 13

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
     __ F. Supp. 2d __, 2009 WL 4668579 (S.D.N.Y. Dec. 9, 2009) ............. 18

*Woods v. Homes & Structures. of Pittsburgh, Kansas, Inc.*,
     489 F. Supp. 1270 (D. Kan. 1980) ............................................................ 24

## Statutes and Regulations

Sarbanes-Oxley Act of 2002
    §103 .................................................................................................. 5

Securities Exchange Act of 1934
    §10(b) .................................................................... 2, 11, 12, 23
    §14 ..................................................................................... 12
    §14(a) ........................................................................... 13, 14
    §18(a) .................................................................... 2, 12, 13

Securities Act of 1933
    §7 ................................................................................ 4, 22
    §11 ................................................................................ *passim*
    §11(a)(4) ...................................................................... *passim*
    §11(a)(1) ............................................................................ 13
    §11(a)(2) ............................................................................ 13
    §13(a) ............................................................................... 20
    §15(d) ............................................................................... 20

15 U.S.C. §17m ........................................................................... 21
15 U.S.C. §77k ......................................................................... 9, 12
15 U.S.C. §77k(4) ........................................................................ 4
15 U.S.C. §77m ........................................................................... 19
15 U.S.C. §77z-1 ......................................................................... 10
17 C.F.R. §229.304 ....................................................................... 17
17 C.F.R. §229.512 ....................................................................... 21
17 C.F.R. §229.512(a)(2) ............................................................ 21, 22
17 C.F.R. §229.512(a),(b) ................................................................ 20

Federal Rules of Civil Procedure
    Rule 8 ......................................................................... 10, 11
    Rule 8(a) .......................................................................... 9
    Rule 9(b) .................................................................... 9, 10, 11
    Rule 12(b)(6) ...................................................................... 9
    Rule 15(c)(1)(B) ........................................................... 19, 22, 24

**Other Authorities**

Generally Accepted Auditing Standards
  AU§9711.01-11 ................................................................. 2
  AU§9711.12-14 ................................................................. 2

Financial Accounting Standards Board Statement
  No. 71 ........................................................................... 6
  No. 154 .......................................................................... 6

SEC Regulation S-K
  Rule 415 .................................................................. 20, 21
  Rule 430B..................................................................... 22

Wright & Miller, 6A FED. PRACT. & PROC. CIV. §1497 (2d ed. West 2009) ....... 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    PRELIMINARY STATEMENT

Plaintiffs respectfully submit this memorandum of points and authorities in opposition to defendant KPMG LLP's ("KPMG"or "defendant") motion to dismiss the consolidated amended class action complaint (the "Complaint") for violations of Section 11 of the Securities Act of 1933 (the "1933 Act").

KPMG was defendant SouthWest Water Company's ("SW" or the "Company") auditor since in or about 1993 until it was without explanation replaced after the December 31, 2007 audit.  KPMG was engaged to audit the Company's financial statements and internal controls pursuant to statutory, regulatory and professional standards and to certify both that the Company's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP") and that internal controls were adequate.  Less than one year after KPMG's discharge, on November 10, 2008, SW announced that investors should no longer rely on any financial statements issued since 2004 and that its new auditor, PricewaterhouseCoopers LLP ("PwC"), was to reaudit the last three years of financial statements and reexamine the Company's internal controls.  On July 9, 2009, the Company issued restated financial statements, which reported, among other things, 15 material weaknesses in internal accounting controls and restatement entries reducing shareholders' equity by millions of dollars.  For example, for 2005 alone, the figure for retained earnings was reduced to $5 million from its originally reported amount of $22.2 million, or by almost 80%.  The restatement adjustments concerned several basic accounting areas and core assets such as depreciation accounting for acquired fixed assets, and recognition of revenue on the cash instead of accrual basis.

During the Class Period, KPMG consented to including its false and misleading "clean" audit certifications in the Company's registration statements filed with the Securities and Exchange Commission ("SEC").  Thus, KPMG is

liable to plaintiffs for "innocent or negligent material misstatements or omissions [therein]." *In re Countrywide Fin. Corp. Sec. Litig.,* 588 F. Supp. 2d 1132, 1162 (C.D. Cal. 2008) (Pfaelzer, J.).  That is precisely what the Complaint alleges – negligence against KPMG for its false and misleading audit certifications.

KPMG's response to the non-fraud claims against it is not new. KPMG asserts, for example, that because the Complaint centers on the same misstatements and omissions as those employed to state a fraud claim against the SW defendants under §10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), then it must follow that the Complaint is "grounded in fraud." This precise argument, employed by KPMG in the *Countrywide, supra,* litigation, was resoundingly rejected, and should be here for the same reasons. In addition, KPMG asserts that plaintiffs must plead that its certifications were not believed by it when issued or were without a reasonable basis.  This argument belies KPMG's sole authority, which expressly distinguishes pleading falsity of an auditor's certifications under §11(a)(4) from pleading same under §18(a) of the 1934 Act.[1]  KPMG also ignores the fact that the registration statements at issue in this action, just as in *Countrywide,* are shelf registrations.  As such, the limitations period renews with each new filing of a Form 10-K or post-effective amendment.  KPMG's authorities and GAAS hold as much.[2]

Next KPMG concocts relation back and standing arguments that have long

---

[1] KPMG's argument also ignores Generally Accepted Auditing Standards ("GAAS"), which distinguish between filings made under the 1933 Act and those under the 1934 Act. AU §9711.12-14. This authority states that under the 1933 Act, unlike the 1934 Act, the auditor is an "expert." That term "has a specific statutory meaning under the Act." Declaration of Michael Goldberg (the "Goldberg Decl."), Ex. 1. *Deephaven Private Placement Trading, Ltd. v. Grant Thorton & Co.,* 454 F.3d 1168, 1174 n.6 (10th Cir. 2006) (same).

[2] Goldberg Decl., Ex. 1 (AU §9711.01-11: "When a post-effective amendment is filed pursuant to the registrant's undertaking required by Item 512 of Regulation S-K, a shelf-registration statement is considered to have a new effective date.").

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT KPMG'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT          No. 2:08-CV-07844 JHN (AGRx)

2

since been rejected. For example, KPMG asserts that because none of the "Securities Act Plaintiffs" named KPMG in an initial class action filing they have no standing to bring their claims. These arguments also ignore overwhelming authority holding to the contrary.

KPMG also argues that because the Complaint is based on "different documents" than the initial complaints, the Complaint does not relate back. This argument is also specious. The documents at issue are the financials which were incorporated by reference into every registration statement issued during the Class Period, including the Forms 10-K. Thus, they are not "different."

Finally, KPMG makes a throwaway argument that the restatements were just a matter of differences in judgment between KPMG and "new management" and "new auditors." Indeed, KPMG goes so far as to state that plaintiffs have not alleged "any contemporaneous facts showing that KPMG's" audit certifications "were materially false when stated." KPMG not only ignores case law and professional standards stating otherwise, but also the fact that it was consulted concerning the restatements, and that it stated in a letter filed with the SEC that it had no accounting or reporting disagreements with "management," which was not "new," as KPMG also asserts.[3] Further, KPMG has joined in its SW co-defendants' motions "in their entirety." Dkt. No. 45 at 2. Therein, the SW defendants admit, "[T]he restatement can only be used to establish the falsity of the financial information that was restated." SW Br. at 9-10. Thus, KPMG is precluded from making an inconsistent argument herein. *Am. Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir. 1998).

In short, when seen for what it is, KPMG's motion is nothing more than

---

[3] Co-defendants SW CEO Swatek and CFO Clary were each with the Company throughout KPMG's 2006 and 2007 audits and the restatements; Clary was the CFO of SW since 2004. KPMG audited 2004 and 2005 as well. ¶¶30,31,35; *see also* Goldberg Decl., Ex. 2 (April 4, 2008 Form 8-K attaching KPMG letter).

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT KPMG'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT        No. 2:08-CV-07844 JHN (AGRx)

3

1   rehashed and rejected arguments with some novel twists to avoid liability.

2   **II.   STATEMENT OF FACTS**

3       **A.   The Role of KPMG as SW's Auditor**

4       KPMG was SW's auditor since 1993. ¶35(b).[4]  On November 14, 2007,

5   the Company announced that it had retained PwC as its new independent

6   registered accountant. ¶¶5, 35(b).   The role of KPMG as the Company's

7   "independent" auditor has been summarized in another case against KPMG, as

8   follows:

9       [A]uditors play a critical role in the self-regulatory process in the

10      financial marketplace. When an external auditor certifies the

11      financial statement of a business, . . . it is certifying, it is providing
        what is supposed to be a clear, full, and fair description of the actual

12      performance of the business to assist the shareholder in determining

13      the value of his investment, [] the performance of the company[.]

14  *SEC v. KPMG LLP,* 412 F. Supp. 2d 349, 389 (S.D.N.Y. 2006).

15      In addition, KPMG played a significant role by certifying as an expert the

16  financial statements of SW, included in the Company's registration statements,

17  as of and for the years ended December 31, 2004, 2005, 2006 and 2007.  ¶¶207-

18  18.   Specifically, under §11(a)(4) of the 1933 Act, KPMG is liable as an

19  "accountant . . . who has with his consent been named as having prepared or

20  certified any report . . . which is used in connection with the registration

21  statement . . ." 15 U.S.C. §77$k$(4).   ¶¶211,214.   KPMG consented to the

22  inclusion of its audit certifications in all registration statements at issue here and

23  was named as the auditor.  ¶¶79,84,211,214; 1933 Act, §7. To assure the audited

24  financial statements were "fairly presented in accordance with GAAP," KPMG

25  was requested to adhere to GAAS promulgated by the American Institute of

26  Certified Public Accountants ("AICPA") and as adopted by the Public Company

27

28  [4] "¶___" are references to the Complaint. Unless otherwise stated, all emphasis,
    internal quotations, and citations are omitted.

Accounting Oversight Board (the "PCAOB").[5] ¶¶109-13,179-95. Thus, KPMG was required to adequately examine the Company's internal controls to (a) plan its substantive and procedural examination of SW's financial statements (¶¶109-12) and (b) issue a certification as to whether the Company's "internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and preparation of financial statements for external reporting purposes in accordance with [GAAP]." ¶113. Thus, KPMG was required to "adequately plan its audit, to sufficiently understand a business' internal structure, and to obtain sufficient evidence to reach reasonable conclusions." *In re New Century,* 588 F. Supp. 2d 1206, 1216 (C.D. Cal. 2008) (Pregerson, J.); ¶¶109,112,113.

### B.   KPMG Falsely Certifies SW's Financials and Internal Controls

GAAS permits auditors to issue a variety of audit certifications, including "clean," "except for" and "adverse" or "disclaimer" reports. ¶181(g); Goldberg Decl., Ex. 3. However, KPMG for the years 2005 through 2007 issued nothing but false and misleading "clean" audit reports on both the Company's financial statements and its internal controls. ¶¶114-72.  As admitted by the November 10, 2008 announcement by SW stating that these financials "should no longer be relied upon," and as reported on July 9, 2009, the Company's financial statements were not prepared in accordance with GAAP and had to be restated for each of the years and interim periods from 2004 through 2007. ¶¶3-9, 94.

#### 1.   The Financials Were Not Prepared In Accordance with GAAP, as KPMG Falsely and Repeatedly Stated

A "restatement" is defined as "[t]he process of revising previously issued financial statements to reflect the correction of an error in those financial statements." ¶124 (quoting, in part, Financial Accounting Standards Board

---

[5] The PCAOB was established under §103 of the Sarbanes-Oxley Act of 2002 ("SOX"). Auditing standards for public companies are set by the PCAOB, and accounting firms register with the PCAOB. *Deephaven,* 454 F.3d at 1170, n.1.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT KPMG'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT          No. 2:08-CV-07844 JHN (AGRx)

5

Statement No. 154 ("SFAS 154")).  SFAS 154 defines "Error in previously issued financial statements," as follows: "An error in recognition, measurement, presentment, or disclosure in financial statements resulting from mathematical mistakes, mistakes in the application of GAAP, or oversight or misuse of facts *that existed at the time the financial statements were prepared."* ¶125.  Thus, KPMG's certifications that represented, among other things, that the Company's financial statements for the restated periods were prepared in accordance with GAAP, were false and misleading when made. ¶¶94-178.  Further, because the proper application of GAAS should have detected the errors causing the restatement adjustments, KPMG failed to adhere to GAAS. ¶¶*Id.,* 79-95.

SW's first audited restatements were issued on July 9, 2009.  On that date, it was confirmed that the source and amount of the restatements from 2005 through interim periods in 2008 concerned primarily core areas of the Company's business and thus should have been the focus of KPMG's audits. ¶¶185-95.  For example, the largest asset the Company reported was Property, Plant and Equipment ("PP&E" or "Fixed Assets"), representing close to 77% of total assets as of December 31, 2005. ¶¶49-50. The expense related to PP&E was "straight-line" depreciation.[6] This is calculated by using simple division. ¶133. Similarly, the accounting and reporting for other SW transactions were fairly straightforward. *E.g.,* ¶135-36 (accrual versus cash basis accounting); ¶138 (expensing of start-up costs); ¶139-41 (accruing for existing liabilities); and ¶142-47 (elimination of intercompany profits). Further, a portion of SW's accounting and reporting was subject to rules relating to the regulated utility industry. This reporting was essentially governed by SFAS 71, *Regulated Industries.* ¶¶47-48. SFAS 71 permits *regulated* entities to capitalize all or part

---

[6] The financial statements reported that "depreciation expense on utility plants is recorded using the straight-line method over the useful lives ranging from five to fifty years . . ." for fixed assets in regulated businesses and "three to thirty years" for fixed assets in un-regulated businesses. ¶50.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT KPMG'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT          No. 2:08-CV-07844 JHN (AGRx)

6

of an incurred cost that would otherwise be charged to expense under specified conditions. The restatement revealed that a significant portion of the adjustments related to improperly capitalizing costs in *non-regulated* divisions or subsidiaries.  ¶¶48,146. It also revealed that the Company failed to take depreciation charges on acquired fixed assets from the date the asset was placed in service by an acquired company. Instead SW commenced charging depreciation from the date the asset was acquired from the target company. ¶¶11,49-50,127-36,151,191. In the five-year period ending December 31, 2008, the Company made close to 15 acquisitions.  ¶¶38-40.

Finally, the restatement of the financials went as far back as the year 2004. ¶55. The restatements reduced retained earnings by orders of magnitude. Operating income for 2005, originally reported as $18.5 million, was reduced to $12.6 million or by almost 33%. ¶55. Operating income for the year 2006, originally reported as $22.4 million, was reduced to $16.6 million or by approximately 26%.  *Id.*  Retained earnings for 2007 was reduced to $2.2 million, a 83% reduction from its originally reported figure of $13.3 million. ¶63.   In addition, "net cash provided from operating activities" as restated for the years ended December 31, 2007 and 2006 was $6.5 million and $7.0 million, respectively. The originally reported amounts for the same periods were $30.5 million and $26.8 million, respectively.  ¶66.

## 2.   KPMG Fails to Report Upon 15 Material Weaknesses In Internal Controls and Fails to Follow PCAOB Standards

The restated financials also reported 15 material weaknesses in internal controls. ¶¶67,68,96,113,162-71. A material weakness in internal control:

[i]s a reportable condition[7] in which the design or operation of one or more of the internal control components does not reduce to a

---

[7] Reportable conditions "are matters coming to the auditor's attention that in his judgment should be communicated to the audit committee because they represent significant deficiencies in the design or operation of internal control. . . " ¶164.

relatively low level risk that misstatements caused by error or fraud in amounts that would be material in relation to the financial statements being audited may occur and not be detected [timely].

¶165.  As did the restatement areas, the material weaknesses in internal controls also concerned basic accounting controls. The internal control weaknesses included those where "[w]e did not maintain an effective control environment because of": (a) insufficiently experienced and trained accounting and internal audit staff; (b) failure to maintain complete and accurate underlying documentation for routine transactions; (c) ineffective monitoring of controls over period-end financial reporting processes which adversely affected acquisition accounting, goodwill, regulatory accounting, plant and equipment, accruals and estimates; (d) ineffective controls over risk assessments, including evaluation of "fraud risks affecting financial reporting processes"; and (e) ineffective controls over PP&E depreciation accounting, capitalization accounting, and unbilled utilities revenues. The foregoing is by no means the complete list. *See* ¶171; *see also* ¶¶172-73.  Notwithstanding, during the Class Period, KPMG provided false "clean" certifications concerning the adequacy of SW's internal accounting controls, by reporting, among other things, that "[w]e also have audited in accordance with standards of the [PCAOB] the effectiveness of [SW's] internal control over financial reporting . . . and express[] an unqualified opinion on management's assessment thereof, and the effective operation of, internal control over financial reporting." ¶110; *see also* ¶112.  As demonstrated by the extensive nature of the material weaknesses reported on July 9, 2009, KPMG could not have followed applicable GAAS and PCAOB standards, and thus (a) failed to disclose the several material inadequacies over internal controls, and (b) improperly issued clean reports on same. ¶¶105-15,179-94.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT KPMG'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT     No. 2:08-CV-07844 JHN (AGRx)

8

III.   **ARGUMENT**

    A.   **The Relevant Pleading Standards**

        1.   **Standards Under Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), the Complaint need not contain detailed factual allegations, but "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the alleged facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __U.S. __, 129 S. Ct. 1937, 1949 (2009). In assessing the sufficiency of a complaint, courts must "accept the plaintiffs' allegations as true and construe them in the light most favorable to the plaintiffs." *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009); *New Century,* 588 F. Supp. 2d at 1217 (same).

        2.   **Rule 8(a), Not 9(b), Is Applicable Here**

To state a claim under §11, plaintiffs need only allege a material misstatement or omission contained in a registration statement. 15 U.S.C. §77*k*. "No scienter is required for liability under §11; defendants will be liable for innocent or negligent material misstatements or omissions." *In re Daou Sys., Inc.,* 411 F.3d 1006, 1027 (9th Cir. 2005). Thus, claims brought under §11 of the 1933 Act "are subject to Rule 8(a)'s ordinary pleading requirements unless the allegations 'sound in fraud.'" *Countrywide,* 588 F. Supp. 2d at 1162.

The Ninth Circuit has held that the liberal notice pleading standard under Rule 8(a) establishes "a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 2002). Rule 8(a) provides that a complaint "need only contain a short and plain statement . . . of the claim showing that the pleader is entitled to relief . . .".

*New Century,* 588 F. Supp. 2d at 1271.[8]

Finally, not only are §11 claims not subject to Rule 9(b), but they also are not subject to the heightened pleading requirements of the PSLRA. 15 U.S.C. §77z-1, *et seq. See also In re Adams Golf, Inc. Sec. Litig.,* 381 F. 3d 267, 275 (3d Cir. 2004) ("[T]he District Court required plaintiffs to show that an omission or misstatement was known to the Company at the time of the IPO. . . This is not correct.  Sections 11 and 12(a)(2) are virtual absolute liability provisions . . . )".

### (a)   The Few Allegations KPMG Cites Do Not Morph The Claim Against It Into a Scheme to Defraud

KPMG asserts that because: (1) a handful of allegations, most of which are presented in the alternative such as "defendants knew or were negligent in not knowing," and (2) the Complaint's central allegations concern many of the same misstatements, these two conditions somehow morph allegations of material falsity into "a unified course of fraudulent conduct." Defendant is wrong on both points.

First, plaintiffs are permitted under the PSLRA to allege in the alternative, and doing so "does not undermine the validity of the complaint." *In re Stone & Webster, Inc. Sec. Litig.,* 414 F.3d 187, 200 n.8 (1st Cir. 2005); *see also In re Exodus Comm'ns, Inc. Sec. Litig.,* 2005 WL 1869289, at *11 (N.D. Cal. Aug. 5, 2005) (holding that complaint was not subject to heightened pleading requirements where, as here, plaintiffs "only allege in the alternative that the Underwriter Defendants acted" "negligently" or "with knowledge or deliberate

---

[8] Defendant makes a fleeting remark that Rule 8 is violated. However, KPMG never explains this *ipse dixit*.  In any event, the Complaint is a far cry from those courts finding non-compliance with Rule 8. *E.g., In re Metropolitan Sec. Litig.,* 532 F. Supp. 2d 1260, 1279-80 (E.D. Wash. 2007) (the explanation of how or why alleged misstatements were false was presented "some 400 paragraphs later;" whereas, here, the Section 11 allegations against defendants are contained in a discrete, sequential section of the Complaint; ¶¶51-218).

1   recklessness"); *id.* at *12 ("[P]laintiffs' assertion of separate claims against the
2   [underwriters] for violation of §10(b) and §11, based on the same conduct, but
3   alleging differing states of mind, is expressly permitted by Rule 8."); *Swartz v.*
4   *KPMG LLP,* 476 F. 3d 756, 766-67 (9th Cir. 2007) (same as to RICO claims).

5          Second, the "unified course of conduct" argument made here is
6   substantially identical to KPMG's argument in *Countrywide, supra,* and which
7   was resoundingly rejected. Similar to that case, plaintiffs here "describe a
8   unified course of abandoning sound [internal control] practices.  No fraud lies in
9   changed practices alone. . . The fraud consists in intentionally misrepresenting
10  Countrywide's [internal control] practices." *Id.,* 588 F. Supp. 2d at 1162-63.[9]
11  Thus, "it [would] eviscerate[] §11 to give all defendants Rule 9(b) protection
12  when (1) only certain defendants are expressly alleged to act fraudulently; (2) a
13  complaint specifies unique, particularized facts as to those defendants; and (3)
14  the particularized facts raise a scienter inference as to those defendants . . .". *Id.*

15         Finally, even where Rule 9(b) has been found applicable to §11 claims,
16  "an inadequate averment of fraud does not mean that no claim has been stated
17  [under §11]." *In re Levi Straus & Co. Sec. Litig.,* 527 F. Supp. 2d 965, 979 (N.D.
18  Cal. 2007) (quoting *Daou,* 411 F.3d at 1027); *In re CBT Group PLC Sec. Litig.,*
19  2000 WL 33339615, at *4 (N.D. Cal. Dec. 9, 2000) (same). "The proper route is
20  to disregard the averments of fraud not meeting Rule 9(b)'s standard and then
21  ask whether a claim has been stated." *Levi Straus,* 527 F. Supp. 2d at 979.  Thus,
22  plaintiffs maintain that the Complaint's allegations, even if grounded in fraud
23  (which they are not), state a §11 claim, because "even absent [the purported]
24  allegations of fraudulent conduct, plaintiffs have alleged sufficient facts of
25  misstatements in the financial information contained in [the Company's]
26
27  ─────────────────────
    [9] The instant Complaint delineates the Sections 11 and 15 claims in one section and
28  the fraud claims thereafter and does not incorporate the fraud claims therein. ¶¶71-
    224 (1933 Act claims); ¶¶225-515 (1934 Act claims).

registration statements in violation of § 11." *Id.* at 980.[10]

### (b) Pleading Requirements For Falsity of an "Auditor's Certification" Under §11(a)(4), As Here, Are Distinct From Pleading Requirements For Falsity Under Other Provisions of the Securities Laws

KPMG asserts that because auditors issue "opinions," §11 claims asserting that such opinions are false or misleading must plead with particularity that KPMG either (a) did not believe its opinion was true; or (b) it had no reasonable basis for such opinion.  KPMG, however, overlooks that pleading falsity of an auditor's "certification" under §11(a)(4) of the 1933 Act is not subject to the heightened pleading requirements for alleged false "opinions" under the 1934 Act §§10(b), 14 and 18(a).  Similarly, courts have applied heightened pleading requirements for "fairness opinions" under §11(a) of the 1933 Act only where the speaker is not an auditor certifying as an "expert" "portions of the registrations statement," as here, under §11(a)(4).  Defendant's primary authority for its incorrect proposition actually supports the foregoing:

> Under Section 11 of the Securities Act of 1933 (Securities Act), 15 U.S.C. §77k, those purchasing securities pursuant to a registration statement containing an untrue statement of a material fact or omitting a material fact may sue "every ***accountant ...*** who has with his consent been named as having prepared or ***certified*** any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been

---

[10] Defendant's remaining authorities are equally unhelpful to it. *E.g., In re Charles Schwab Corp. Sec. Litig.,* 257 F.R.D. 534 (N.D. Cal. 2009) (holding that simply because defendants themselves asserted that "systematic" "misstatements" could not be done without "intent" does not mean plaintiffs must be subject to heightened pleading requirements under Section 11); *In re White Elecs. Designs Corp. Sec. Litig.,* 416 F. Supp. 2d 754, 775 (D. Ariz. 2006) (the issue of whether the §11 claims sound in fraud was never reached); *In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399 (9th Cir. 1996) (no delineation of 1933 and 1934 Act claims).

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT KPMG'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT   No. 2:08-CV-7844 JHN (AGRx)

12

prepared or **certified** by him. (Emphasis added) Section 18(a) does not, however, impose liability on auditors (or accountants) in a parallel manner; rather, it extends liability to those who make or cause to be made materially false or misleading statements.

*Deephaven,* 454 F.3d at 1174 n.6 (Emphasis in original).[11]

Thus KPMG's reliance on *Rubke v. Capitol Bancorp., Ltd.,* 551 F.3d 1156, 1162 (9th Cir. 2009) is equally unhelpful to it (holding under §11(a)(1), (2) that plaintiffs must allege "with particularity" ***officers and directors'*** disbelief that the fairness opinions made in connection with a tender offer were not misleading) (emphasis added) (citing *Va. Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 1095-96 (1991) (holding same under §14(a) of the 1934 Act)). *Rubke's* "objective-subjective" inquiry is not applicable to expert certifications made under §11(a)(4). [12] Indeed, one district court in this Circuit expressly distinguished *Rubke's* holding from situations involving an auditor's certification under §11(a)(4):

Here, Plaintiffs allege that Deloitte made the misleading and false statement that its internal control reports were audited "in

---

[11] Defendants' authorities are inapposite as none involved §11(a)(4) claims against an auditor. *E.g., Kelly v. Rambus, Inc.,* 2008 WL 5170598, at *12-13 (N.D. Cal. Dec. 9, 2008) (§18 falsity element of negligence claim upheld against auditor, where the "combination of red flags and sheer magnitude of the ultimate restatement . . . could be read to suggest PwC lacked a reasonable basis for its audits"); *In re Scottish Re Group Sec. Litig.,* 524 F. Supp. 2d 370, 398 (S.D.N.Y. 2007) (§10(b) claim dismissed for lack of scienter, but identical allegations adequately alleged falsity and negligence).

[12] The Ninth Circuit, to plaintiffs' knowledge, never has held that the *Virginia Bankshare's* "objective-subjective" inquiry pertains to auditor certifications made under Section 11(a)(4) *or any section under the Exchange Act,* for that matter. *E.g., DSAM Global Value Fund v. Altris Software, Inc.,* 288 F.3d 385 (9th Cir. 2002) (applying scienter standard to auditor under *Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1569 (9th Cir. 1990) and *In re Silicon Graphics, Inc. Sec. Litig.,* 183 F.3d 970 (9th Cir. 1999) and not mentioning *Virginia Bankshares*); *In re Worlds of Wonder Sec. Litig.,* 35 F.3d 1407, 1426-27 (9th Cir. 1994) (same); *In re Software Toolworks, Inc.,* 50 F.3d 615, 628 (9th Cir. 1994) (same).

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT KPMG'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT          No. 2:08-CV-07844 JHN (AGRx)

13

accordance with the PCAOB's standards." Whether or not Deloitte employed the PCAOB standards is a verifiable factual statement that is material to those relying on its certification of WaMu's internal controls. Similarly, Plaintiffs' allegations regarding ***Deloitte's certification of the financial statements are not subject to the Rubke standard.*** Deloitte's affirmation that the financial statements were presented "in conformity with accounting principles generally accepted in the United States of America" is an actionable statement of fact.

*In re Washington Mut., Inc. Sec., Derivative & ERISA Litig*., 2009 WL 3517630, at *22 (W.D. Wash. Oct. 27, 2009) ("*WaMu I*").[13]

Because plaintiffs' §11 claim against KPMG is similarly based upon statements of fact, *Rubke*'s subjective falsity standard is inapplicable here. Plaintiffs allege that contrary to defendant's representations, "KPMG's audits were not conducted in accordance with the standards published by the PCAOB" and that SW's financial statements "were not presented fairly and accurately in conformity with GAAP." ¶¶212-13; *see also* ¶¶94,105,109-195,207-18. As in *WaMu I*, whether or not KPMG employed PCAOB standards is a verifiable factual statement that was material to Plan investors relying on defendant's certification of SW's internal controls. ¶¶110,113,169,179-95,207-18. Similarly, KPMG's certification that SW's financial statements were presented in accordance with GAAP is an actionable statement of fact. ¶¶94,105,110-11,116-78,181,207-18. Courts have held that auditors face liability under §11 for these same misrepresentations. *E.g., Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at **21-23 (C.D. Cal. July 1, 2008); *Metropolitan*, 532 F. Supp. 2d at

---

[13] *See also In re McKesson HBOC, Inc. Sec. Litig.,* 126 F. Supp. 2d 1248, 1265-66 (N.D. Cal. 2008) ("The court does not agree with the *Freedman [v. Value Health, Inc.,* 958 F. Supp. 745, 752-53 (D. Conn. 1997)] court that a negligence standard for professional opinions is unfair [to defendants]. . ." under Section 14(a) of the Exchange Act; holding that "any purely factual assertions in the fairness opinion such as Bear Stearn's statements that it viewed certain materials during its due diligence inquiry, would be held to a negligence standard").

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT KPMG'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT          No. 2:08-CV-07844 JHN (AGRx)

14

1295; *New Century*, 588 F. Supp. 2d 1206, 1216, 1233, 1239.    KPMG's representations that the Company's internal controls were adequate are also actionable statements of fact.  ¶¶112,113,162-71,173; *WaMu I*, 2009 WL 3517630, at *20; *In re Wash. Mut., Inc. Sec. Litig.*, 259 F.R.D. 490, 506 (W.D. Wash 2009) ("*WaMu II*"); *New Century*, 588 F. Supp. 2d at 1226, 1239.[14] Thus, because plaintiffs' §11 claim is based upon actionable statements of fact, a subjective falsity standard is inapplicable.

## B.    The Complaint Sufficiently Pleads Falsity

GAAP states that: "***a restatement is proper*** where an error has been made in a previously-issued financial statement . . . where there has been . . . oversight or misuse of facts that existed ***at the time*** the financial statements were prepared. . . . '***[A]t that time'*** refers to the time of [improper] revenue recognition, not the time of the audit [or] restatement." *In re Commtouch Software Ltd. Sec. Litig.*, 2002 WL 31417998, *7-*9 (N.D. Cal. July 24, 2002).

Moreover, "[t]he fact that the application of GAAP tolerates a range of reasonable treatments does not, however, vindicate the defendants so easily. . . GAAP are intended to provide a reliable degree of predictability, and an application of GAAP that strays beyond the boundaries of reasonableness will provide evidence [of violations thereof]." *In re Raytheon Sec. Litig.,* 157 F. Supp. 2d 131, 148 (D. Mass. 2001). "[F]inancial statements filed with the [SEC] which are not prepared in accordance with [GAAP] will be presumed to be

---

[14]Alternatively, even for statements of opinion, plaintiffs adequately allege that such statements are objectively and subjectively false. *E.g.,* SW announced that "the Company's consolidated financial statements as of and for the years ended December 31, 2007, 2006 and 2005, and for each of the quarterly periods ended therein, and as of and for the quarterly periods ended March 31, 2008 and June 30, 2008, should no longer be relied upon" and that "KPMG did not make a reasonable investigation and did not possess reasonable grounds for believing that its representations in its audit opinions and SW's financial statements for 2004, 2005, 2006 and 2007 were true, did not omit any material facts and were not materially misleading." ¶¶4,215. *Cf. McKesson,* 126 F. Supp. 2d at 1265-66.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT KPMG'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT          No. 2:08-CV-07844 JHN (AGRx)

15

misleading or inaccurate . . ." *SEC v. Caserta,* 75 F. Supp. 2d 79, 90 (E.D.N.Y. 1999); ¶116.

### 1.    KPMG Made False and Misleading Statements

KPMG was engaged to audit SW's financial statements during the Class Period and is liable for the material misrepresentations and omissions contained in the financials and its audit certifications.  ¶¶207-08.  Among other things, SW's financial statements as contained in the Company's registration statements stated that the Company's financial statements were prepared "in conformity with accounting principles generally accepted in the United States" and that [a]ll significant intercompany accounts and transactions have been eliminated, except where permitted . . .". ¶¶93-94. Additionally, the audited financial statements, included in the registration statements, contained or incorporated by reference KPMG's audit certifications for each of the years 2004 through 2007.  ¶¶207-18. In the certifications, KPMG represented, among other things, that it "conducted [its] audits in accordance with the standards of the [PCAOB]," and that the Company's consolidated financial statements "present fairly, in all material respects, the financial position of [SW] and subsidiaries as of December 31, [2004, 2005, 2006, and 2007] . . . ." ¶¶17,94,105,109-95,207-18. KPMG also certified that SW "maintained, in all material respects, effective internal control over financial reporting [as of 20XX]." ¶¶109-15,162-71,173.[15]

None of the foregoing statements were true.  On November 10, 2008, SW issued a press release informing the market that on November 6, 2008, the Audit

_____

[15]KPMG also stated: "[w]e conducted our audit in accordance with the standards of the [PCAOB]"; we "plan and perform the audit to obtain reasonable assurance about whether effective internal control over financial reporting was maintained in all material respects"; we "obtain[ed] an understanding of internal control over financial reporting, evaluating management's assessment, testing and evaluating the design and operating effectiveness of internal control, and performing such other procedures" as considered necessary in the circumstances"; and "management's assessment that [SW] maintained effective internal control over financial reporting as of December 31, 20[XX], is fairly stated, in all material respects[.]"  ¶¶112-13.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT KPMG'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT          No. 2:08-CV-07844 JHN (AGRx)

16

Committee of SW's board concluded that "[t]he Company's consolidated financial statements as of and for the years ended December 31, 2007, 2006 and 2005 . . . should no longer be relied upon." ¶90; *see also* 17 C.F.R. §229.304. The release also stated that PwC, SW's new auditors, would be engaged to re-audit several of the past audits conducted by KPMG and that "management had discussed these matters with KPMG." ¶5. As belatedly admitted by the Company on July 9, 2009, SW "did not maintain an environment that consistently emphasized strict adherence to [GAAP]. This control deficiency, in certain instances, led to inappropriate accounting decisions and entries[,]" and thus, false and misleading financials and audit reports for those periods. ¶¶171-73.

## 2.   The Restatement Eliminates Most Earnings From 2004 Forward and Revealed 15 Material Weaknesses

A restatement constitutes an admission of falsity. *E.g., In re Sipex Corp. Sec. Litig.*, 2005 WL 3096178, at *1 (N.D. Cal. Nov. 17, 2005) ("Sipex's own public admission that its financial reports for the period in question should not be relied upon and would be 'restated' meant that the as-issued reports were materially inaccurate under GAAP."); *Kaltman v. Key Energy Servs.*, 447 F. Supp. 2d 648, 658 (W.D. Tex. 2006) (same). "[T]he mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made." *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 486 (S.D.N.Y. 2004).[16]

Here, the originally audited retained earnings figure as of December 31, 2005 was $22.2 million. ¶52. After the multitude of restatement adjustments, primarily relating to depreciation and improper capitalization of expenses, the restated retained earnings was $5.0 million, a reduction of approximately 77%

---

[16] *See also WaMu II,* 259 F.R.D. at 505 ("As WaMu's auditor, Defendant Deloitte can be held liable for material misrepresentations by WaMu that appear in those portions of the Offering Documents that Deloitte certified."); *Batwin,* 2008 WL 2676364, at **21-23 (same).

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT KPMG'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT         No. 2:08-CV-07844 JHN (AGRx)

17

from the originally reported amount.  *Id.*  Similarly, the restatement adjustments for 2006 and 2007 were staggering, as well. For example, the retained earnings for 2007 originally reported as $13.3 million was adjusted down to $2.2 million or by 83%, and this reflects the one-time positive restatement "impairment" adjustment of $17.3 million. Without this curious adjustment, retained earnings would have swung to a deficit of almost $15 million at December 31, 2007. ¶63.

However, just as staggering was the quantity and severe nature of the 15 material weaknesses in internal controls. ¶¶67-70,171. [17] Notwithstanding, KPMG asserts that there are no allegations in the Complaint that demonstrate that its audit certifications were false and misleading **when issued**.  KPMG Br. at 20. KPMG's reading of SFAS 154 is mistaken. ¶125; *see also* ¶¶4, 123-26. Courts have repeatedly reaffirmed that under GAAP, "previously issued financial statements should be restated only to correct **material** accounting errors **that existed at the time the statements were originally issued.**" *Atlas*, 324 F. Supp. 2d at 486; *Commtouch,* 2002 WL 31417998, at **7-9 (same).[18] Indeed, "[a] restatement is specifically not proper for new information or subsequent developments or for better insight or improved judgment." *In re Interpool, Inc. Sec. Litig.*, 2005 WL 2000237, at *5 (D.N.J. Aug. 17, 2005).

---

[17] Defendant's reporting of a few material weaknesses for 2004 does not absolve it from liability, as it failed to discover and/or report upon the several other existing material weaknesses later revealed. KPMG Br. at 9 n.12, 22 n.22. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.,* __ F. Supp. 2d __, 2009 WL 4668579, at *6 (S.D.N.Y.  Dec. 9, 2009) (statements that remedial measures were in place to correct financial reporting deficiencies were misleading where "[d]efendants lacked the capacity and commitment to remedy the significant weaknesses in internal controls[.]"); ¶¶187-95.

[18] *Compare id.,* at *9 (where, as here, the Company's "own [statement] supports an inference that [the Company] restated its revenues based on facts available at the time revenue was recognized") *with* ¶406 (8-K: "**At the time of the acquisition of its Texas assets** in 2000, the Company applied a rate of depreciation for financial reporting purposes that did not consider the length of time the assets were in service prior to being acquired.").

Additionally, KPMG attempts to limit the decision to restate to SW and/or PwC. KPMG Br. at 1-2,8-10,20-22. This effort must fail. "Whether [defendant] participated in the decision to restate the earlier statements or not . . . the existence of restated financial results is sufficient to support plaintiffs' belief that the statements were misstated." *In re Cylink Sec. Litig*., 178 F. Supp. 2d 1077, 1084 (N.D. Cal. 2001).[19]  Thus, plaintiffs adequately alleged that KPMG made materially false and misleading statements in the registration statements.

### C.    The Section 11 Claim Is Not Time-Barred

Plaintiffs' Section 11 claim is timely because: (1) plaintiffs bring their claim pursuant to the registration statements' post-effective amendments; and (2) plaintiffs' Complaint relates back under Rule 15(c)(1)(B) to the two initially-filed class action complaints that named KPMG.[20]

### 1.    Registration Statements Issued During the Class Period Are "New" Offerings; the Statute of Repose Did Not Run

Although plaintiffs concur with KPMG that a three-year period of repose applies to their §11 claim, *see Johnson v. Aljian,* 490 F. 3d 778, 784 (9th Cir. 2007) (citing 15 U.S.C. §77*m*), the parties are in sharp disagreement as to the number and identity of the registration statements at issue. Although the Complaint alleges the various registration statements and the respective dates

---

[19] *See* Goldberg Decl., Ex.2 (KPMG letter to SEC stating that there were no accounting disagreements with SW Management); *see also* ¶5 (fact of restatement discussed with KPMG).

[20] KPMG concedes it was sued by two plaintiffs in the initial actions. KPMG Br. at 13 (plaintiffs Harroch and Johnston filed their class actions on December 8 and 12, 2008, respectively). Further, the *Perrin* initial complaint (filed November 26, 2008) alleges both the suspension of the DRIP distribution and the termination of KPMG as SW's auditor. Dkt. No. 1, ¶¶34, 44. Thus, KPMG was not "first sued on October 29, 2009." *See generally Am. Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554 (1974) (limitations tolled for all members of the class upon filing of first class action complaint); *In re WorldCom, Inc. Sec. Litig.,* 2004 WL 540450, at *6 n.2 (S.D.N.Y. Mar. 19, 2004) (explained further).

they became effective (*i.e.,* ¶¶71-89), KPMG ignores all but the documents with the words "registration statement" in the title, for example, the April 5, 2005 S-3/A and April 19, 2006 S-3.  KPMG Br. at 13-14.  KPMG fails to take into account that the DRIPs are shelf registration statements, subject to special rules permitting *later-filed* 10-Ks to be deemed new registration statements -- with new effective dates -- such that shares purchased after their issuance are purchased "pursuant to" the offering.  The Certificates of Named Plaintiffs list purchases pursuant to "registration statements" issued within three years before the date this action was commenced against KPMG, *i.e.*, December 2, 2008.  Thus, the claims are timely.

SW's April 5, 2005 (the S-3\A), and April 19, 2006 (the S-3) registration statements state on their cover pages that "the securities being registered on this Form" are "pursuant to Rule 415 under the Securities Act of 1933 . . ." KPMG RJN, Ex. A at 3; Ex. D at 2.  Because the issuance of this stock was pursuant to Rule 415, SEC Regulation S-K, Item 512 applies as the S-3/A and S-3 state:

> The undersigned Registrant hereby undertakes that, for purposes of determining any liability under the Securities Act of 1933, each filing of the Registrant's annual report pursuant to Section 13(a) or Section 15(d) of the [Exchange Act] that is incorporated by reference in the registration statement shall be deemed to be a new registration statement relating to the securities offered therein, and the offering of such securities at that time shall be deemed to be the initial *bona fide* offering thereof. ¶¶80, 87-88.[21]

Not only did the S-3/A and S-3, at Ex. 23.2 to each, include KPMG's "expert" audit certifications for the years ended December 31, 2003 through

---

[21] The Forms S-3/A and S-3 also provided, in accordance with Item 512, "[T]hat, for purposes of determining any liability under the [1933 Act], each such post-effective amendment shall be deemed to be a new registration statement relating to the securities offered therein, and the offering of such securities at that time shall be deemed to be the initial *bona fide* offering thereof." 17 C.F.R. §229.512(a),(b); ¶¶78,82,85.  Here, the "amendments" and new registration statements included, *inter alia,* the Class Period 10-Ks.  ¶¶73,78,82,86; 17 C.F.R. §229.512.

December 31, 2005, ¶¶79, 83-84, but Exhibit 23.1 to each of SWC's Form 10-Ks filed for 2005, 2006 and 2007, entitled "Consent of Independent Registered Public Accounting Firm," expressly states:

> *We consent to the incorporation by reference in the registration statements (Nos. ... 333-121426 and 333-133399) on Form S-3 ... of our reports dated [March 27, 2008,]* with respect to the consolidated balance sheets of SouthWest Water Company and subsidiaries as of December 31, 2007 and 2006, and the related consolidated statements of income, changes in stockholders' equity, and cash flows for each of the years in the three-year period ended December 31, 2007, and all related financial statement schedules, and the effectiveness of internal control over financial reporting as of December 31, 2007, which reports appear in the December 31, 2007, annual report on Form 10-K of SouthWest Water Company.

*Id.* at ¶¶80, 87-88.   In light of its own consents, KPMG is precluded from arguing that only the initial effective dates of April 5, 2005, and April 19, 2006, are pertinent (KPMG Br. at 11-14) to a determination of timeliness. Indeed, the very authorities cited by KPMG note the special shelf registration rules:

> [T]he statute of repose for registered securities generally begins to run upon the effective date of the registration statement for the securities purchased. 15 U.S.C. §17*m.*    However, when the registration is a "shelf-registration" under SEC Rule 415, the filing of a post-effective amendment shall be deemed to be a new registration statement relating to the securities offered therein[.]" 17 C.F.R. §229.512(a)(2)(1990).   In such cases, the "post-effective amendment is treated as an "initial bona fide offering" and the period of repose commences on the date of the post-effective amendment. 17 C.F.R. §229.512(a)(2); *In re Am. Continental Corp./Lincoln Sav. & Loan Sec. Litig.,* 794 F. Supp. 1424, 1452 (D. Ariz. 1992); *Guenther v. Cooper Life Sci.,* 759 F. Supp. 1437, 1440 (N.D. Cal. 1990).

*Metropolitan,* 532 F. Supp. 2d at 1284 (case cited in KPMG Br. at 11-12);[22]

---

[22] *Accord Finkel v. Stratton Corp.,* 962 F.2d 169, 174 (5th Cir. 1992) (offering at issue was not pursuant to Rule 415, however, court noted: "[Item 512] … deems the

*Countrywide,* 588 F. Supp. 2d at 1164-65 (same; citing *Finkel, Guenther,* and *Metropolitan*). [23] Further, when shareholders purchase after such an "amendment" it is "pursuant to" that amendment or "new" registration statement. The limitations period begins anew even if the filing itself "does not offer additional securities." *Metropolitan,* 532 F. Supp. 2d at 1285.  Thus, the "statute of repose will be calculated from the date of the amendment . . .". *Id.* "The registration statement is 'new' because the representations in it are deemed made again at the effective date." *Countrywide,* 588 F. Supp. 2d at 1165.

Here, plaintiff Moshier purchased after the effective date of the 2005 Form 10-K, the April 19, 2006, Form S-3, and the 2006 Form 10-K;[24] plaintiff Bush purchased shares after the effective date of the April 19, 2006, Form S-3 and the 2006 Form 10-K; and plaintiff Yeatte purchased after the effective date of the April 19, 2006, Form S-3 and the Forms 10-K for 2006 and 2007.  All of these offerings were made less than three years before KPMG was first sued.[25]

### 2. KPMG Concedes It Was Named In Two Initial Complaints; There Is Relation-Back Under Rule 15(c)(1)(B) for the Added §11 Claim

The first-filed complaint in a securities class action tolls the statute of limitations, particularly where, as here, the defendant was named in at least one of the initially filed complaints and any added claims center on substantially the same conduct and/or misstatements.  *Alpern v. UtilCorp United, Inc.,* 84 F.3d 1525, 1543 (8th Cir. 1996) (added §11 DRIP claim based on same transactions,

offering date to be the post-effective registration date, not the initial registration date. *See … Guenther...*"); *P. Stolz Family P'ship LP v. Daum,* 355 F.3d 92, 106 (2d Cir. 2004) (same) (cases cited in KPMG Br. at 11-14).

[23] KPMG's citation to *In re Countrywide Fin. Corp. Sec. Litig.,* 2009 WL 943271 (C.D. Cal. Apr. 6, 2009), is inapposite. Rule 430B concerning prospectuses does not limit auditor liability where the auditor files consents under §7, as here. *Id.*

[24] Moshier also filed one of the initial complaints (No. 08-cv-08385, Dkt. #1).

[25] Thus, the Complaint *does* set forth the facts for the timeliness of the §11 claim. ¶¶26,71-115,204,218; *see also* Goldberg Decl., Ex. 4 (summarizing same).

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT KPMG'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT          No. 2:08-CV-07844 JHN (AGRx)

22

occurrences and conduct alleged in original class action complaint, where defendant was named under §10(b) only, relates back); *In re Complete Mgmt., Inc. Sec. Litig.,* 153 F. Supp. 2d 314, 336 (S.D.N.Y. 2001) ("No defendant can credibly complain of surprise that the complaint was amended to include §11 claims based on the 1996 statements, when the original complaint included §10(b) claims based on those facts."); *accord Martell v. Trilogy Ltd.,* 872 F.2d 322, 325 (9th Cir. 1982).[26]  Further, lead plaintiffs in consolidated securities actions may add additional new named plaintiffs, who purchased the securities at issue with respect to newly added claims.  It is unnecessary to name a particular defendant in *all* initial complaints in order for lead plaintiff to name the defendant in the consolidated action.  *Ambruster v. Cellcyte Genetics Corp.,* 2008 WL 1929903, at *1 (W.D. Wash. Apr. 28, 2008).

Here, the original complaints were based on the same "transactions, occurrences and conduct:" The restatement of SW's audited financials and material weaknesses in internal controls.  The Company's audited financials and reports on internal controls included in SW's Forms 10-K issued during the Class Period, which themselves were deemed registration statements and\or post-effective amendments to earlier issued registration statements (*see infra,* §III.C.1).  In addition, as KPMG concedes, at least two original class action complaints named KPMG for violations of §10(b) of the 1934 Act. *Infra,* n.20.[27]

---

[26] *See also In re Portal Software, Inc. Sec. Litig.,* 2005 WL 1910923, at *15 (N.D. Cal. Aug. 10, 2005); *In re Juniper Networks, Inc. Sec. Litig.,* 542 F. Supp. 2d 1037, 1052-53 (N.D. Cal. 2008); *In re JDS Uniphase Corp. Sec. Litig.,* 2005 WL 43463, at *10 (N.D. Cal. Jan. 6, 2005); *In re PMA Capital Corp. Sec. Litig.,* 2005 WL 1806503, at *20 (E.D. Pa. July 27, 2005); *cf. Guerrero v. RJM Acquisitions LLC,* 499 F.3d 926, 933 (9th Cir. 2007) (addition of omissions and misrepresentations claim does not relate back to a market manipulation claim); *Belodoff v. Netlist, Inc.,* 2009 WL 1293690, at *13 (C.D. Cal. Apr. 17, 2009) (Carter, J.) (same).

[27] Defendant's authorities are inapposite. *E.g., In re DDI Corp. Sec. Litig.,* 2005 WL 3090882, at *8 n.9 (C.D. Cal., 2005) (Manella, J.) (no relation back where proposed added plaintiffs purchased notes and not stock; notes were not subject of

1    Thus, KPMG's relation-back and related arguments are without merit.

2         **D.    KPMG's Standing Arguments Are Baseless**

3         Section 11 confers standing on any person who purchases a security

4    pursuant to a registration statement that misrepresents or omits a material fact.

5    *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1077 (9th Cir. 1999).  At the

6    pleading stage, courts must "accept as true plaintiffs' allegations that they made

7    their stock purchases in or traceable to" registration statements.  *In re Suprema*

8    *Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 274 n.7 (3d Cir. 2006); *In re*

9    *SeeBeyond Tech. Corp. Sec. Litig.*, 266 F. Supp. 2d 1150, 1171 (C.D. Cal. 2003).

10   Plaintiffs adequately allege that they purchased stock pursuant to the Plan issued

11   pursuant or traceable to the registration statements.  ¶26; *see also* ¶¶1, 196, 207,

12   216-17.  "At this stage of the litigation, the Plaintiffs need do no more in order to

13   allege standing." *Metropolitan*, 532 F. Supp. 2d at 1281.

14        KPMG argues, without authority, that plaintiffs did not allege they

15   purchased shares pursuant or traceable to a specific registration statement.

16   KPMG Br. at 24.  However, plaintiffs clearly allege that they purchased their

17   stock pursuant or traceable to the registration statements and submitted

18   certifications  reflecting their stock purchases.  ¶¶26,196,207,216-17.  Defendant

19   provides no authority that holds more is required. *Cf. Ross v. Warner*, 480 F.

20   _____

21   original complaints); *In re Xchange, Inc. Sec. Litig.,* 2002 WL 1969661, at *4 (D.
     Mass. Aug. 26, 2002) (rejecting new 1933 Act claims based on IPO documents
22   issued more than one year prior to the beginning of the class period in initial
     complaints); *Louisiana-Pacific Corp. v. ASARCO,* 5 F.3d 431, 434-35 (9th Cir.
23   1993) (attempt to name new party in amended complaint under Rule 15(c)(3) did
     not relate back, where no mistake in identity); *In re Adelphia Comm'ns Corp. Sec.*
24   *& Deriv.* Litig., 2005 WL 1278544, at *16 (S.D.N.Y. May 31, 2005) (permitting
     plaintiffs to add claim against underwriters based on an earlier registration
25   statement under Rule 15(c)(2) provided *any* class plaintiff had standing); *see also*
26   Wright & Miller, 6A FED. PRACT. & PROC. CIV. §1497 ns. 39, 46 and
     accompanying text (2d ed. West 2009) (citing *Gridley v. Sayre & Fisher Co.,* 409
27   F. Supp. 1266, 1271 (D.S.D.1976); *Woods v. Homes & Structures. of Pittsburgh,*
28   *Kansas, Inc.,* 489 F. Supp. 1270 (D. Kan. 1980)).

Supp. 268, 273 (S.D.N.Y. 1979) (plaintiffs properly pled a §11 claim without having to explicitly allege that they purchased shares pursuant to one of three registration statements); *see also infra,* §III.C.1. Second, KPMG contends, again without authority, that plaintiffs not only must allege that they purchased shares pursuant or traceable to a defective registration statement, but they also must swear under oath that they have done so.   KPMG Br. at 24-25. Relevant authority holds otherwise.  *In re Brooks Automation, Inc. Sec. Litig.*, 2007 WL 4754051, at *5 (D. Mass. 2007); *Carson v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 1998 WL 34076402, at *6 (W.D. Ark. Mar. 30, 1998).   KPMG, moreover, ignores the well-established principle that courts must accept the plaintiffs' allegations as true. *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1057 (9th Cir. 2008).

Finally, KPMG claims that although Lead Plaintiff has previously submitted certifications (Dkt. 9, Attach. 1, Ex. B), the fact that such certifications are not attached to the Complaint requires dismissal.  KPMG Br. at 25.  Courts have expressly rejected this argument.  *Atlas*, 324 F. Supp. 2d at 500; *Fellman v. Electro Optical Sys. Corp.*, 2000 WL 489713, at *13 (S.D.N.Y. Apr. 25, 2000).  Thus, plaintiffs have adequately alleged standing.[28]

## IV.   CONCLUSION

For all the reasons set forth herein, plaintiffs respectfully submit that defendant's motion to dismiss the Complaint should be denied.   In the alternative, plaintiffs request leave to file and serve an amended complaint to address any deficiencies identified by the Court.  *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (adherence to liberal grants of leave to amend is "especially important in the context of the PSLRA").

---

[28] Defendant's authorities are inapposite. *E.g., Greater Pa. Carpenters Pension Fund v. Whitehall Jewellers, Inc.*, 2005 WL 1563206, at *4 (N.D. Ill. June 30, 2005) (permitting 20 days to file amended certificate where plaintiff failed to report whether he sought to be a representative plaintiff in any other action).

1    Dated:    March 8, 2010

2                           By:   *s/Michael Goldberg*

                           Lionel Z. Glancy (#134180)

3                          Michael Goldberg (#188669)

                         Ex Kano S. Sams II (#192936)

4                          Glancy Binkow & Goldberg LLP

                         1801 Avenue of the Stars, Suite 311

5                          Los Angeles, California 90067

                         Telephone: (310) 201-9150

6                          Facsimile: (310) 201-9160

                         info@glancylaw.com

7                          Frederick W. Gerkens, III

8                          1430 Broadway, Suite 1603

                         New York, New York 10018

9                          Telephone: (212) 382-2221

                         Facsimile: (212) 382-3944

10                        fgerkens@glancylaw.com

11                        Cohen Milstein Sellers & Toll PLLC

                       Daniel S. Sommers (*pro hac vice*)

12                        S. Douglas Bunch

                       Joshua M. Kolsky

13                        1100 New York Avenue, N.W.

                       Suite 500, West Tower

14                        Washington, DC  20005

                       Telephone:  (202) 408-4600

15                        Facsimile:   (202) 408-4699

16                        dsommers@cohenmilstein.com

17                        Co-Lead Counsel for Lead Plaintiffs and the Class

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE BY ELECTRONIC POSTING
PURSUANT TO CENTRAL DISTRICT OF CALIFORNIA
LOCAL RULES AND ECF GENERAL ORDER NO. 08-02
AND BY MAIL ON ALL KNOWN NON-REGISTERED PARTIES**

I, the undersigned, say:

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court.  I am over the age of 18 and not a party to the within action. My business address is 1801 Avenue of the Stars, Suite 311, Los Angeles, California 90067.

On March 8, 2010, I caused to be filed the following document by posting such documents electronically to the ECF website of the United States District Court for the Central District of California:

1.  **OPPOSITION OF LEAD PLAINTIFFS TO DEFENDANT SOUTHWEST WATER COMPANY'S, ANTON C. GARNIER'S, MARK A. SWATEK'S, CHERYL L. CLARY'S, AND PETER J. MOERBEEK'S MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

2.  **DECLARATION OF MICHAEL GOLDBERG [EXHIBITS A-G]**

3.  **OPPOSITION OF LEAD PLAINTIFFS TO DEFENDANT SOUTHWEST WATER COMPANY'S, ANTON C. GARNIER'S, MARK A. SWATEK'S, CHERYL L. CLARY'S, AND PETER J. MOERBEEK'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

4.  **DECLARATION OF MICHAEL GOLDBERG [EXHIBITS A-B]**

5.  **PARTIAL OPPOSITION OF LEAD PLAINTIFFS TO DEFENDANT KPMG LLP'S REQUEST FOR JUDICIAL NOTICE**

6.  **STATEMENT OF GENUINE ISSUES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT SOUTHWEST WATER COMPANY'S, ANTON C. GARNIER'S, MARK A. SWATEK'S, CHERYL L. CLARY'S, AND PETER J. MOERBEEK'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

7.  **AFFIDAVIT OF DANIEL S. SOMMERS PURSUANT TO RULE 56(f)**

8.  **LEAD PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT KPMG LLP'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

**9.     DECLARATION OF MICHAEL GOLDBERG IN SUPPORT OF LEAD PLAINTIFFS' OPPOSITION TO DEFENDANT KPMG LLP'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT [EXHIBITS 1-4]**

**10.     LEAD PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITIONS TO DEFENDANT KPMG AND THE SOUTHWEST WATER COMPANY DEFENDANTS' MOTIONS TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

and, simultaneously served upon the following ECF-registered parties:

Blake M Harper     bmh@hulettharper.com, office@hulettharper.com

Daniel S Sommers     dsommers@cohenmilstein.com

Dennis J. Stewart     dstewart@hulettharper.com

Jennifer Marie Feldman     jennifer.feldman@dlapiper.com, sue.walton@dlapiper.com

Joon M Khang     joon@khanglaw.com

Lionel Z Glancy     lglancy@glancylaw.com

Michael M Goldberg     mmgoldberg@glancylaw.com, dmacdiarmid@glancylaw.com, info@glancylaw.com, rmaniskas@glancylaw.com, rprongay@glancylaw.com

Robert A Meyer     rmeyer@loeb.com, ptaylor@loeb.com

Robert W Brownlie     robert.brownlie@dlapiper.com, connie.garner@dlapiper.com, jennifer.feldman@dlapiper.com

Saul D Brenner     sbrenner@loeb.com, vhenderson@loeb.com

Steven J Toll     stoll@cohenmilstein.com

There are no non-ECF-registered parties.

   I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 8, 2010, at Los Angeles, California.

     ***S/Michael Goldberg***
     Michael Goldberg