1  ROBERT W. BROWNLIE (Bar No. 138793)
   robert.brownlie@dlapiper.com
2  JENNIFER M. FELDMAN (Bar No. 216645)
   jennifer.feldman@dlapiper.com
3  DLA PIPER LLP (US)
   401 B Street, Suite 1700
4  San Diego, CA  92101-4297
   Tel:   619.699.2700
5  Fax:   619.699.2701

6  Attorneys for Defendants
   SouthWest Water Company, Anton C. Garnier,
7  Mark A. Swatek, Cheryl L. Clary, and Peter J.
   Moerbeek

8

9                    UNITED STATES DISTRICT COURT

10                   CENTRAL DISTRICT OF CALIFORNIA

11

12  ROBERT G. PERRIN and DIANE L.          CASE NO. 2:08-cv-07844-JHN-AGRx
    PERRIN, Individually and on Behalf of
13  All Others Similarly Situated,         **REPLY BRIEF IN SUPPORT OF**
                                           **MOTION FOR PARTIAL**
14              Plaintiffs,                **SUMMARY JUDGMENT**

15        v.

16  SOUTHWEST WATER COMPANY,               Date:   May 17, 2010
    *et al.*,                              Time:   2:00 pm
17                                         Judge:  Hon. Jacqueline H. Nguyen
                Defendants.                Courtroom: 790

18

19

20

21

22

23

24

25

26

27

28

## I. INTRODUCTION

The undisputed facts show that Plaintiffs cannot possibly establish standing to assert a claim under Section 11 of the Securities Act of 1933 ("Section 11").[1] Section 11 allows investors to sue when they have purchased shares of stock issued pursuant to a registration statement that included materially misleading information. To establish standing to bring a Section 11 claim, Plaintiffs must trace the shares they purchased to the allegedly misleading registration statement. The Motion for Partial Summary Judgment ("Motion" or "Mot.") showed that Plaintiffs cannot trace their shares to any registration statement. The Motion, thus, negated the existence of a material element of Plaintiffs' Section 11 claim, shifting the burden to Plaintiffs to raise a genuine issue of material fact. In their Opposition to Defendants' Motion for Partial Summary Judgment (the "Opposition" or "Opp."), Plaintiffs have failed to satisfy that burden. Therefore, summary judgment on Plaintiffs' alleged Section 11 claim should be granted.[2]

In their Opposition, Plaintiffs do not attempt to show or even argue that they can trace their shares to the DRIP Registration Statements. Instead, Plaintiffs try to sidestep the issue, raising the novel argument that tracing is not required. They claim without any factual basis that Defendants designed the DRIP Plan with the intention of making it impossible for Plaintiffs to trace, and that supposedly excuses their statutory burden to trace or makes the requirement to trace inequitable.

As discussed in the Motion and below, the manner in which shares of SWWC stock were issued and transferred by the Company's transfer agent is the norm for public companies. This system was established to facilitate the large

---

[1] Plaintiffs allege that they purchased shares of SouthWest Water Company ("SWWC" or the "Company") stock through the Company's Amended and Restated Dividend Reinvestment and Stock Purchase Plan ("DRIP Plan") and pursuant to two separate registration statements associated with the DRIP Plan that were filed with the Securities and Exchange Commission ("SEC") on April 5, 2005 and April 19, 2006, respectively (the "DRIP Registration Statements").

[2] Plaintiffs' claim under Section 15 of the Securities Act of 1933 ("Section 15") is a secondary liability claim, and success on this claim is predicated on success on the Section 11 claim. Because summary judgment is appropriate on the Section 11 claim, it is necessarily appropriate on the Section 15 claim as well.

1  volumes of securities transactions that are characteristic of modern securities
2  markets, not to reduce exposure to Section 11 claims.  This system has existed for
3  decades and has not prompted Congress to amend Section 11 to expand standing,
4  which rebuts Plaintiffs' assertion that the strict standing requirement conflicts with
5  Congressional intent.  Indeed, courts have found the opposite; *i.e.*, the rigid tracing
6  requirement for strict liability Section 11 claims dovetails with the looser
7  "purchaser or seller" standing requirement for Section 10(b) claims that require a
8  plaintiff to establish reliance and scienter.  Therefore, none of these arguments
9  raises a genuine issue of material fact.
10  Alternatively, Plaintiffs argue they are entitled to a continuance of the
11  Motion so that they may have the opportunity to conduct discovery.  This request
12  should be denied.  Plaintiffs have failed to set forth with specificity any existing
13  relevant information they seek to discover or how that information will allow them
14  to successfully oppose the Motion.  The declaration of SWWC's transfer agent
15  sufficiently explains why Plaintiffs cannot trace their shares to the DRIP
16  Registration Statements.  The generalized discovery suggested by Plaintiffs will not
17  lead to the discovery of information that will successfully overcome the undisputed
18  fact that it is impossible for Plaintiffs to trace.  Therefore, Plaintiffs' request to
19  delay the inevitable should be denied as well.

20  **II.  THE OPPOSITION FAILS TO RAISE A GENUINE ISSUE OF MATERIAL FACT**
21

22  To have standing to bring a Section 11 claim, Plaintiffs must establish that
23  they purchased shares pursuant to the DRIP Registration Statements.  *In re Nat'l.*
24  *Golf Properties, Inc. Sec. Litig.*, No. CV 02-1383, 2003 WL 23018761, at *1 (C.D.
25  Cal. Mar. 19, 2003), (citing *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076,
26  1080-82 (9th Cir. 1999)).  This requires Plaintiffs to trace the shares they purchased
27  to those registration statements.  *See Krim v. pcOrder, Inc.*, 402 F.3d 489, 495-96
28  (5th Cir. 2005).  The undisputed facts show that Plaintiffs cannot establish standing

1  to maintain their alleged Section 11 claim because they cannot trace their shares to
2  the registration statements.  Consequently, the burden has shifted to Plaintiffs to
3  provide evidence that raises a genuine issue of material fact.  *See Celotex Corp. v.*
4  *Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate here as
5  Plaintiffs have failed to satisfy that burden.

6  **A.  Plaintiffs Cannot Trace Their Shares to the DRIP Registration Statements and, Therefore, Cannot Establish Standing.**
7

8  Plaintiffs insist they have standing because they purchased shares "pursuant
9  to" the DRIP Registration Statements and that it is irrelevant that they may have
10 received shares originating from another source.  (Opp. 2:19-20.)  The statutory
11 language of Section 11 and case law interpreting it refute this argument.

12 The relevant portion of Section 11 defines the class of persons who may have
13 a cause of action as follows:

14 > In case any part of the registration statement, when such part became effective, contained an untrue statement of a
15 > material fact or omitted to state a material fact required to be stated therein or necessary to make the statements
16 > therein not misleading, *any person acquiring such security* . . . may. . . sue . . . .
17

18 15 U.S.C. §77k(a) (2010) (emphasis added).  The statute's plain language shows
19 that a claim can be brought only by a person who acquired "such security", *i.e.* the
20 security registered by the challenged registration statement.  *See id.*  Therefore, to
21 have standing under Section 11, Plaintiffs must prove that they purchased, not just
22 any SWWC shares, but shares issued pursuant to the offending registration
23 statement.  *See Guenther v. Cooper Life Sciences, Inc.*, 759 F. Supp. 1437, 1439
24 (N.D. Cal. 1990) (citing *Abbey v. Computer Memories, Inc.*, 634 F. Supp. 870, 872
25 (N.D. Cal. 1986)); *Lorber v. Beebe*, 407 F. Supp. 279, 287 (S.D.N.Y. 1976)
26 (plaintiff must plead and prove that his stock was issued pursuant to the particular
27 defective statement).  Tracing is the method by which plaintiffs demonstrate that
28 they purchased "such security."  Brian Murray, *Aftermarket Purchasers Standing*

*Under §11 of The Securities Act of 1993*, 73 ST. JOHN'S L. REV. 633, 650 n.21 (1999) (citing *Kirkwood v. Taylor*, 590 F. Supp. 1375, 1377 (D. Minn. 1984)).[3] Thus, under Section 11, purchasers of stock have standing to sue only if they can trace their shares to the allegedly misleading registration statement. *In re SeeBeyond Techs. Corp. Sec. Litig.*, 266 F. Supp. 2d 1150, 1171 (C.D. Cal. 2003) (citing *Hertzberg*, 191 F.3d at 1081); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 400 (D. Md. 2004); *In re ZZZZ Best Sec. Litig.*, No. CV-87-3574, 1994 WL 746649, at *3 (C.D. Cal. Oct. 26, 1994) ("[A] plaintiff must prove that the shares purchased are traceable to the offering covered by the offending registration statement.").

Plaintiffs cannot establish standing by merely asserting they purchased SWWC shares issued "pursuant to the DRIP Registration Statements." They must trace the shares they acquired to those registration statements. *See id.* Defendants have demonstrated conclusively that Plaintiffs cannot possibly trace their shares of SWWC stock to the DRIP Registration Statements. *See* Declaration of James Kirkland in Support of Defendants' Motion for Partial Summary Judgment ("Kirkland Decl."), ¶3.) SWWC's transfer agent during the relevant time period, Bank of New York Mellon Shareowner Services ("BNY Mellon"), has explained under oath that it maintains common stock reserves for shares of SWWC stock to be issued pursuant to various SWWC stock plans and that those reserves contain shares, both unregistered and registered, from a variety of sources. *Id.* Because the shares in the reserve pools are undifferentiated, it is impossible to trace a particular share of stock to a specific registration statement. *Id.* Thus, as a matter of law, Plaintiffs do not have standing to bring a claim under Section 11.

Plaintiffs' argument that the origin of the shares they received is irrelevant is wrong, (Opp. 1:22-24; 2:19-20), and their reliance on *In re PolyMedica Corp. Sec.*

---

[3] A true and correct copy of this law review article is attached as Exhibit A to the Declaration of Jennifer M. Feldman in Support of the Reply Brief in Support of Defendants' Motion for Partial Summary Judgment ("Feldman Decl.").

1  *Litig.*, 224 F.R.D. 27 (D. Mass. 2004) and *In re Reliant Sec. Litig.*, No. H-02-1810,
2  2005 U.S. Dist. LEXIS 9716 (S.D. Tex. Feb. 18, 2005) is misplaced. (Opp. 2:21-
3  23.) Neither case addresses the tracing requirement under Section 11. Indeed,
4  *PolyMedica* does not involve a Section 11 claim at all. *PolyMedica*, 224 F.R.D. at
5  31-32. *Reliant* actually supports the proposition that Section 11 standing requires a
6  plaintiff to own a security that can be traced to the challenged registration
7  statement. *Reliant*, 2005 U.S. Dist. LEXIS 9716, at *31-32.

8        Both the statute and the case law show that Plaintiffs' standing to bring the
9  Section 11 claim is dependent upon their ability to show that they own "such
10 security" — a security issued pursuant to the DRIP Registration Statements. *See*
11 *SeeBeyond*, 266 F. Supp. 2d at 1171. To do this, Plaintiffs must be able to trace
12 their shares to the DRIP Registration Statements. Nothing in the Opposition raises
13 a genuine issue of material fact regarding Plaintiffs' ability to trace their shares and,
14 thus, Plaintiffs have failed to meet their burden in opposing the Motion. *See*
15 *Celotex*, 477 U.S. at 324.

16     **B.**    **Modern Methods of Securities Trading, Not Defendants'**
17             **Intentional Design, Make It Impossible for Plaintiffs to Trace.**

18       Plaintiffs would have the Court believe that Defendants intentionally
19 designed the DRIP Plan and the system by which their transfer agent holds and
20 issues shares of its stock to evade liability under Section 11. (Opp. 1:14-21.) This
21 is not so.

22       Modern methods of securities trading came in to effect to address the
23 significant burdens created by a certificate system in which a seller of securities had
24 to deliver actual certificates, registered in the purchaser's name on the books of the
25 issuer, to the purchaser or the purchaser's agent. *See* U.C.C. § 8-107(1962). This
26 created a massive burden on both the securities issuers that had to print new
27 physical certificates for transferred securities and on the broker-dealers and clearing
28 corporations that had to process the necessary transfer documents resulting from a

physical exchange of shares.  *See FleetBoston Fin. Corp. Sec. Litig.*, 253 F.R.D. 315, 344 (D.N.J. 2008) (citing Martin J. Aronstein et al., *Article 8 Is Ready*, 93 HARV. L. REV. 889, 890 (1980)).[4]  During the late 1960's this burden led to an industry-wide crisis known as the "Paper Crunch," which the SEC described as "the most prolonged and severe crisis in the securities industry in forty years."[5]  The securities industry responded to this crisis by creating a system that immobilized stock certificates in depositories and allowed participants to transfer securities through electronic book entries, avoiding the requirement of delivering actual securities certificates.  *Id.* (citing Charles W. Mooney, Jr., *Property, Credit and Regulatory Meet Information Technology: Clearance and Settlement in the Securities Markets*, 55 L. & CONTMP. PROBS. 131, 136 (1992)).[6]  This arrangement, whereby depositories are designated as nominal owners of securities on the books of the issuer and investors own only an entitlement in the aggregate number of shares in a particular stock is referred to as "street name registration."  *See* BLACK'S LAW DICTIONARY 1421-22 (6th ed. 1990).

While street name registration enables more efficient clearing of transactions in securities markets, it has made it impossible — except in the case of an *initial public offering* — for shareholders to satisfy the tracing requirement of Section 11.  *See FleetBoston*, 253 F.R.D. at 345; *see also Royal Ahold*, 351 F. Supp. 2d at 400 ("[b]ecause shares are often traded and purchased electronically . . . it may be difficult to trace purchased shares back to the original registration statements.")  A shareholder may be able to trace immediately after an initial public offering because *all* of the shares in the public market will have been registered pursuant to the IPO registration statement.

---

[4] Feldman Decl., Ex. B.

[5] Brokerage firms had become inundated with paper stock certificates that had to be altered, recorded, and then physically delivered to issuers for each and every trade.  To address this crisis, from June 12 to December 31, 1968 the New York Stock Exchange suspended all trading on Wednesdays to allow brokerage firms to process trades.  *See FleetBoston*, 253 F.R.D. at 344 n.30 (citing Jeanne L. Schroeder & David Gray Carlson, *Security Interests Under Article 8 of the U.C.C.*, 12 CARDOZO L. REV. 557, 562 n.13 (1990)).  *See* Feldman Decl., Ex. C.

[6] Feldman Decl., Ex. D.

1    Plaintiffs' attempt to portray Defendants as intentionally designing the DRIP
2    Plan to create this consequence has no factual support.  Defendants did not design
3    or create the system whereby its transfer agent maintained shares of its stock in a
4    manner in which it is impossible to trace any particular share to a particular
5    registration statement.  The method by which SWWC holds and issues securities is
6    not unique; it is typical of *all* publicly traded companies.  (*See* Kirkland Decl., ¶3.)
7    This is merely a consequence of the modern practice of holding and trading
8    securities electronically and cannot be used by Plaintiffs to excuse their inability to
9    establish standing.  Indeed, Plaintiffs have cited no cases supporting their novel
10   argument.

### C. Summary Judgment Will Not Create an Inequitable Result.

12   Plaintiffs falsely claim that a narrow interpretation of the standing
13   requirement for Section 11 claims would be inequitable. (Opp. 6:2-5.)  However,
14   enforcing a strict application of the tracing requirement here does not leave
15   Plaintiffs without a remedy.  *See Abbey*, 634 F. Supp. at 875.  The tracing
16   requirement prevents Plaintiffs from availing themselves of the relaxed liability
17   requirements of Section 11, which does not require Plaintiffs to plead or prove
18   reliance or scienter.  However, it does not mean Plaintiffs are without any potential
19   remedy.  Regardless of whether they can trace, Plaintiffs have a remedy under
20   Section 10(b) of the Securities Exchange Act of 1934 ("Section 10(b)").  Plaintiffs'
21   argument that they will be deprived of a remedy under Defendants' interpretation of
22   the standing requirement is meritless.

### D. The Tracing Requirement Reflects Congressional Intent to Limit Standing to a Narrow Group of People.

25   In a desperate attempt to avoid summary judgment, Plaintiffs inaccurately
26   depict the congressional intent behind Section 11.  Plaintiffs further assert, without
27   any authority, that Section 11 is focused on sales of stock, and once the sale is
28   complete, whatever follows the sale is irrelevant. (Opp. 5:13-14.)  Not true.

1   Section 11 provides for strict liability against an issuer of public securities
2   that has issued a materially false and misleading registration statement pursuant to
3   which its securities were sold to the public. *Kirkwood*, 590 F. Supp. at 1377; *see*
4   *also Krim*, 402 F. 3d at 495. It affords that remedy, however, only to persons
5   acquiring "such security." 15 U.S.C. §77k(a)(2010). Section 11 was not intended
6   to provide a remedy to every person who might have been harmed by a defective
7   registration statement. *Abbey*, 634 F. Supp. at 875; *Barnes v. Osofsky*, 373 F.2d
8   269, 272-73 (2d Cir. 1967). Courts have consistently acknowledged that a narrow
9   interpretation of Section 11 standing is consistent with congressional intent.

> In limiting those who can sue to any person acquiring such security, Congress specifically conferred standing on a subset of security owners -- those who actually purchased the tainted stock, not on the whole class of those who possibly purchased tainted stock.

13  *Krim*, 402 F.3d at 497.
14  When Congress enacted the Securities Act of 1933, including Section 11, it
15  was not confronted with the modern practice of holding stock in street name that is
16  now an impediment to Plaintiffs' standing to bring a Section 11 claim. However,
17  since its enactment Section 11 has been amended three separate times, most
18  recently in 1998.[7] None of these amendments included a change to the language
19  "any person acquiring such security." This is evidence of Congress' intent to keep
20  the strict standing requirement of Section 11 intact.

### III. PLAINTIFFS HAVE FAILED TO SATISFY THEIR BURDEN TO SHOW THAT A CONTINUANCE OF THE SUMMARY JUDGMENT MOTION IS WARRANTED

23  The Opposition fails to demonstrate that Plaintiffs are entitled to a
24  continuance of the Motion under Rule 56(f). In requesting a continuance under
25  Rule 56(f), Plaintiffs bear the burden of identifying *specific* facts that further
26  discovery would reveal, and explaining why those facts would preclude summary

---

[7] Originally enacted on May 27, 1933, Section 11 was amended on June 6, 1934 (*see* Ch. 404, Title II, §206, 48 Stat. 907); on December 22, 1995 (*see* P.L. 104-67, Title II, §201(b), 109 Stat. 762); and on November 3, 1998 (*see* P.L. 105-353, Title III, §301(a)(2), 112 stat. 3235).

1  judgment. *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir.
2  2006); *In re Exodus Commc'ns., Inc. Sec. Litig.*, No. C-01-2661, 2006 WL
3  1530081, at *3 (N.D. Cal. June 2, 2006).  The mere hope that further evidence may
4  develop prior to trial is an insufficient basis for a continuance under Rule 56(f).
5  *Exodus*, at *3 (citing *Cont'l. Mar. of S.F., Inc. v. Pac. Coast Metal Trades Dist.*
6  *Council*, 817 F.2d 1391, 1395 (9th Cir. 1987)).  Even in instances where there has
7  been no discovery prior to the motion, courts have denied a motion under 56(f) and
8  granted summary judgment. *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 988-
9  89 (9th Cir. 1999) (notwithstanding the automatic stay of discovery pursuant to the
10 Private Securities Litigation Reform Act of 1995, the court granted summary
11 judgment where defendants negated the factual basis for plaintiffs' claim).
12       Here, Plaintiffs have failed to set forth with specificity the relevant existing
13 information they need and more significantly, how that information would allow
14 them to successfully oppose the Motion.  Instead, Plaintiffs request discovery into
15 two general topics: (1) SWWC stock plans and (2) the traceability of Plaintiffs'
16 shares to the DRIP Registration Statements.  (Opp. 9:8-13; 9:26-28.)  Plaintiffs
17 contend that if the Company, in issuing shares under the DRIP Plan, drew
18 exclusively from shares issued under the DRIP Registration Statements, then they
19 necessarily purchased pursuant to those registration statements.  (Opp. 9:13-17.)
20 This argument ignores the undisputed fact that SWWC's transfer agent maintains
21 common reserves of stock, from which it draws for SWWC's stock plans, in which
22 stock from a variety of different sources are commingled.  *See* Kirkland Decl., ¶3.
23 Plaintiffs further contend that they have researched the fact that stock certificates
24 are typically labeled with a unique identifier, allowing issuers to trace shares.
25 (Opp. 10:9-11.)  This contention is general, and provides no information about
26 specific existing facts that would refute the fact that Plaintiffs cannot trace their
27 shares to the DRIP Registration Statements.  Plaintiffs have failed to indicate with
28 specificity any existing relevant information or explain how such information

1  would refute the undisputed fact that it is impossible for Plaintiffs here to trace their
2  shares to the DRIP Registration Statements.

## IV. CONCLUSION

For the reasons set forth above, Defendants respectfully request that the motion for partial summary judgment be granted.

Dated:  April 15, 2010                    DLA PIPER LLP (US)

*/s/ Robert W. Brownlie*
Robert W. Brownlie
Jennifer M. Feldman
401 B Street, Suite 1700
San Diego, CA  92101-4297
Telephone:  619 699-2700
Facsimile:   619 699-2700

Attorneys for Defendants
SouthWest Water Company, Anton C. Garnier, Mark A. Swatek, Cheryl L. Clary, and Peter J. Moerbeek