1   ROBERT W. BROWNLIE (Bar No. 138793)
    robert.brownlie@dlapiper.com
2   JENNIFER M. FELDMAN (Bar No. 216645)
    jennifer.feldman@dlapiper.com
3   DLA PIPER LLP (US)
    401 B Street, Suite 1700
4   San Diego, CA  92101-4297
    Tel:   619.699.2700
5   Fax:  619.699.2701

6   Attorneys for Defendants
    SouthWest Water Company, Anton C. Garnier,
7   Mark A. Swatek, Cheryl L. Clary, and Peter J.
    Moerbeek

8

9                UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11

12   ROBERT G. PERRIN and DIANE L.          CASE NO.  2:08-cv-07844-JHN-AGRx
     PERRIN, Individually and on Behalf of
     All Others Similarly Situated,         **REPLY BRIEF IN SUPPORT OF**
13                                          **MOTION TO DISMISS**
                    Plaintiffs,             **CONSOLIDATED AMENDED**
14                                          **CLASS ACTION COMPLAINT**
           v.
15                                          Date:       May 17, 2010
     SOUTHWEST WATER COMPANY,               Time:       2:00 p.m.
16   *et al.*,                              Judge:      Hon. Jacqueline H. Nguyen
                                            Courtroom:  790
17                  Defendants.

18

19

20

21

22

23

24

25

26

27

28

1

# **TABLE OF CONTENTS**

2

**Page**

3    I.      INTRODUCTION ................................................................................. 1

4    II.     THE COMPLAINT FAILS TO ADEQUATELY ALLEGE
             SCIENTER AS TO THE SECTION 10(B) CLAIM .................................... 2

5            A.   The Restatement Does Not Give Rise to a Strong Inference of
                  Scienter. ...................................................................................... 5

6            B.   The Complaint Lumps Defendants Together in a Failed Attempt
7                 to Conceal the Lack of Particularized Factual Allegations to
                  Establish a Strong Inference of Scienter. ......................................... 6

8            C.   Sarbanes-Oxley Certifications Do Not Give Rise to a Strong
                  Inference of Scienter. .................................................................... 7

9            D.   The Opposition Fails to Demonstrate that the Alleged "Red
10                Flags" of Internal Financial Control Weaknesses Give Rise to a
                  Strong Inference of Scienter. ........................................................ 13

11           E.   Neither the Confidential Witness Allegations Nor the Core
                  Business Doctrine Support a Strong Inference of Scienter. ............... 14

12           F.   Plaintiffs' Motive Allegations Are Insufficient to Establish
13                Scienter. .................................................................................... 15

     III.    THE COMPLAINT FAILS TO ADEQUATELY ALLEGE FALSITY ...... 18
14   IV.     CONTROL PERSON CLAIMS FAIL ................................................... 21
15   V.      CONCLUSION ............................................................................... 21

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

4

5

**CASES**

6

*Allison v. Brooktree Corp.*,
   999 F. Supp. 1342 (S.D. Cal. 1998) ....................................................... 6

7

*Andropolis v. Red Robin Gourmet Burgers, Inc.*,
   505 F. Supp. 2d 662 (D. Colo. 2007) ............................................. 8, 9, 11

8

9

*Backe v. Novatel Wireless, Inc.*,
   642 F. Supp. 2d 1169 (S.D. Cal. 2009) ................................................. 4

10

*Batwin v. Occam Networks, Inc.*,
   No. CV 07-2750, 2008 WL 2676364 (C.D. Cal. July 1, 2008) ............ 15

11

12

*Brody v. Transitional Hosps. Corp.*,
   280 F.3d 997 (9th Cir. 2002) ...................................................... 9, 11

13

14

*Bruns II v. Ledbetter*,
   583 F. Supp. 1050 (S.D. Cal. 1984) ..................................................... 7

15

16

*Craftmatic Sec. Litig. v. Kratsow*,
   890 F.2d 628 (3d Cir. 1990) ............................................................... 8

17

*Cutsforth v. Renschler*,
   235 F. Supp. 2d 1216 (M.D. Fla. 2002) ......................................... 9, 11

18

19

*Dura Pharmaceuticals, Inc. v. Broudo*,
   544 U.S. 336 (2005) .......................................................................... 8

20

*Glazer v. Capital Mgmt., LP v. Magistri*,
   549 F.3d 736 (9th Cir. 2008) ............................................................ 12

21

22

*In re Apple Computer, Inc.*, 127 Fed. App. 296, 300 (9th Cir. 2005) ...................... 15

23

*In re Ashworth, Inc. Sec. Litig.*,
   No. 99CV0121, 2000 WL 33176041 (S.D. Cal. July 18, 2000) ........... 16

24

25

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
   981 F. Supp. 2d 1069 (N.D. Cal. 2005) ....................................... 15, 19

26

*In re Cylink Sec. Litig.*,
   178 F. Supp. 2d 1077 (N.D. Cal. 2001) ............................................... 6

27

28

1

2

## TABLE OF AUTHORITIES
### (continued)

<u>**Page**</u>

*In re Daou Systems, Inc.*,
    411 F.3d 1006 (9th Cir. 2005)................................................................................. 13

*In re First Chicago Corp. Sec. Litig.*,
    769 F. Supp. 1444 (N.D. Ill. 1991) ......................................................................... 8

*In re Hansen Natural Corp. Sec. Litig.*,
    527 F. Supp. 2d 1142 (C.D. Cal. 2007) ...................................................... 5, 14, 16

*In re Hypercom Corp. Sec. Litig.*,
    2006 WL 1836181 (D. Ariz. July 5, 2006) ............................................................ 14

*In re Impac Mortg. Holdings Sec. Litig.*,
    554 F. Supp. 2d 1083 (C.D. Cal. 2008) ....................................................... 7, 9, 10

*In re Interpool, Inc. Sec. Litig.*,
    No. Civ. 04-321, 2005 WL 2000237 (D.N.J. Aug. 17, 2005)............................. 9, 11

*In re Lattice Semiconductor Corp. Sec. Litig.*,
    No. 04-1255, 2006 U.S. Dist. LEXIS 262 (D. Or. Jan. 3, 2006) .................. 4, 12, 13

*In re Ligand Pharm., Inc. Sec. Litig.*,
    No. 04cv-1620, 2005 WL 2461151 (S.D. Cal. Sept. 27, 2005) ............................. 7

*In re Marion Merrell Dow Inc., Sec. Litig. II*,
    No. 93-0251, 1994 WL 396187 (W.D. Mo. Jul. 18, 1994)...................................... 9

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) ................................................................ 14

*In re Microstrategy, Inc. Sec. Litig.*,
    115 F. Supp. 2d 620 (E.D. Va. 2000)..................................................................... 5

*In re PMI Group, Inc. Sec. Litig.*,
    Nos. C 08-1405, C 08-1406, 2009 WL 1916934 (N.D. Cal. July 1, 2009) ........... 17

*In re Read-Rite Corp. Sec. Litig.*,
    335 F.3d 843 (9th Cir. 2003).................................................................................. 15

*In re Secure Computing Corp.*,
    184 F. Supp. 2d 980 (N.D. Cal. 2001) .................................................................. 16

*In re SeeBeyond Techs. Corp. Sec. Litig.*,
    266 F. Supp. 2d 1150 (C.D. Cal. 2003) ................................................................ 16

DLA PIPER LLP (US)
SAN DIEGO

WEST\21914041.2

-iii-

NO. 2:08-cv-07844-JHN-AGRx
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

# TABLE OF AUTHORITIES
## (continued)

Page

*In re Silicon Graphics, Inc., Sec. Litig.*
    183 F.3d 970 (9th Cir. 1999)................................................................ 2, 3, 17

*In re Sketchers U.S.A., Inc. Sec. Litig.*, No. 05-55980 F. Appx. 626, 2008 WL 1721557.............. 4

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
    160 F. Supp. 2d 1059 (N.D. Cal. 2001) ............................................. 19

*In re Syntex Corp. Sec. Litig.*,
    855 F. Supp. 1086 (N.D. Cal. 1994), *aff'd*, 95 F.3d 922 (9th Cir. 1996)............................. 21

*In re United Telecomms., Inc. Sec. Litig.*,
    781 F. Supp. 696 (D. Kan. 1991) ..................................................... 9, 11

*In re UTStarcom,*
    617 F. Supp. 2d ...................................................................................... 4

*In re The Vantive Corp. Sec. Litig.*,
    283 F.3d 1079 (9th Cir. 2002)........................................... 2, 3, 13, 18

*In re Verifone Sec. Litig.*,
    784 F. Supp. 1471 (N.D. Cal. 1992) ............................................... 20

*In re Verisign, Inc. Deriv. Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) ...................................... 3, 20

*Lipton v. Pathogenesis Corp.*,
    284 F.3d 1027 (9th Cir. 2002)........................................................... 2

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008)...................................................... 4, 17

*Nursing Home Pension Fund Local 144 v. Oracle Corp.*,
    380 F.3d 1226 (9th Cir. 2004)........................................................ 18

*Panter v. Marshall Field & Co.*,
    646 F.2d 271 (7th Cir. 1981)............................................................. 8

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001)............................................................. 2

*Ross v. A.H. Robins Co., Inc.*,
    607 F.2d 545 (2d Cir. 1979), *cert. denied*, 446 U.S. 946 (1980) ............................ 8

*Rudolph v. UTStarcom*,
    560 F. Supp. 2d 880 (N.D. Cal. 2008) ...................................... 3, 4, 5

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Santa Fe Indus., Inc. v. Green*,
   430 U.S. 462 (1977) ........................................................................................... 8

*Semegen v. Weidner*,
   780 F.2d 727 (9th Cir. 1985) ............................................................................. 8

*Shapiro v. UJB Fin. Corp.*,
   964 F.2d 272, *cert. denied*, *UJB Fin. Corp. v. Shapiro*, 506 U.S. 934 (1992) ......... 9

*Shields v. Amoskeag Bank Shares, Inc.*,
   766 F. Supp. 32 (D.N.H. 1991) .......................................................................... 8

*South Ferry LP, No. 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) ....................................................................... 4, 15

*Superintendent of Ins. v. Bankers Life & Cas. Co.*,
   404 U.S. 6 (1971) ............................................................................................... 8

*Thornton v. Micrografx, Inc.*,
   878 F. Supp. 931 (N.D. Tex. 1995) ................................................................. 14

*Weitschner v. Monterey Pasta Co.*,
   294 F. Supp. 2d 1102 (N.D. Cal. 2003) .......................................................... 17

*Yourish v. Cal. Amplifier*,
   191 F.3d 983 (9th Cir. 1999) ........................................................................... 12

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ....................................................................... 4, 14

**STATUTES**

15 U.S.C. §78u-4(b)(1)(B) .......................................................................... 18, 19

15 U.S.C. §78u-4(b)(2) ............................................................................. 2, 6, 13

**OTHER AUTHORITIES**

Bernard S. Sharfman, *Taking a More Sophisticated Approach to Market Efficiency: How
   Securities Analyst Reports Can be used to Establish Loss Causation in Federal
   Securities Fraud Action* ................................................................................... 20

1    **I.      INTRODUCTION**

2          Plaintiffs' Opposition to Defendants' Motion to Dismiss the Consolidated

3    Amended Complaint (the "Opposition" or "Opp.") confirms that the Consolidated

4    Amended Class Action Complaint (the "Complaint" or "CAC") does little more

5    than block quote SouthWest Water Company's ("SWWC's" or the "Company's")

6    filings with the Securities and Exchange Commission ("SEC") and press releases.

7    Missing from the 189-page Complaint are *any* specific facts showing that at the

8    time SWWC filed the reports with the SEC and issued the press releases that

9    Plaintiffs claim were false, Anton C. Garnier ("Garnier"), Mark A. Swatek

10   ("Swatek"), Cheryl L. Clary ("Clary") or Peter J. Moerbeek ("Moerbeek") knew —

11   or were extremely reckless in not knowing — the financial information in those

12   documents was false.  Not a single internal report, witness statement or any other

13   allegation shows what Garnier, Swatek, Clary or Moerbeek knew about SWWC's

14   accounting, financial results or internal controls.  Without alleging facts showing

15   what those individuals knew, the Complaint cannot possibly allege with

16   particularity that any of them intentionally made a false representation, which is

17   required to plead scienter.  For this reason alone, the Section 10(b) claim should be

18   dismissed.

19         Defendants' Motion to Dismiss the Consolidated Amended Complaint (the

20   "Motion" or "Mot.") also showed that the Complaint fails to identify with sufficient

21   particularity the statements it claims are false and misleading or the reasons why

22   each statement is false and misleading.  Instead, the Complaint merely block quotes

23   SWWC's public statements, leaving it to the reader to figure out which portions of

24   the quoted material is alleged to be false.  Moreover, the Complaint relies too

25   heavily on the restatement to show that representations that were unaffected by the

26   restatement were false.  For these reasons as well, the Complaint should be

27   dismissed.

28

1   **II.   THE COMPLAINT FAILS TO ADEQUATELY ALLEGE SCIENTER
2          AS TO THE SECTION 10(b) CLAIM**

3          Plaintiffs have failed to adequately allege facts giving rise to a strong

4   inference that any of the Defendants acted with scienter.[1]  Under the Private

5   Securities Litigation Reform Act of 1995 ("PSLRA"), Plaintiffs must "state with

6   particularity facts giving rise to a strong inference" that defendants acted with an

7   intent to deceive or with deliberate recklessness as to the possibility of misleading

8   investors.  15 U.S.C. §78u-4(b)(2)(2010).  Plaintiffs must plead, in great detail,

9   facts demonstrating, at a minimum, a degree of recklessness that strongly suggests

10  the required degree of intent.  *In re Silicon Graphics, Inc., Sec. Litig.* 183 F.3d 970,

11  974 (9th Cir. 1999).  Absent from the Complaint are any particularized allegations

12  establishing that any of the Defendants acted with fraudulent intent.

13         The Opposition is peppered with the conclusory assertion that Defendants

14  knew that their public statements regarding the accuracy of the Company's

15  accounting and the adequacy of its internal controls were false or misleading.

16  (Opp. 11:5-7; 19:16; 22:3-5.)  These allegations fail to provide the requisite level of

17  detail to allege that any of the Defendants acted with scienter.  *See Silicon*

18  *Graphics,* 183 F.3d at 985 (rejecting plaintiff's attempt to establish that defendant

19  insiders had knowledge of alleged production and sales problems through general

20  allegations that defendants had received internal reports where plaintiff failed to

21  include "adequate corroborating details" regarding the internal reports to support

22  the allegations); *see also In re The Vantive Corp. Sec. Litig.*, 283 F.3d 1079 (9th

23  Cir. 2002) (finding that plaintiffs failed to plead scienter with particularity where

24  _____

25  [1] Plaintiffs also fail to adequately allege scienter as to their claim under Section 20A of the Securities and Exchange
26  Act of 1934 ("Section 20A").  On a Section 20A claim, Plaintiffs must allege particularized facts giving rise to a
    strong inference of deliberate or conscious recklessness.  *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027 (9th Cir.
27  2002) (the court affirmed the district court's dismissal of plaintiffs' Section 20A claim where allegations were
    insufficient to raise the requisite strong inference of deliberate recklessness as required by the PSLRA) (citing
    *Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001) (finding that well-timed sales do not support the strong inference of
28  scienter required by the PSLRA)).

-2-

1  they relied on allegations of defendants' hands-on management style, their

2  interactions with other corporate officers and employees, their attendance at

3  management and board meetings, and receipt of reports generated by the finance

4  department, but failed to allege corroborating details to support these allegations).

5  The Complaint fails to allege the existence of any contemporaneous documents,

6  internal reports, or witness statements that establish what any of the Defendants

7  knew at the time of the public statements. *See Vantive*, 283 F.3d at 984; *Silicon*

8  *Graphics*, 183 F.3d at 985.  Thus, the Ninth Circuit has found that a complaint is

9  properly dismissed where "[t]here is a total absence of factual allegations that

10 would permit a strong inference that the defendants knew that their representations

11 were false or misleading when made, if they were so, or that the defendants acted in

12 deliberately reckless disregard of their truth or falsity." *Vantive*, 283 F.3d at 1089.

13      Eschewing particularized facts, the Complaint relies on a host of generalized

14 allegations of stock sales, the magnitude of the restatement and the like in a failed

15 attempt to plead scienter with particularity.  While some courts have held that such

16 allegations can *bolster* an inference of scienter, they cannot create a strong

17 inference of scienter where no specific facts have been alleged showing what

18 defendants knew or were deliberately reckless in not knowing.  *See, e.g., In re*

19 *Verisign, Inc. Deriv. Litig.*, 531 F. Supp. 2d 1173, 1207 (N.D. Cal. 2007) (finding

20 that allegations regarding defendants' positions within the company, their sales of

21 stock, and the fact of the restatement do not create a strong inference of scienter

22 absent specific allegations of supporting contemporaneous reports or data

23 establishing that defendants knew or were deliberately reckless in not knowing of

24 the accounting errors that led to the restatement);  *Rudolph v. UTStarcom*, 560 F.

25 Supp. 2d 880 (N.D. Cal. 2008) (finding that restatement did not establish a strong

26 inference of scienter absent factual allegations demonstrating that defendants knew

27 specific facts at the time that rendered the accounting determinations fraudulent).

28 /////

-3-

1    Essentially admitting the Complaint does not include specific facts, Plaintiffs

2  argue scienter may be inferred from reading the Complaint as a whole.  (Opp. 6: 9-

3  15.)  While courts should certainly consider the complaint as a whole when

4  determining whether scienter has been alleged,[2] particularity is still required.  *See*

5  *In re Sketchers U.S.A., Inc. Sec. Litig.*, No. 05-55980 F. Appx. 626, 2008 WL

6  1721557, at *1 (9th Cir. Apr. 10, 2008) (considering the allegations in their totality

7  to determine whether plaintiffs stated with particularity facts giving rise to a strong

8  inference of scienter).  Indeed, the cases Plaintiffs rely upon are in accord.  In

9  *Backe*, the court found scienter was adequately alleged where the case involved a

10  small company and reports of a confidential witness who had witnessed the

11  fraudulent scheme in action.  *Backe v. Novatel Wireless, Inc.*, 642 F. Supp. 2d 1169,

12  1191 (S.D. Cal. 2009).  In *UTStarcom*, the court found scienter where the plaintiffs

13  alleged a host of specific and particularized allegations demonstrating the

14  defendants' knowledge of the falsity of the statements at issue.  *In re UTStarcom,*

15  617 F. Supp. 2d at 976.  In *Lattice*, the court found a strong inference of scienter

16  was adequately alleged where there were allegations that defendants manipulated

17  the financial statements.  *In re Lattice Semiconductor Corp. Sec. Litig.*, No. 04-

18  1255, 2006 U.S. Dist. LEXIS 262, at *18 (D. Or. Jan. 3, 2006).  In contrast, here,

19  Plaintiffs allege no specific facts showing that any of the challenged statements

20  were made with actual knowledge, or consciously reckless disregard of, falsity.

21  Thus, even if scienter could be inferred from the allegations taken together, the total

22  of nothing plus nothing is nothing.

23  /////

24  /////

25  /////

26

27  [2] *South Ferry LP, No. 2  v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008);  *Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981, 991 (9th Cir. 2009);  *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1069 (9th Cir.
28  2008).

-4-

1

## A.    The Restatement Does Not Give Rise to a Strong Inference of Scienter.

2

3    Plaintiffs claim the GAAP violations set forth in the Complaint support an

4    inference of scienter because "books do not cook themselves."  (Opp. 12:9.)   This

5    is not enough.  For allegations of GAAP violations to raise an inference of scienter,

6    they must be accompanied by particularized allegations of fraudulent intent.  *In re*

7    *Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1157 (C.D. Cal. 2007); *see*

8    *also UTStarcom,* 560 F. Supp. 2d at 889 (holding that to establish fraudulent intent

9    based on GAAP violations, the court must find that: (1) specific accounting

10   decisions were improper and (2) the defendants knew specific facts at the time that

11   rendered their accounting determinations fraudulent).  No factual allegations in the

12   Complaint show that any of the individual Defendants played a role in the GAAP

13   violations or internal control weaknesses that led to the restatement.  Further, no

14   factual allegations show that any of the Defendants knew or was deliberately

15   reckless in not knowing that the statements at issue were false when made.

16   *In re Microstrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620 (E.D. Va. 2000),

17   relied upon by Plaintiffs, is instructive.  There, the court acknowledged that scienter

18   "cannot be *strongly* inferred from bare allegations of a GAAP violation or a

19   restatement of financials."  *Microstrategy*, 115 F. Supp. 2d at 635 (emphasis in

20   original).  Such allegations may be probative on the issue of scienter, but they

21   cannot alone raise the requisite strong inference.  *Id.* at 639-40.

22   Plaintiffs further argue that the nature of the GAAP violations at issue, the

23   magnitude of the restatement and that the accounting errors were largely in

24   SWWC's favor is enough to raise a strong inference of scienter.  (Opp. 12:15-

25   14:15.)  However, the premise of Plaintiffs' argument is flawed.  A number of the

26   accounting errors that were restated were not in SWWC's favor.  In other words,

27   the numbers became more favorable to SWWC *as a result of* the restatement.  For

28   example, the restatement adjustments to the consolidated statement of operations

-5-

for the year ended December 31, 2007 included:  (1) a decrease in operations and maintenance expenses of nearly $2.5 million; (2) a decrease in impairment charges to goodwill and other long-lived assets from $17.215 million to $1.768 million, one-tenth of the originally stated value; (3) an increase in operating income of more than 500% from $2.859 million to $15.309 million; (4) an increase in net income from negative $8.046 million to a positive $1.589 million; and (5) an increase in earnings per common share from negative $0.33 to positive $0.06.  *See* Exhibit A to Declaration of Jennifer M. Feldman in Support of Reply Brief in Support of Motion for Partial Summary Judgment ("Feldman Decl.").

Thus, even if Plaintiffs' arguments had merit, the actual facts do not support Plaintiffs' contention.  Indeed, to the extent accounting errors that are uniformly in favor of the defendant can raise an inference of fraud, the errors here, which as shown above went in both directions, must then defeat an inference of scienter.

**B.      The Complaint Lumps Defendants Together in a Failed Attempt to Conceal the Lack of Particularized Factual Allegations to Establish a Strong Inference of Scienter.**

The Opposition fails to show that scienter has been alleged for each of the Defendants with the requisite particularity, as they are required to do.  *See In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077, 1087 (N.D. Cal. 2001) (the "PSLRA requires plaintiffs to plead facts specific to the knowledge of *each* defendant") (citing 15 USC §78u-4(b)(2) (emphasis added)); *Allison v. Brooktree Corp.*, 999 F. Supp. 1342, 1350-51 (S.D. Cal. 1998) (the PSLRA requires "that the complaint set forth as to 'each statement' particular facts giving rise to a strong inference of scienter as to *each* defendant.") (emphasis added).  The Opposition cites a handful of allegations in the Complaint which reference individual Defendants.  (Opp. 24: 13-14.)  None of these allegations, however, show that any of the individual Defendants knew or was reckless in not knowing that the statements at issue were false when made.

-6-

1    In an apparent attempt to back peddle from the Complaint's allegations,

2    Plaintiffs argue that they are not seeking to impose liability against individuals

3    based on statements they did not make or for which they are not responsible.  (Opp.

4    24: 18-20.)  However, the actual allegations are to the contrary.  The Complaint

5    includes a series of allegations in which Plaintiffs seek to hold all Defendants liable

6    as a group for statements that are plainly on the face of the Complaint not attributed

7    to all of the Defendants.  (*See, e.g.,* CAC ¶ 33.)  The practice of lumping all of the

8    defendants into a group and treating them as a single wrongdoing monolith has long

9    been held to not meet the requirements of particularity.  *See Bruns II v. Ledbetter*,

10   583 F. Supp. 1050, 1052 (S.D. Cal. 1984).

11   Moreover, Plaintiffs even resort to the group-published information doctrine,

12   under the misguided assumption that this doctrine relieves them of their burden to

13   plead scienter.  The group-published information doctrine, however, did not survive

14   the PSLRA and cannot be used to raise a strong inference of scienter.  *In re Impac*

15   *Mortg. Holdings Sec. Litig.*, 554 F. Supp. 2d 1083, 1092 (C.D. Cal. 2008); *see also*

16   *In re Ligand Pharm., Inc. Sec. Litig.*, No. 04cv-1620, 2005 WL 2461151, at *15

17   (S.D. Cal. Sept. 27, 2005) (group pleading allegations are insufficient to "raise an

18   inference of scienter").

19   **C.    Sarbanes-Oxley Certifications Do Not Give Rise to a Strong**

20   **Inference of Scienter.**

21   The Opposition makes the bald assertion that Defendants Clary, Garnier and

22   Swatek signed Sarbanes-Oxley ("SOX") certifications when they knew or were

23   deliberately reckless in not knowing that they were false.  (Opp. 19: 9-11.)  No facts

24   are alleged to support this claim.  Moreover, Plaintiffs' reliance on the SOX

25   certifications to raise a strong inference of scienter is flawed.

26   While Section 10(b) and Rule 10b-5 prohibit the making of false or

27   misleading statements or the failure to disclose information necessary to make a

28   statement made not misleading, Section 10(b) and Rule 10b-5 do not "provide

investors with broad insurance against market losses . . . ."  *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345 (2005).  In securities cases, courts carefully scrutinize claims asserted by plaintiffs "to diminish the possibility that 'a plaintiff with a largely groundless claim [will be able] to simply take up the time of a number of other people [by extensive discovery], with the right to do so representing an *In terrorem* increment of the settlement value, rather than a reasonably founded hope that the process will reveal relevant evidence . . . .'"  *Ross v. A.H. Robins Co., Inc.*, 607 F.2d 545, 557 (2d Cir. 1979), *cert. denied*, 446 U.S. 946 (1980) (citations omitted); *accord Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

"Congress by § 10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanagement."  *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479 (1977) (quoting *Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12 (1971)).  Consequently, allegations of mismanagement cannot support a claim under Section 10(b) or Rule 10b-5.  *See id.*  Not only are mismanagement claims outside the scope of Section 10(b) and Rule 10b-5, a plaintiff cannot "'bootstrap' allegations of fraud by asserting that a defendant failed to disclose corporate mismanagement or a breach of fiduciary duty."  *In re First Chicago Corp. Sec. Litig.*, 769 F. Supp. 1444, 1449 (N.D. Ill. 1991) (citing *Panter v. Marshall Field & Co.*, 646 F.2d 271, 288 (7th Cir. 1981), *cert. denied*, 454 U.S. 1092 (1981)); *see also Craftmatic Sec. Litig. v. Kratsow*, 890 F.2d 628, 640 (3d Cir. 1990) (upholding dismissal of alleged failures to disclose mismanagement); *Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662, 683 (D. Colo. 2007) ("Plaintiff may not bootstrap his internal mismanagement claim into a federal securities action."); *Shields v. Amoskeag Bank Shares, Inc.*, 766 F. Supp. 32, 36 (D.N.H. 1991) ("[T]he failure to disclose mismanagement is not actionable under Rule 10b-5.").

/////

-8-

1    Further, courts have held that a claim based on a failure to disclose

2    inadequate internal controls also constitutes an improper attempt to bootstrap a

3    mismanagement claim into a federal securities claim.  *See Andropolis*, 505

4    F. Supp. 2d at 683; *In re Interpool, Inc. Sec. Litig.*, No. Civ. 04-321, 2005 WL

5    2000237, at *19 n.11 (D.N.J. Aug. 17, 2005); *Cutsforth v. Renschler*, 235

6    F. Supp. 2d 1216, 1243 (M.D. Fla. 2002); *In re United Telecomms., Inc. Sec. Litig.*,

7    781 F. Supp. 696, 699-700 (D. Kan. 1991).  However, where a defendant has made

8    an affirmative representation about the quality of its internal controls, a securities

9    claim could be stated for failing to disclose inadequate internal controls.  *See*

10   *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 282-83 (3d. Cir.), *cert. denied*, *UJB Fin.*

11   *Corp. v. Shapiro*, 506 U.S. 934 (1992) (alleging that defendants represented

12   "internal controls not only existed, but were properly centralized, supervised, and

13   managed.").  This holding flows from Rule 10b-5, which imposes a duty to disclose

14   all facts necessary to make an affirmative representation not misleading.  17 C.F.R.

15   § 240.10b-5(b) (2010).  No such duty exists where there has been no representation

16   about the quality of internal controls.  *See Brody v. Transitional Hosps. Corp.*, 280

17   F.3d 997, 1006 (9th Cir. 2002).

18       The duty to disclose all facts necessary to make a representation not

19   misleading is limited because Rule 10b-5 prohibits "*only* misleading and untrue

20   statements, not statements that are incomplete."  *Id.*  A "statement will not mislead

21   even if it is incomplete or does not include all relevant facts."  *Id.*  Thus, to be

22   misleading for failing to disclose a fact, a statement must "affirmatively create an

23   impression of a state of affairs that differs in a material way from the one that

24   actually exists."  *Id.*  Consequently, courts have held that merely disclosing the

25   existence of internal controls without describing the adequacy of the controls does

26   not give rise to a duty to disclose that controls were inadequate.  *See Impac*

27   *Mortgage Holdings*, 554 F. Supp. 2d at 1091 n.6; *In re Marion Merrell Dow Inc.*,

28   *Sec. Litig. II*, No. 93-0251, 1994 WL 396187, at *7 n.12 (W.D. Mo. Jul. 18, 1994).

-9-

1    *Impac Mortgage Holdings,* is instructive.  There, the plaintiffs alleged that

2    defendants signed SOX certifications certifying that they "had 'designed such

3    disclosure controls and procedures . . . to ensure that material information relating

4    to the registrant . . . is made known to us by others within those entities . . . .'"

5    *Impac Mortgage Holdings*, 554 F. Supp. 2d at 1091 n.6.  The plaintiffs argued "that

6    this statement is an assertion that 'the Company's internal controls were adequate

7    and reasonably effective' and therefore also qualifies as a false statement."  *Id.*  The

8    court disagreed.  The court explained that the statement meant what it said; *i.e.* "the

9    officers designed disclosure controls and procedures that ensured material

10   information relating to Impac would be known to them" and, consequently, the

11   statement did not include any express or implied representation about the quality of

12   those controls.  *Id.*

13        Here, Plaintiffs' argument is premised on the flawed assumption that the

14   restatement contradicts the certifications.  Plaintiffs provide a misleading partial

15   quote from the certifications at issue.  The relevant portion of the certifications, as

16   partially quoted by Plaintiffs, state that the signatories:

17           []. . . have disclosed, based on our most recent
             evaluation of internal control over financial reporting, *to*
18           *the registrant's auditors and the audit committee* of the
             registrant's board of directors: (a) all significant
19           deficiencies and material weakness in the design or
             operation of internal control over financial reporting
20           which are reasonably likely to adversely affect the
             registrant's ability to record, process, summarize and
21           report financial information; and (b) any fraud, whether or
             not material, that involves management or other
22           employees who have a significant role in the registrant's
             internal control over financial reporting.
23

24   *See* Exhibit B to Feldman Decl. (emphasis added).  The certifications refer to a

25   separate portion of the SEC filings, a document entitled *Controls and Disclosures*.

26   The relevant portion of the *Controls and Disclosures* document is cited in the

27   Complaint as follows:

     /////

28

-10-

1
2
3
4

> Under the supervisions and with the participation of our management, including the Chief Executive Officer and Chief Financial Officer, we have evaluated the effectiveness of our disclosure controls and procedures pursuant to Exchange Act Rule 13a-15(b) . . . Based on that evaluation . . . [we] have concluded that these disclosure controls and procedures are effective.

5
6
7
8
9
10
11
12
13

(CAC ¶¶ 282, 298, 309, 321, 335, 345, 354, 363, 376, 388, 399.)  Contrary to Plaintiffs' assertion, the signatories did not certify that all internal control weaknesses had been disclosed to the market or the SEC filing; they certified that all such weaknesses, if any, were disclosed *to the Company's auditor and Audit Committee*.  The certifications also do not say whether the controls were adequate or inadequate, worked well or not, or whether there was a disclosure of any or many "significant deficiencies" or "material weaknesses."  Thus, just as in *Impac Mortgage Holdings,* the certifications make no representations about the quality of SWWC's internal controls.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Because the certifications make no representations about the quality of the controls, the certifications did not give rise to any duty to disclose whether SWWC's controls were adequate or inadequate.  *See Brody*, 280 F.3d at 1006.  While the certifications may have been incomplete as a result of not discussing the quality of the controls, they did not "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists."  *See id.*  Consequently, the certifications did not give rise to a duty to disclose.  Without a duty to disclose, Defendants cannot, as a matter of law, be liable under Section 10(b) or Rule 10b-5 for failing to disclose whether SWWC's internal controls were adequate.  *See id.; Andropolis*, 505 F. Supp. 2d at 683; *Interpool, Inc.,* 2005 WL 2000237, at *19 n.11;  *Cutsforth*, 235 F. Supp. 2d at 1243; *United Telecomms.*, 781 F. Supp. at 699-700.

/////

/////

-11-

1   Moreover, nothing in the restatement or the Complaint suggests that, at the

2   time the certifications were signed, the signatories were aware of any material

3   internal control weaknesses or, if they were, that they did not disclose them to the

4   Company's auditor or Audit Committee.

5   The Opposition also erroneously argues that the signatories certified that all

6   internal controls were effective.  (Opp. 19: 14-15.)  The *Controls and Disclosures*

7   portion of the SEC filings states that all "disclosure controls and procedures are

8   effective" – not all internal controls over financial reporting.  (*See* CAC ¶¶ 282,

9   298, 309, 321, 335, 345, 354, 363, 376, 388, 399.)  Nowhere in the certifications do

10  the signatories attest that the internal controls were effective, only that any material

11  weaknesses or fraud in those controls had been disclosed to the Company's auditor

12  or Audit Committee.  Any portion of the certifications related to disclosure controls

13  and procedures cannot be rendered false by the restatement, as all of the control

14  issues identified in the restatement concerned "internal controls over financial

15  reporting" as distinguished from "disclosure controls."  *Compare* Exchange Act

16  Rules 13a-15(f) and 15d-(f) (defining former) *with* Exchange Act Rules 13a-15(e)

17  and 15d-15(e) (defining latter).

18  Signing certifications was a neutral act and cannot support an inference of

19  scienter absent particularized allegations of fraudulent intent.  *See Yourish v. Cal.*

20  *Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (plaintiff must do more than allege a

21  set of neutral facts).  Plaintiffs' authority is in accord.  In *Glazer v. Capital Mgmt.,*

22  *LP v. Magistri*, 549 F.3d 736 (9th Cir. 2008), the Court held that a SOX

23  certification was not indicative of scienter where the plaintiff failed to plead factual

24  allegations demonstrating that the defendant was severely reckless in certifying the

25  accuracy of the financial statements.  *Glazer*, 549 F.3d at 747.  In *Lattice*

26  *Semiconductor,* the Court found a strong inference of scienter was raised, but did so

27  /////

28  /////

-12-

1  based on an analysis of SOX certifications in combination with a mass of

2  allegations establishing that the defendants in that case were severely reckless in

3  signing those certifications. *Lattice Semiconductor*, 2005 WL 538756, at *17-18.

4      Finally, Plaintiffs contend that the certifications would be rendered

5  meaningless if the officers who signed them did not believe they were accurate.

6  (Opp. 19: 6-8.)  Fair enough.  However, the PSLRA requires that specific *facts*

7  must be alleged to show at least deliberate recklessness, and those facts are not

8  alleged here.  15 U.S.C. §78u-4(b)(2) (2010).  There is a complete absence of facts

9  indicating that any of the signatories to the SOX certifications at issue knew or

10  were deliberately reckless in not knowing those certifications were false *when

11  made*. *See Vantive*, 283 F.3d at 1085.  Indeed, Plaintiffs' arguments constitute an

12  improper attempt to plead fraud by hindsight by pointing to the restatement to argue

13  that certifications signed months and years earlier were signed with knowledge of

14  the subsequently discovered accounting errors and material internal control

15  weaknesses. *See id.* at 1084-85 (the purpose of the PSLRA's heightened pleading

16  requirements was to put an end to the practice of pleading "fraud by hindsight");

17  *see also In re Daou Systems, Inc.*, 411 F.3d 1006, 1021 (9th Cir. 2005).  Thus, the

18  SOX certifications do not support an inference of scienter.

19      **D.  The Opposition Fails to Demonstrate that the Alleged "Red Flags"
        of Internal Financial Control Weaknesses Give Rise to a Strong
20      Inference of Scienter.**

21      Plaintiffs argue that the material internal control weaknesses disclosed in the

22  restatement support an inference of scienter because Defendants were somehow

23  aware of the weaknesses due to certain "red flags" yet failed to correct them.  (Opp.

24  16: 5-9.)  As with Plaintiffs' other arguments, this argument is flawed because they

25  have alleged no particularized facts showing that any Defendant understood that the

26  material internal control deficiencies existed.  Absent particularized facts showing

27  that Defendants knew of the internal control deficiencies or were deliberately

28  reckless in not knowing, Plaintiffs' allegations regarding internal control

-13-

1   weaknesses do not create an inference of scienter. *See Hansen*, 527 F. Supp. 2d at

2   1158; *In re Hypercom Corp. Sec. Litig.*, 2006 WL 1836181, at *9 (D. Ariz. July 5,

3   2006).[3]

4   **E.    Neither the Confidential Witness Allegations Nor the Core
             Business Doctrine Support a Strong Inference of Scienter.**

5

6        The Opposition fails to show that either the confidential witness allegations

7   or the core business doctrine supports a strong inference of scienter.  Plaintiffs

8   claim that CW1 is described with sufficient particularity to establish his reliability

9   and personal knowledge and that his statements are indicative of scienter.  (Opp.

10  20:20-23.)  Neither an accountant nor a financial statement auditor, CW1 is not in a

11  position to know the information alleged and, thus, is unreliable.  *Zucco Partners,*

12  552 F.3d at 996 (finding confidential witness was not reliable where he was not

13  positioned to know the information alleged).  The Opposition, by its silence, does

14  not dispute that CW1 is not qualified to provide a professional opinion as to

15  whether SWWC would pass an audit.  Indeed, SWWC *did* pass audits for each year

16  during the class period.

17       Even if CW1 is reliable as a confidential witness, which Defendants do not

18  concede, the statements reported by CW1 are not indicative of scienter and, thus,

19  cannot be relied upon to raise an inference of scienter.  *Zucco*, 552 F.3d at 995.  The

20  observations and opinions of CW1 do not provide any information regarding the

21  mental state of any of the Defendants at any time.  Indeed, CW1 did not become a

22  consultant to the Company until April 2008.  He cannot provide any information

23  regarding the mental state of any of the Defendants before that time.

24

25  [3] Plaintiffs' contention that Swatek's discussion of the need to improve SWWC's billing and financial reporting
    systems (CAC ¶420) does not support an inference of scienter.  Indeed, if those statements show anything, it would
26  be the opposite of scienter.  If Swatek was attempting to conceal a so-called fraud concerning the adequacy of
    SWWC's internal controls or financial reporting, why would he be discussing it in public?  *See Thornton v.*
27  *Micrografx, Inc.*, 878 F. Supp. 931, 938 (N.D. Tex. 1995) ("Plaintiffs draw inferences of wrongdoing based upon a
    nonsensical premise."); *cf. In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1269 (N.D. Cal. 2000)
28  ("courts do not presume that corporate officers make false statements simply out of spite or to impress others.").

                                          -14-

1    Plaintiffs continue to rely on the "core operations" doctrine to support a

2    strong inference of scienter.  (Opp. 12: 15-18.)  That doctrine, absent particularized

3    supporting allegations, does not raise a strong inference of scienter.  (Mot. 20:12-

4    17.)  The Opposition's reliance on *Batwin* is misplaced.  In *Batwin*, the plaintiffs

5    alleged detailed facts showing that the defendants had considerable involvement

6    with the accounting function at issue.  *Batwin v. Occam Networks, Inc.*, No. CV 07-

7    2750, 2008 WL 2676364, at *12 (C.D. Cal. July 1, 2008).  In contrast, here, there

8    are no allegations that any of the Defendants had involvement, let alone

9    considerable involvement, with the accounting functions at issue.  Where, as here,

10   the Complaint does not plead specific facts about what the Defendants knew at the

11   time their statements were made, a strong inference of scienter cannot be presumed

12   based on the core operations doctrine.  *See South Ferry LP,* 542 F.3d at 784-85 (a

13   complaint that relies solely on allegations of the core operations inference to

14   establish scienter will generally fall short of the PSLRA's standard for pleading

15   particularized factual allegations giving rise to a strong inference of scienter); *see*

16   *also In re Apple Computer, Inc.*, 127 Fed. App. 296, 300 (9th Cir. 2005) (citing *In*

17   *re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 848-49 (9th Cir. 2003).

18   **F.    Plaintiffs' Motive Allegations Are Insufficient to Establish**
          **Scienter.**
19

20   Plaintiffs rely on allegations of both incentive compensation and stock sales

21   to establish Defendants' motive to commit fraud, but the Opposition fails to show

22   that either of these categories of allegations raises a strong inference of scienter.

23   The Opposition claims that Defendant Garnier's compensation was tied to

24   the Company's financial performance in such a way that supports an inference of

25   scienter.  (Opp. 22: 16-20.)  However, allegations of bonus incentives tied to

26   financial performance and incentive compensation in general are insufficient to

27   raise a strong inference of scienter.  *See In re Cornerstone Propane Partners, L.P.*

28   *Sec. Litig.*, 981 F. Supp. 2d 1069, 1091 (N.D. Cal. 2005).  Thus, as a matter of law,

-15-

1  Plaintiffs' allegations regarding Defendant Garnier's incentive compensation

2  cannot support an inference of scienter.

3      While Plaintiffs argue that Defendants Garnier and Moerbeek sold stock on

4  suspicious dates and that such sales were dramatically inconsistent with their pre-

5  class period trading (Opp. 23: 6-8), they have failed to provide any *facts* to support

6  that argument.  Plaintiffs have the burden to demonstrate that these stock sales are

7  unusual or suspicious, and they have failed to do so.  *See In re Ashworth, Inc. Sec.*

8  *Litig.*, No. 99CV0121, 2000 WL 33176041, at *10 (S.D. Cal. July 18, 2000).

9      Indeed, the alleged stock sales on their face indicate nothing suspicious.  The

10  allegations show that Defendants Garnier, Moerbeek and Clary sold roughly the

11  same amounts of stock at regular intervals.  (CAC ¶ 461.)  Rather than raising any

12  suspicions, this pattern of trading is consistent with a systematic diversification

13  strategy, having nothing to do with an attempt to capitalize on an alleged fraud.  *See*

14  *Hansen*, 527 F. Supp. 2d at 1160 (court found stock sales were not suspicious so as

15  to raise a strong inference of scienter where plaintiffs failed to link any of the stock

16  sales to the alleged misstatements and neither the timing nor the prior trading

17  history indicated that these sales were at "times calculated to maximize the personal

18  benefit from undisclosed information.") This pattern of divestiture is unlike the

19  trading patterns that courts found were suspicious in the cases relied upon by

20  Plaintiffs.[4]

21  /////

22  /////

23

_____

24  [4] In *Secure*, the Court found that stock sales allegations supported a strong inference of scienter based on the timing
    and coordination of the sales.  *In re Secure Computing Corp.*, 184 F. Supp. 2d 980, 989-90 (N.D. Cal. 2001).  There,

25  the defendants, none of whom had sold any stock previously, suddenly and in a condensed time period, sold over
    200,000 shares - in many cases on the same days, and almost immediately after two defendants made statements at

26  conferences that the company was on track to meet quarterly financial goals and immediately before the company
    released adverse financial information that led to drop in stock price.  *Id.*  In *SeeBeyond*, the Court found a strong

27  inference of scienter where the amount of income generated by the alleged stock sales - $18 million – was significant
    and the defendant admittedly lied to the analysts and investors.  *In re SeeBeyond Techs. Corp. Sec. Litig.*, 266 F.

28  Supp. 2d 1150, 1169 (C.D. Cal. 2003).

1    Further, Plaintiffs wrongly attempt to discount the significance of the fact

2    that the vast majority of the stock sales by Defendant Garnier were made pursuant

3    to a 10b5-1 plan.

4    First, Plaintiffs feign ignorance as to the source of Defendant's claim that

5    Defendant Garnier's sales were made pursuant to a 10b5-1 plan.  (Opp. 23: 13-15.)

6    Defendants' source for this information is the same source that Plaintiffs used to

7    gather the information regarding the class period stock sales by Defendant Garnier

8    – the Forms 4 filed by Garnier with the SEC.[5]  To suggest they are unaware of the

9    source of this information is disingenuous.

10   Second, Plaintiffs contend the 10b5-1 plan does not provide an absolute

11   defense, at the pleading stage, to a claim of insider trading.  (Opp. 23:15-19.)

12   Courts have disagreed.  Courts routinely analyze sales made pursuant to 10b5-1

13   trading plans in considering whether stock sales are suspicious for purposes of

14   raising an inference of scienter.  *See Weitschner v. Monterey Pasta Co.*, 294 F.

15   Supp. 2d 1102, 1117 (N.D. Cal. 2003) (on motion to dismiss, court held that

16   defendant's 10b5-1 trading plan could raise an inference that the stock sales were

17   pre-scheduled and not suspicious); *Metzler Inv. GMBH*, 540 F.3d at 1067, n.11 (on

18   motion to dismiss, court held that the bulk of defendant's sales took place according

19   to pre-determined 10b5-1 plans and therefore were sufficient to rebut an inference

20   of scienter.); *In re PMI Group, Inc. Sec. Litig.*, Nos. C 08-1405, C 08-1406, 2009

21   WL 1916934, at *10 (N.D. Cal. July 1, 2009) (on motion to dismiss, court found

22   that majority of defendant's stock sales were pursuant to a 10b5-1 trading plan and

23   thus sufficient to show that the stock sales were not suspicious).  These cases show

24   that Garnier's sales pursuant to his 10b5-1 plans were not suspicious for purposes

25   of contributing to an inference of scienter.

26

27   _____

[5] *See* Exhibit C to the Feldman Decl., the Forms 4 reflecting Defendant Garnier's sales pursuant to a 10b5-1 plan.
Under the incorporation by reference doctrine, these SEC filings are properly considered on a motion to dismiss, as
28   Plaintiffs have relied extensively on these filings in the Complaint.  *See Silicon Graphics*, 183 F.3d at 986.

-17-

1    Relying on *Nursing Home Pension Fund Local 144 v. Oracle Corp.*, 380

2    F.3d 1226 (9th Cir. 2004), the Opposition further argues that Defendants Moerbeek

3    and Clary's lack of stock sales before the class period contributes to an inference of

4    scienter.  (Opp. 24:3-8.)  *Oracle Corp.*, however, is inapposite.  There, the court

5    found that the lack of pre-class period stock sales *in combination* with the timing of

6    the sales – just one month before the report of lower-than-expected sales –

7    supported an inference of scienter.  *Oracle Corp.*, 380 F.3d at 1231.  Here,

8    Moerbeek's last stock sale was on November 16, 2006, two years before the alleged

9    fraud was revealed.  (CAC ¶ 461.)  Clary's last stock sale was on March 21, 2006,

10   over two and half years before the so-called fraud was revealed.  (CAC ¶ 461.)

11   These sales bear no earmarks of an individual either seeking to capitalize on an

12   artificially inflated stock or to dump his or her stock before the so-called truth was

13   revealed.  *See Vantive*, 283 F.3d at 1093 (finding stock sales were not suspicious in

14   timing and were not calculated to maximize the personal benefit from undisclosed

15   inside information where sales were over a year before the press release upon which

16   the plaintiffs based their lawsuit).  Thus, as a matter of law, the allegations that

17   these Defendants had not sold stock before the class period, standing alone, do not

18   raise a strong inference of scienter.

19   At bottom, whether examined individually or taken as a whole, Plaintiffs'

20   allegations lack the necessary particularity to give rise to a strong inference of

21   scienter and, for this reason alone, the Complaint should be dismissed.

22   **III.   THE COMPLAINT FAILS TO ADEQUATELY ALLEGE FALSITY**

23   To adequately plead falsity, Plaintiffs were required to identify each specific

24   statement alleged to have been misleading and the reason or reasons why each

25   specific statement was misleading.  15 U.S.C. §78u-4(b)(1)(B).  Plaintiffs have

26   failed to do this.

27   /////

28

-18-

1    Plaintiffs have set forth a series of statements, using block quotes from the

2    Company's SEC filings, press releases and conference calls, and peppered them

3    with the identical laundry list of conclusory explanations for their falsity.

4    (*See, e.g.* CAC ¶¶ 240-403.)  This is not sufficient to establish falsity under the

5    PSLRA.  15 U.S.C. §78u-4(b)(1)(B).  First, Plaintiffs fail to specify the portions of

6    the block quotes which Plaintiffs allege are false and misleading.  Second, Plaintiffs

7    fail to set forth the specific reasons why each statement was false when made.  *In re*

8    *Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1072 (N.D. Cal.

9    2001).

10    The Complaint fails to identify precisely which statements within the block

11    quotes are the statements Plaintiffs claim are false and misleading.  The PSLRA

12    requires that "the complaint shall specify each statement alleged to have been

13    misleading."  15 U.S.C. §78u-4(b)(1)(B).  Alleging lengthy block quotes fails to

14    comply with this requirement.  *See Cornerstone*, 981 F. Supp. 2d at 1080-81.

15    Plaintiffs rely exclusively on the restatement as an explanation of the falsity

16    of the statements at issue, putting all their eggs in the same proverbial basket.  The

17    restatement, however, does not allow Plaintiffs to escape their burden of pleading

18    falsity with particularity.  The Complaint's allegations about the falsity of the

19    statements at issue are nothing more than a comparison of the original financial

20    statements with the restated financial information, done with the benefit of 20/20

21    hindsight.  (*See* CAC ¶¶ 279, 333, 343, 352, 361, 373, 386, 397.)

22    As shown in the Motion, however, if the restatement establishes falsity of

23    anything, it is only of the financial information which was restated.  (Mot. 9:14-23.)

24    Plaintiffs cannot rely on the restatement to establish the falsity of both the hard

25    financial data that was restated and the soft information that was not restated.  (*Id.*)

26    Rather than provide a substantive response to this contention, Plaintiffs feign

27    ignorance as to the distinction between "hard" financial information and "soft"

28    information, even though they are virtually terms of art in securities litigation.  *See,*

-19-

1   *e.g., In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1482 (N.D. Cal. 1992) (drawing

2   distinction between hard and soft information for the purpose of analyzing

3   disclosure obligations under the federal securities laws).  Hard information includes

4   hard data about a company's past financial performance; examples include

5   consolidated financial statements.  In contrast, soft information includes forecasts

6   and predictions about a company's value and prospects, and is inherently imprecise

7   in nature.  *See* Bernard S. Sharfman, *Taking a More Sophisticated Approach to*

8   *Market Efficiency: How Securities Analyst Reports Can be used to Establish Loss*

9   *Causation in Federal Securities Fraud Action*, 38 SECURITIES REGULATION L.

10  J. 3 (2010).[6]  The allegedly false and misleading statements in the Complaint

11  include both hard information (financial data from the Company's SEC filings), and

12  soft information (non-financial statements in SEC filings, press releases and

13  conference calls related to the company's performance).[7]  The restatement can only

14  be used to establish the falsity of the financial information that was restated.  *See*

15  *Verisign*, 531 F. Supp. 2d at 1204-05.  Yet, the block-quoted statements in the

16  Complaint go far beyond the restated financial results.  (*See e.g.* ¶¶ 241, 269, 321,

17  363.)

18          Surprisingly, Plaintiffs concede they are not contending that any portion of

19  the financial statements that was not restated was false or misleading.  (Opp. 9:19-

20  21.)  As the restatement may be used to demonstrate the falsity only of the financial

21  information that was restated, Plaintiffs have provided no explanation of the falsity

22  of the remaining statements at issue, including non-financial information in the

23  SEC filings, statements in press releases, and statements in conference calls with

24  /////

25

26  [6] A true and correct copy of Bernard S. Sharfman's *Taking a More Sophisticated Approach to Market Efficiency:*
    *How Securities Analyst Reports Can Be Used to Establish Loss Causation in Federal Securities Fraud Action*, 38

27  SECURITIES REGULATION L.J. 3 (2010) is attached as Exhibit D to the Feldman Decl. filed herewith.

28  [7] *See* examples of hard information at CAC ¶¶ 241, 253, 263, 276, 279.  *See* examples of soft information at CAC ¶¶
    246, 248, 284, 293, 324.

-20-

1    analysts.  Accordingly, Plaintiffs have failed to adequately allege falsity for the

2    non-restated statements at issue in the Complaint.[8]

3    **IV.    CONTROL PERSON CLAIMS FAIL**

4          Plaintiffs have failed to state a valid claim for violations of the federal

5    securities laws, and thus, they have also failed to state a valid claim for control

6    person liability under Section 15 or Section 20(a).  *See, e.g., In re Syntex Corp. Sec.*

7    *Litig.*, 855 F. Supp. 1086, 1098 (N.D. Cal. 1994), *aff'd*, 95 F.3d 922 (9th Cir. 1996).

8    **V.    CONCLUSION**

9          For the reasons set forth above, Defendants respectfully request that the

10   motion to dismiss be granted.

11

12   Dated:  April 15, 2010              DLA PIPER LLP (US)

13                                       */s/ Robert W. Brownlie*
                                         Robert W. Brownlie
14                                       Jennifer M. Feldman
                                         401 B Street, Suite 1700
15                                       San Diego, CA  92101-4297
                                         Telephone:  619 699-2700
16                                       Facsimile:   619 699-2700

17                                       Attorneys for Defendants
                                         SouthWest Water Company, Anton C. Garnier,
18                                       Mark A. Swatek, Cheryl L. Clary, and Peter J.
                                         Moerbeek
19

20

21

22

23

24

25

26

27

---

[8] As shown in the Motion, the entire Complaint sounds in fraud.  Thus, Plaintiffs' failure to plead falsity with
28   particularity should result in the dismissal of Plaintiffs' alleged Section 11 claim.

-21-