1  ROBERT A. MEYER (SBN 066847)
   *rmeyer@loeb.com*
2  SAUL D. BRENNER (SBN 130909)
   *sbrenner@loeb.com*
3  LOEB & LOEB LLP
   10100 Santa Monica Boulevard, Suite 2200
4  Los Angeles, California 90067-4120
   Telephone:  310-282-2000
5  Facsimile:  310-282-2200

6  Attorneys for Defendant
   KPMG LLP

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11

12  ROBERT G. PERRIN and DIANE    )   Case No. 2:08-cv-07844-JHN-AGRx
    L. PERRIN, Individually and on )
13  Behalf of All Others Similarly )   Assigned to Hon. Jacqueline H. Nguyen
    Situated,                      )
14                                 )
          Plaintiffs,              )   Date:  May 17, 2010
15                                 )   Time:  2:00 P.M.
          v.                       )   Ctrm: 790 (Roybal Federal Building)
16                                 )
    SOUTHWEST WATER               )
17  COMPANY, ANTON C.             )
    GARNIER, MARK A. SWATEK,      )   **REPLY MEMORANDUM OF POINTS**
18  CHERYL L. CLARY, PETER J.     )   **AND AUTHORITIES IN SUPPORT**
    MOERBEEK and KPMG LLP,        )   **OF MOTION OF DEFENDANT**
19                                 )   **KPMG LLP TO DISMISS CLAIM II**
          Defendants.             )   **FOR RELIEF IN PLAINTIFFS'**
20                                 )   **CONSOLIDATED AMENDED CLASS**
                                   )   **ACTION COMPLAINT PURSUANT**
21                                 )   **TO RULES 8(a), 9(b), 12(b)(1), 12(b)(6)**
                                   )   **AND 15(C) OF THE FEDERAL**
22  ─────────────────────────     )   **RULES OF CIVIL PROCEDURE**

23

24

25

26

27

28

LA1953917.1
210126-10013

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................1

II.   DISCUSSION ......................................................................................3

    A.    PLAINTIFFS' ATTEMPT TO AVOID DISMISSAL
          UNDER THE STATUTE OF REPOSE IS UNAVAILING ...............3

        1.    The "Post-Effective Amendments" Cannot Revive
              Time-Barred Claims Predicated On Purchases Made
              Outside of the Three-Year Period of Repose...........................3

        2.    The Vast Majority of the Alleged Purchases by the
              Securities Act Plaintiffs Are Time-Barred .................................5

    B.    THE §11 CLAIM AGAINST KPMG WAS NOT FILED
          UNTIL OCTOBER 15, 2009 FOR PURPOSES OF
          CALCULATING THE REPOSE PERIOD ..........................................7

        1.    The §11 Claim Against KPMG Does Not "Relate
              Back" to Any Prior Complaint Because It Seeks To
              Assert a New Theory of Liability Based on New
              Document .....................................................................................7

        2.    The CAC Does Not Relate Back to any Prior
              Complaint for the Additional Reason That the
              "Securities Act Plaintiffs" Had Not Previously Sued
              KPMG ........................................................................................11

    C.    PLAINTIFFS LACK STANDING ....................................................12

        1.    Plaintiffs Fail to Satisfy the Tracing Requirement ...............13

        2.    Plaintiffs' 2005 Acquisitions Cannot Be Maintained
              As a §11 Claim ..........................................................................16

    D.    THE §11 CLAIM AGAINST KPMG FAILS TO PLEAD
          AN ACTIONABLE MISSTATEMENT OR OMISSION ................17

        1.    The Heightened Pleading Requirements of Rule
              9(b) Apply .................................................................................18

        2.    Plaintiffs' Allegations Fail To Satisfy Either Rule
              8(a) or 9(b)................................................................................19

             a.    The CAC Fails to Demonstrate That Any
                  Statement Or Opinion Made By KPMG Was
                  Subjectively False When Made .....................................19

             b.    A Restatement Does Not Necessarily Mean
                  That Plaintiffs Have Satisfactorily Alleged

**Page**

That KPMG's Opinion Was False When
Made..............................................................................22

III.    CONCLUSION .............................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alpern v. Utliicorp United, Inc.,*
   84 F.3d 1525 (8th Cir. 1996) ........................................................................ 9

*Am. Pipe & Constr. Co. v. Utah,*
   414 U.S. 538 (1974) ................................................................................ 10

*Armbruster v. Cellcyte Genetics Corp.,*
   2008 WL 1929903 (W.D. Wash. Apr. 28, 2008) ............................................. 10

*Ashcroft v Iqbal,*
   129 S.Ct. 1937 (2009) .............................................................................. 18

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................ 18

*Belodoff v. Netlist, Inc., et al.,*
   2009 U.S. Dist. LEXIS 39903 (C.D. Cal. Apr. 17, 2009) ................................. 10

*Carson v. Merrill Lynch, Pierce, Fenner & Smith Inc.,*
   1998 U.S. Dist. LEXIS 6903 (W.D. Ark. March 30, 1998) .............................. 14

*CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP,*
   562 F. Supp. 2d 511 (S.D.N.Y. 2008) ......................................................... 20

*Edward J. Goodman Life Income Trust,*
   595 F. Supp. 2d 1253 (M.D. Fla. 2009) ...................................................... 21

*Finkel v. Stratton Corp.,*
   962 F.2d 169 (2d Cir. 1992) .................................................................... 4-5

*Guenther v. Cooper Life Sciences, Inc.,*
   759 F. Supp. 1437 (N.D. Cal. 1990) ....................................................... 4, 13

*Guerrero v. RJM Acquisitions LLC,*
   499 F.3d 926 (9th Cir. 2007) ..................................................................... 9

*Immigrant Assistance Project of the Los Angeles County Fed'n of Labor v.*
   *Immig'n and Naturalization Serv.,*
   306 F.3d 842 (9th Cir. 2002) .................................................................... 11

**Page(s)**

*In re Adelphia Communs. Corp. Sec. & Deriv. Litig.*,
    2005 U.S. Dist. LEXIS 14444, Fed. Sec. L. Rep. (CCH) (S.D.N.Y. July
    18, 2005) ....................................................................................................8

*In re Atlas Mining Sec. Litig.*,
    670 F. Supp. 2d 1128 (D. Id. 2009) ...................................................23

*In re Axis Capital Holdings Ltd.*,
    456 F. Supp. 2d 576, 598 (S.D.N.Y. 2006).........................................19

*In re Bausch & Lomb, Inc. Sec. Litig.*,
    941 F. Supp. 1352 (W.D.N.Y. 1996) ............................................ 11-12

*In re Brooks Automation, Inc. Sec. Litig.*,
    2007 U.S. Dist. LEXIS 88045, Fed. S. L. Rep. (CCH)....................21

*In re CIT Group, Inc. Sec. Litig.*,
    349 F. Supp. 2d 685 (S.D.N.Y. 2004)...................................................18

*In re Complete Mgmt. Inc. Sec. Litig.*,
    153 F. Supp. 2d 314 (S.D.N.Y. 2001) ..................................................10

*In re Countrywide Fin. Corp. Sec. Litig.*,
    2009 U.S. Dist. LEXIS 32951 (C.D. Cal. April 6, 2009)....................4

*In re Cylink Sec. Litig.*,
    178 F. Supp. 2d 1077 (N.D. Cal. 2001) ...............................................23

*In re Global Crossing Ltd. Sec. Litig.*,
    313 F. Supp. 2d 189 (S.D.N.Y. 2003)...................................................13

*In re JDS Uniphase Corp. Sec. Litig.*,
    2005 WL 43463 (N.D. Cal. Jan. 6, 2005) ...........................................10

*In re Juniper Networks, Inc. Sec. Litig.*,
    542 F. Supp. 2d 1037 (N.D. Cal. 2008) ...............................................10

*In re Metawave Communs. Corp. Sec. Litig.*,
    298 F. Supp. 2d 1056 (W.D. Wash. 2003).........................................22

*In re Metro. Sec. Litig.*,
    532 F. Supp. 2d 1260 (E.D. Wash. 2007) .................................... 13-14

**Page(s)**

*In re MobileMedia Sec. Litig.*,
    28 F. Supp. 2d 901, 924 (D.N.J. 1998) ...............................................................20

*In re New Century*,
    588 F. Supp. 2d 1206 (C.D. Cal. 2008)...............................................................20

*In re Portal Software, Inc. Sec. Litig.*
    (N.D. Cal. August 10, 2005) ...............................................................10

*In re Stac Elec. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996), *cert. denied sub nom., Anderson v. Clow*, 520
    U.S. 1103 (1997)...............................................................19

*In re Stratosphere Corp. Sec. Litig.*,
    1 F. Supp. 2d 1096 (D. Nev. 1998) ...............................................................19

*In re Textainer Partnership Sec. Litig.*,
    2005 U.S. Dist. LEXIS 40974, Fed. Sec. L. Rep. (CCH) (N.D. Cal. 2005) ......20

*In re Washington Mut., Inc. Sec., Deriv. & ERISA Litig.*,
    2009 U.S. Dist. LEXIS 99727, Fed. Sec. L. Rep. (CCH) (W.D. Wash. Oct.
    27, 2009 ("*Wa Mu II*"))...............................................................20

*In re Washington Mut., Inc. Sec., Deriv. & ERISA Litig.*,
    259 F.R.D. 490, Fed. Sec. L. Rep. (CCH) (W.D. Wash. 2009)
    ("*Wa Mu I*")...............................................................13

*In re Xchange Inc. Sec. Litig.*,
    2002 U.S. Dist. LEXIS 15909, *12-*13, Fed. Sec. L. Rep. (CCH) P92,260
    (D. Mass. Aug. 26, 2002)...............................................................7

*J&R Marketing, SEP v. General Motors Corp.*,
    2007 U.S. Dist. LEXIS 13227 (E.D. Mich. Febr. 27, 2007), *aff'd*, 519 F.3d
    552 (6th Cir. 2008)...............................................................22

*Kelley v. Rambus, Inc.*,
    2008 U.S. Dist. LEXIS 100319, Fed. Sec. L. Rep. (CCH) (N.D. Cal. Dec.
    9, 2008) ...............................................................21

*Louisiana-Pacific Corp v. Asarco, Inc.*,
    5 F.3d 431 (1993) ...............................................................11

**Page(s)**

*Martell v. Trilogy Ltd.¸872*
  F.2d. 322, 323 (9th Cir. 1989) ...............................................................9

*Mishkin v. Peat, Marwick, Mitchell & Co.,*
  744 F. Supp. 531 (S.D.N.Y. 1990) .......................................................17

*Panther Partners, Inc. v. Ikanos Communs., Inc.,*
  538 F. Supp. 2d 662 (S.D.N.Y. 2008) ..................................................20

*Reiger v. Altris Software, Inc.,*
  1999 U.S. Dist. LEXIS 7949 (S.D. Cal. Apr. 30, 1999) ......................20

*SEC v. Seaboard Corp.,*
  677 F.2d 1301 (9th Cir. 1982) ................................................................9

*Stoll v. Ardizzone et al.,*
  2007 U.S. Dist. LEXIS 75769 (S.D.N.Y. Oct. 9, 2007) ........................9

*Wagner v. First Horizon Pharm. Corp.,*
  464 F.3d 1273 (11th Cir. 2006).........................................................1, 19

*Yu v. State Street Corp.,*
  2010 U.S. Dist. LEXIS 17147 (S.D.N.Y. Feb. 25, 2010) .....................18

*Zirkin v. Quanta Capital Holdings Ltd.,*
  2009 U.S. Dist. LEXIS 4667 (S.D.N.Y. Jan. 22, 2009).......................18

STATUTES

15 U.S.C. § 11 .................................................................................. Passim

OTHER AUTHORITIES

17 C.F.R. § 229.512(a)(2) ........................................................................4

Fed. R. Civ. P. 8(a).......................................................... 2, 18-19, 24

Fed. R. Civ. P. 9(b).........................................................2, 18, 24

Fed. R. Civ. P. 12(b)(1) and (6) ............................................................24

Fed. R. Civ. P. 12(b)(6)...........................................................................24

**Page(s)**

Fed. R. Civ. P. 15 ...............................................................................................10

Fed. R. Civ. P. 15(c)...........................................................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.   <u>INTRODUCTION</u>

In its motion, Defendant KPMG LLP ("KPMG") demonstrated that the "Securities Act Plaintiffs'" claim under Section 11 of the Securities Act is defective and should be dismissed for three independent reasons.  <u>First</u>, the claim is untimely inasmuch that it is based upon stock purchases allegedly made pursuant to two registration statements that became *effective more than three years prior to plaintiffs' assertion of a Securities Act claim*.  There is no dispute that § 11 has an absolute statute of repose of three years from the *effective date* of the underlying registration statement.  KPMG therefore established that the Securities Act Plaintiffs – some of whom certified that they purchased their shares as long ago as June 7, 2005 – are statutorily barred from proceeding with their § 11 claim against KPMG since no such claim was asserted until October 15, 2009.[1]

In their Opposition, plaintiffs confirm that a vast majority of their purchases are untimely, and fail in their misguided effort to "revive" their claim by pointing to so-called "post-effective amendments" to the two registration statements at issue (*i.e.*, the "2005 S-3/A" filed and effective April 5, 2005, and the "2006 S-3" filed and effective April 19, 2006).  As demonstrated in KPMG's motion and again below, purchases made pursuant to a registration statement that became effective more than three years prior to the assertion of a § 11 claim *cannot be revived* by any post-effective amendment, and plaintiffs' cited authority is inapposite.  Ultimately, it remains undisputed that most of the purchases alleged as the basis for Securities Act Plaintiffs' § 11 claim were made prior to the commencement of the three-year period of repose, which in this case equates to the earliest "post-effective amendment" within three years of the service of plaintiffs' CAC, or March 16,

---

[1] As demonstrated previously and below (Section B, *infra*), Securities Act Plaintiffs' § 11 claim was first asserted in the Consolidated Amended Complaint ("CAC") on October 15, 2009 and did not "relate back" to any prior pleadings, which were filed by *different* parties under *different* statutes and based upon *different* documents.

1  2007.  Accordingly, Securities Act Plaintiffs' § 11 claim is time-barred as a matter

2  of law to the extent predicated upon purchases made prior to March 16, 2007.

3       Second, to the extent not time-barred, the Securities Act Plaintiffs are legally

4  barred from proceeding with their § 11 claim because they lack standing:  as

5  previously demonstrated, these plaintiffs failed, either through requisite pleading or

6  accompanying certifications by each named plaintiff, to trace their shares to a

7  specific registration statement as required by § 11.  In response, plaintiffs implicitly

8  concede this deficiency by submitting an *attorney's declaration* that merely attaches

9  a purported "summarization" of plaintiffs' stock purchases made pursuant to the

10  Dividend Reinvestment Program ("DRIP").  As shown herein, the DRIP cannot

11  serve as a proxy for a §11 claim and tracing DRIP purchases does not demonstrate

12  tracing to specific registration statements.  This is illustrated by plaintiffs' own

13  confusing pleading, which on its face asserts that more shares were issued under the

14  DRIP during 2005 (796,000) than there were shares registered (500,000) in the 2005

15  S-3/A, thereby confirming that plaintiffs' shares – upon which they seek to impose

16  § 11 liability – are just as likely as not to have come from sources other than the two

17  registration statements at issue, including the public market, or one of over a dozen

18  other registration statements *not* at issue in this case.  Moreover, the attorney's

19  declaration clearly is not an adequate substitute either for requisite pleading or

20  individual plaintiff certification under § 11, is otherwise inadmissible and, in any

21  event, only confirms that the §11 claim is, for the most part, time-barred.

22       Third, KPMG demonstrated that the CAC fails even to meet the minimum

23  pleading requirements of FED. R. CIV. P. 8(a), much less the more stringent

24  particularity requirements of FED. R. CIV. P. 9(b), inasmuch that plaintiffs fail to

25  plead *contemporaneous facts* to establish that KPMG's published audit and internal

26  control opinions were materially *false when made*.  In response, plaintiffs only

27  reinforce the conclusion that their §11 claim against KPMG is a classic example of

28  impermissible *pleading by hindsight*.  Thus, plaintiffs proclaim that Southwest

1   Water Company's ("SWC") decision during 2008-2009, in consultation with a *new*

2   *outside auditor*, to restate prior years' financials establishes that KPMG's reports on

3   those prior financial statements must have been false *at the time they were made*.

4   Yet, plaintiffs unnecessarily confuse *accounting* principles with the relevant *legal*

5   standards, which in this case require affirmative allegations of falsity based upon

6   contemporaneous facts, not subsequent, differing determinations on matters of

7   judgment.  Moreover, plaintiffs fail to distinguish the legal authority requiring

8   specific factual pleading sufficient to demonstrate that allegedly false or misleading

9   statements involving matters of opinion and judgment are **objectively** and

10  **subjectively** false **at the time they are made.**  The mere fact of a restatement, by

11  persons other than KPMG, is legally insufficient to establish the "material falsity"

12  element of plaintiffs' §11 claim against KPMG, and KPMG's motion should be

13  granted for this reason as well.

## II.   DISCUSSION

## A.   PLAINTIFFS' ATTEMPT TO AVOID DISMISSAL UNDER THE STATUTE OF REPOSE IS UNAVAILING

### 1.   The "Post-Effective Amendments" Cannot Revive Time-Barred Claims Predicated On Purchases Made Outside of the Three-Year Period of Repose

20      KPMG moved to dismiss the CAC because, on its face, the § 11 claim was

21  predicated upon two registration statements that became effective more than three

22  years prior to the filing of the claim against KPMG – *i.e.*, the "2005 S-3/A" filed

23  and effective April 5, 2005, and the "2006 S-3" filed and effective April 19, 2006.

24  KPMG demonstrated that equitable tolling is inapplicable to §11 claims, and that a

25  plaintiff has a maximum of three years to assert a claim from the "effective date" of

26  the relevant *offering*, and *not* the date of the actual *purchase*.  Because the named

27  Securities Act Plaintiffs certified to making purchases as long ago as June 7, 2005,

28  and presumably made all of their purchases pursuant to one of the two registration

1    statement that became effective more than three years prior to the filing of the CAC,

2    plaintiffs' § 11 claim was time-barred as a matter of law based upon plaintiffs' own

3    pleading.

4         In response, plaintiffs contend that different rules apply to so-called "shelf-

5    registrations," which are intended to constitute a "continuous offering" of the

6    underlying registered shares.  Thus, plaintiffs claim that each public filing made

7    subsequent to the effective date of a registration statement – *i.e.,* a "post-effective

8    amendment" – operates to restart the clock on a § 11 claim with respect to shares

9    traceable to that earlier offering.  Accordingly, plaintiffs seek to resurrect time-

10   barred claims by insisting that their purchases were traceable to post-effective

11   amendments rather than to the underlying registration statements themselves.

12   Plaintiffs are wrong as a matter of law.

13        As KPMG previously demonstrated, post-effective amendments do not have

14   the effect of commencing a new period of repose with regard to shares purchased

15   pursuant to the initial registration statement.  *Finkel v. Stratton Corp.*, 962 F.2d 169,

16   173-74 (2d Cir. 1992) (holding that §11 claim was time-barred despite the issuance

17   of an amended registration statement within the three-year repose period; the repose

18   clock was calculated beginning on the date of the initial registration statement,

19   which was not changed or post-dated by virtue of the amendment).

20        Nothing in the Opposition alters this conclusion.  Instead, the authorities are

21   clear in holding that no such revival of time-barred claims may occur, and that

22   amendments do not have the effect of re-dating (or reviving) prior registration

23   statements pursuant to which the alleged purchases were made.  *See, e.g.*, *Guenther*

24   *v. Cooper Life Sciences, Inc.*, 759 F. Supp. 1437, 1440-41 (N.D. Cal. 1990)

25   (plaintiffs who purchased shares before post-effective amendment was issued could

26   not state §11 claim based upon that amendment); *see also In re Countrywide Fin.*

27   *Corp. Sec. Litig.*, 2009 U.S. Dist. LEXIS 32951, *26-*32 (C.D. Cal. April 6, 2009).

28   Even SEC regulation S-K Item 512(a)(2), *17 C.F.R. § 229.512(a)(2)* – upon which

4

1  plaintiffs rely – confirms that the issuance of a post-effective amendment does not

2  revive stale claims, but rather that such amendment "*shall be deemed to be a new*

3  *registration statement* relating to the securities offered therein." (Emphasis added.)

4      As the Second Circuit held in *Finkel*, S-K Item 512(a)(2) simply "has no

5  relevance to claims concerning securities offered pursuant to the *initial* registration

6  statement." *Finkel*, 962 F.2d at 174 (emphasis added).  The import of the foregoing,

7  which plaintiffs seek to obscure, is clear:  if a plaintiff purchased securities offered

8  pursuant to a registration statement (whether a shelf registration or not) and the

9  plaintiff waited more than three years from the effective date of *that* registration

10  statement to file a §11 claim, the fact that there may have been a subsequent, post-

11  effective amendment does not have the effect of post-dating the earlier registration

12  statement pursuant to which the plaintiff purchased securities for statute of repose

13  purposes – or, as a result, of reviving that plaintiff's time-barred claim.

14      **2.     The Vast Majority of the Alleged Purchases by the Securities Act**

15      **Plaintiffs Are Time-Barred**

16      As previously demonstrated, alleged purchases that are traceable to a

17  registration statement with an effective date prior to October 15, 2006 are time-

18  barred.  Plaintiffs' submission of the inadmissible Declaration of Michael Goldberg

19  ("Goldberg Declaration")[2] plainly illustrates that they are predicating their § 11

20  claim in large part on purchases made pursuant to registration statements that

21  became effective outside the statute of repose.  Specifically, and as explained

22  herein, the Goldberg Declaration, if accepted by this Court, confirms that plaintiffs'

23  § 11 claim is time-barred to the extent it is based upon any purchases made prior to

24  the SWC Form 10-K filed on March 16, 2007.

25      The CAC was filed on October 19, 2009.  The first registration statement

26  and/or "amendment" that became effective within three years of October 15, 2009,

27
28  [2] *See* Evidentiary Objections of Defendant KPMG LLP to Declaration of Michael
    Goldberg (filed concurrently herewith).

is the 2006 10-K filed on March 16, 2007.  Accordingly, *all earlier purchases could only be conceivably traceable to time-barred registration statements, if at all*.

For example, in the case of putative Securities Act Plaintiff Thomas Moshier ("Moshier"), ten of his alleged 13 stock purchases were made prior to March 16, 2007, and therefore could only be traceable – if at all – to registration statements with effective dates beyond the three-year period of repose.  Similarly, putative Securities Act Plaintiff Nelson Bush ("Bush") alleges that he made 23 purchases of SWC shares, all purportedly pursuant to its DRIP.  Even assuming that Bush's alleged DRIP purchases can be traced to a particular registration statement (*see* SWC's pending motion for summary judgment; *see also* Section II.C hereof, *infra*, pp. 12-17), 19 of these alleged purchases occurred before March 16, 2007.  As such, all but three of Moshier's purchases, and all but four of Bush's purchases, are time-barred and cannot form the basis for any § 11 claim as a matter of law and should be dismissed.  Likewise, putative Securities Act Plaintiff Joseph Yeatte allegedly made ten acquisitions prior to March 16, 2007, which are equally untimely.

In short, with respect to the vast majority of their alleged share purchases, plaintiffs have not alleged and cannot demonstrate – much less certify as required by law – that such purchases were made pursuant to any registration statement or post-effective amendment that became effective during the repose period.  Plaintiffs are therefore categorically wrong in their assertion that the effective dates of the 2005 S-3/A (April 5, 2005) and the 2006 S-3 (April 19, 2006) are somehow irrelevant to the repose analysis.  In fact, these effective dates are central to this determination.[3]

---

[3] The initial complaints filed herein that named KPMG as a defendant were the *Johnston* and *Harroch* complaints, both filed on December 8, 2008.  Even by this date, any § 11 claim based on the first 13 purchases alleged by plaintiffs were time-barred.  *See* Goldberg Declaration, Exh. 4 (13 purchases by the "Securities Act Plaintiffs" were made pursuant to the SEC Form S-3/A dated April 5, 2005).

1    **B.**      **THE §11 CLAIM AGAINST KPMG WAS NOT FILED UNTIL**

2          **OCTOBER 15, 2009 FOR PURPOSES OF CALCULATING THE**

3          **REPOSE PERIOD**

4          KPMG's moving papers demonstrated that plaintiffs' § 11 claim against

5 KPMG does not "relate back" to the date of any prior complaint because, *inter alia*,

6 the CAC purports to assert an entirely new theory of liability against KPMG based

7 upon registration statements that were not even referenced in any prior pleading on

8 behalf of plaintiffs, who themselves had never previously asserted a claim against

9 KPMG. The Opposition does not change this conclusion.

10      **1.**      **The §11 Claim Against KPMG Does Not "Relate Back" to Any**

11          **Prior Complaint Because It Seeks To Assert a New Theory of**

12          **Liability Based on New Documents**

13          Plaintiffs argue that the CAC should be deemed to relate back to prior

14 complaints filed by ***different plaintiffs***, not parties in the CAC, who sought to assert

15 ***different claims*** that did not even reference the registration statements upon which

16 the current plaintiffs' §11 claim is predicated. Opp. at 22-24. Plaintiffs' liberal

17 construction of the "relation back" doctrine is unsupported and must be rejected.

18          In securities actions, the inquiry into whether a complaint – even one in

19 which no new party has been named – should relate back to an earlier pleading

20 focuses specifically on whether the allegations in the later pleading relate to the

21 same ***documents*** that are alleged in the prior pleading to be false or misleading.

22 *See, e.g., In re Xchange Inc. Sec. Litig.*, 2002 U.S. Dist. LEXIS 15909, *12-*13,

23 Fed. Sec. L. Rep. (CCH) P92,260 (D. Mass. Aug. 26, 2002) (new claims alleged in

24 amended complaint did not "relate back" because they were based on registration

25 statements not mentioned in the original complaint: "By definition, plaintiffs' new

26 claims under §11 and § 15 of the 1933 Act involve misstatements made in

27 Xchange's registration statements. Yet, the original complaint made no reference to

28

1   Xchange's December 1998 IPO or June 1999 Second Offering, nor did any

2   allegations concern the registration statements for those offerings.").

3       *In re Adelphia Communs. Corp. Sec. & Deriv. Litig.*, 2005 U.S. Dist. LEXIS

4   14444, *36-*37, Fed. Sec. L. Rep. (CCH) P93310 (S.D.N.Y. July 18, 2005), is

5   instructive.  The *Adelphia* court rejected the plaintiffs' contention that their §11

6   claim against an auditor (Deloitte) should be deemed to relate back to an earlier

7   pleading even though Deloitte had been named as a defendant in the earlier

8   pleading.  The court found dispositive the fact that the registration statements upon

9   which the new claim was based had not been referenced in the earlier pleading.

10  Further, the court found unpersuasive the argument made by the *Adelphia* plaintiffs

11  – much like the argument made by plaintiffs here – that the subject registration

12  statement had been "incorporated" by reference in other SEC filings that had been

13  referenced in their original complaint.  The court reasoned:

14          The actual transaction challenged in any §11 claim is the

15          preparation of a registration statement, here the August 1999

16          Registration Statement, which allegedly contained materially

17          misleading statements or omissions. 15 U.S.C. § 77k.  NYCERS

18          clearly put the preparation of the August 1999 Registration in issue in

19          the November 2002 complaint, by asserting a §11 claim challenging the

20          Century Exchange Offer, which was governed by that registration

21          statement. (NYCERS Am. Compl. ¶¶ 189-191) .… The June 2002

22          complaint does not mention the August 1999 Registration Statement.

23          Although that complaint challenges statements made in SEC filings

24          which were later incorporated into the August 1999 Registration

25          Statement, the making of those statements, prior to the filing of the

26          August 1999 Registration Statement, involve different transactions.

27          Moreover, even the very incorporation of the challenged statements

28

8

1   into the August 1999 Registration Statement constitutes a "new fact,"
2   not alleged in the June 2002 complaint.

3          NYCERS alleges that Deloitte was on notice of the new §11
4   claim because the August 1999 Registration Statement incorporates by
5   reference documents filed with the SEC prior to October 1, 1999.  (Pl.
6   Opp., Sec. 1C at 3)  This Court does not agree with that excessively
7   expansive view of notice.

8   *Id.* at *36-*37  (emphasis added); *see also Stoll v. Ardizzone et al.*, 2007 U.S. Dist.
9   LEXIS 75769, *10-*11 (S.D.N.Y. Oct. 9, 2007).

10          The Ninth Circuit has applied similar reasoning to amendments that added
11  §11 claims based on new documents, even where the prior claims had involved the
12  same underlying transactions.  *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1314 (9th
13  Cir. 1982) (§11 cross-claims asserted against underwriter and auditor did not relate
14  back to earlier cross-claims, and were thus barred by statute of limitations, because,
15  while the prior cross-claims had alleged the same underlying "scheme to manipulate
16  the market, … [t]he second amended cross-claims alleged for the first time the
17  misrepresentations and omissions in the prospectus").

18          *Adelphia* and *Seaboard* illustrate the stringent notice requirements that courts
19  apply in the context of the "relation back" inquiry.  These authorities demonstrate
20  that it is entirely insufficient for plaintiffs to allege that, although a prior complaint
21  failed to include or reference the registration statements upon which their new §11
22  claim is based, "the original complaints were based on the same 'transactions,
23  occurrences and conduct.'"  Opp. at 23.[4]   The dispositive fact here is that the CAC

24  _____

25  [4] Plaintiffs' cited cases are therefore inapposite and readily distinguishable.  *See,
    e.g.*, *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 933 (9th Cir. 2007), *cited in*
26  Opp. at 23 n.26 (amended antitrust complaint that did *not* add a new cause of action
    and was *not* based on any new document); *Martell v. Trilogy Ltd.*, 872 F.2d. 322,
27  323 (9th Cir. 1989), *cited in* Opp. at 23 (documents underlying the §11 claim had
    been pled in original complaint); *Alpern v. Utliicorp United, Inc.*, 84 F.3d 1525,

1   marked the first complaint that contained any allegations of misrepresentations in

2   any of SWC's *registration statements*.[5]

3         Plaintiffs are likewise mistaken in arguing that their claims were somehow

4   tolled under federal common law by the filing of the first class action against SWC.

5   *See* Opp. at 19 n.20 (citing *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554

6   (1974)).  Plaintiffs overlook the critical distinction that, in *American Pipe*, the issue

7   before the Supreme Court was whether the ***same*** claims had been tolled by the filing

8   of an earlier class action.  *Id.* at 540-41 (federal government and then state

9   government both sought to assert claim under § 1 of Sherman Act).  By contrast, the

10  determination of whether a new cause of action based on new "conduct,

11  transaction[s], or occurrence[s]," and/or claims against new parties, relate back to an

12  earlier pleading, is an entirely different analysis and governed by FED. R. CIV. P. 15.

13

14

---

15  1543-44 (8th Cir. 1996), *cited in* Opp. at 22 (allowing amendment, but only in the

16  context of determining whether plaintiffs' alleged damages would be calculated as
    of the date of the initial complaint or the amended complaint); *Belodoff  v. Netlist,*

17  *Inc., et al.*, 2009 U.S. Dist. LEXIS 39903, *40 (C.D. Cal. Apr. 17, 2009), *cited in*

18  Opp. at 23 n.26 (noting in dicta that "the Prospectus and Registration statement
    form the basis for the claims in both the Consolidated Complaint and the FAC"); *In*

19  *re Complete Mgmt. Inc. Sec. Litig.*, 153 F. Supp. 2d 314, 335-36 (S.D.N.Y. 2001)

20  (defendants did not assert that amended pleading contained new documents); *In re*
    *Portal Software, Inc. Sec. Litig.*, (N.D. Cal. August 10, 2005) (no mention of new

21  documents).  *See also In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d

22  1037, 1052-53 (N.D. Cal. 2008), *cited in* Opp. at 23 n.26 (issue involved addition of
    new party, not assertion of new claim); *Armbruster v. Cellcyte Genetics Corp.*, 2008

23  WL 1929903, *1 (W.D. Wash. Apr. 28, 2008), *cited in* Opp. at 23 (issue before the

24  court was consolidation of the action, not "relation back"); *In re JDS Uniphase*
    *Corp. Sec. Litig.*, 2005 WL 43463, *10 (N.D. Cal. Jan. 6, 2005), *cited in* Opp. at 23

25  n.26 (prior pleading already included the §11 claim).

26  [5] Of course,  the number of new documents is more than just two registration

27  statements.  As shown in SWC's motion for summary judgment, the actual number
    of SWC registration statements is 16 in addition to an untold number of

28  amendments.

1
2
3

## 2. The CAC Does Not Relate Back to any Prior Complaint for the Additional Reason That the "Securities Act Plaintiffs" Had Not Previously Sued KPMG

4   KPMG also demonstrated in its moving papers that the CAC does not relate

5   back to any earlier complaint for the additional reason that the "Securities Act

6   Plaintiffs" had never asserted any claims against KMPG before filing the CAC.

7   An amendment to add a party plaintiff relates back only when the original

8   complaint gives the defendant adequate notice of the claims of the new plaintiffs.

9   *Immigrant Assistance Project of the Los Angeles County Fed'n of Labor v. Immig'n*

10  *and Naturalization Serv.*, 306 F.3d 842, 857 (9th Cir. 2002), *cited in* KPMG Mot.

11  at 12.[6]  Here, none of the pre-CAC complaints provided such notice to KPMG.

12  Moshier's initial complaint, for example, omitted *any* reference to KPMG.

13  *Compare Louisiana-Pacific Corp v. Asarco, Inc.*, 5 F.3d 431, 434 (1993) (party

14  belatedly seeking leave to amend to add new party must demonstrate that it made a

15  mistake in failing to sue a party originally; no amendment will be permitted when

16  "[t]here was no mistake of identity, but rather a conscious choice of whom to sue").

17  *In re Bausch & Lomb, Inc. Sec. Litig.*, 941 F. Supp. 1352 (W.D.N.Y. 1996),

18  is illustrative.  In that case, the court held that an amendment that would have had

19  the effect of adding both "new defendants and new plaintiffs" did not relate back to

20  a prior complaint because the failure to name the parties originally could not be

21  attributed to a mistake.[7]  The court further reasoned that, to permit the claims to

22  relate back "would [have been] 'an unprecedented and unwarranted extension of

23

---

24  [6] Notably, plaintiffs make no attempt in their Opposition to distinguish *Immigrant*

25  *Assistance Project* or argue that it is somehow inapplicable here.

   [7] In *Bausch & Lomb,* a separate group of plaintiffs likewise sought to have their

26  claims relate back either to their original pleading or another pleading in the

   consolidated action.  *Bausch & Lomb*, 941 F. Supp. at 1356.  Like here, the *Bausch*

27  *& Lomb* court observed that the "claims against the additional individual defendants

   can be viewed as both adding new defendants and new plaintiffs."  *Id*. at 1363.

28

11

1   Rule 15(c).'" *Id.* at 1365 (citations omitted).  The court further held that the claims

2   asserted in the older class period also were time-barred because there had been no

3   mistake concerning the identities of the proper parties and the claims did not arise

4   out of the same conduct, transaction or occurrence as prior claims.[8]  *Id.* at 1366.

5       The Securities Act Plaintiffs are entirely new plaintiffs with respect to

6   KPMG.  Plaintiffs have made no attempt to demonstrate that KPMG was omitted as

7   a result of any mistake, nor could they.  The mere fact that there were two pre-CAC

8   complaints that named KPMG, neither of which asserted a §11 claim or referenced

9   the subject registration statements, is wholly insufficient to support a finding that

10  the Securities Act Plaintiffs' §11 claim somehow relates back to those earlier

11  complaints.  It bears emphasis in this regard that the Harroch and Johnston

12  complaints asserted *different* claims against KPMG under *a different statute* and

13  based on *different* documents and were brought by individuals other than the

14  Securities Act Plaintiffs.   Accordingly, the § 11 claim against KPMG does not

15  relate back to any prior pleading, and the statute of repose applicable to plaintiffs'

16  § 11 claim against KPMG bars that claim to the extent predicated upon any stock

17  purchases traceable to a registration statement or post-effective amendment dated

18  prior to October 15, 2006 (*i.e.*, any purchase prior to March 16, 2007).

19  **C.   PLAINTIFFS LACK STANDING**

20      While some of the underlying stock purchases allegedly were made within

21  the three-year repose period, such purchases *still* cannot give rise to § 11 liability

22  since plaintiffs remain unable to trace those shares to the registration statements

23  alleged in the CAC.  As such, plaintiffs lack standing to maintain their §11 claim,

24  for at least two reasons:  First, plaintiffs implicitly concede their failure to plead

---

25  [8] The court based this latter ruling on the fact that "[t]he October 13 press release

26  was not mentioned in the prior pleadings and constitutes a separate alleged act of

27  fraud." *Bausch & Lomb*, 941 F. Supp. at 1366 (citations omitted).  Once again, the
    determinative factor was whether a document not mentioned in prior pleadings was

28  the basis for a newly asserted claim.

1  requisite facts to establish standing through their submission of an improper

2  "lawyer's declaration," which is an impermissible substitute for the required

3  pleading and/or party certifications and, in any event, *still* fails to trace each

4  purchase to specific registration statements or post-effective amendments, much less

5  a registration statement (as amended) with an effective date within the period of

6  repose.  Second, on its face, the CAC (and the SWC public filings that it references)

7  illustrates one of the many reasons why plaintiffs have been unable to meet the

8  "tracing" requirement: according to plaintiffs' allegations as set forth in the CAC,

9  the DRIP purchased and issued to its participants significantly more shares in 2005

10  than were registered by the 2005 S-3/A, which can only lead one to conclude that

11  the remaining shares acquired by DRIP participants, such as the Securities Act

12  Plaintiffs, could have come from just about anywhere, including the open market or,

13  as shown in SWC's summary judgment motion, even older registration statements

14  that are obviously time-barred.  In fact, as shown below, the terms of the DRIP also

15  put plaintiffs on notice that they were not entitled to registered shares and,

16  accordingly, are not automatically entitled to assert a §11 claim.  For these reasons,

17  the § 11 claim cannot withstand scrutiny.

18      **1.**    <u>**Plaintiffs Fail to Satisfy the Tracing Requirement**</u>

19      KPMG previously demonstrated that none of the three Securities Act

20  Plaintiffs has adequately pled sufficient facts to demonstrate standing.  KPMG Mot.

21  at 24-25.  *See In re Global Crossing Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 208

22  (S.D.N.Y. 2003) (to have standing to assert §11 claim, plaintiff must expressly

23  allege purchase of security issued pursuant to, or traceable to, *specific* registration

24  statement); *Guenther*, 759 F. Supp. at 1439; *see also In re Washington Mut., Inc.*

25  *Sec., Deriv. & ERISA Litig.*, 259 F.R.D. 490, 504, Fed. Sec. L. Rep. (CCH) P95,233

26  (W.D. Wash. 2009) ("*Wa Mu I*"); *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260,

27  1280 (E.D. Wash. 2007).  This is because the "Securities Act Plaintiffs" failed to

28  comply with the tracing requirement.  *See, e.g., In re Metro.*, 532 F. Supp. 2d at

1  1281 (ordering plaintiffs to "file an amended certification for each proposed class

2  representative tracing the representative's securities to one or more of the

3  Registration Statements at issue" prior to seeking class certification because

4  standing is jurisdictional issue).

5      Plaintiffs' allegations regarding their stock purchases and SWC registration

6  statements are ambiguous at best, and their CAC fails to allege specifically that the

7  Securities Act Plaintiffs purchased *any* shares pursuant to or traceable to any "post-

8  effective amendments" to the 2005 S-3/A or the 2006 S-3.  CAC ¶¶ 26, 80, 85-86,

9  88.  Rather, the CAC generally alleges that Securities Act Plaintiffs purchased

10  shares *pursuant to the DRIP*, and then seeks to incorporate by reference a series of

11  registration statements that relate to the DRIP.  CAC ¶ 26.  However, the DRIP

12  itself is not a registration statement, and in fact it provides on its face that the shares

13  to be issued pursuant to the DRIP may originate from sources *other* than the 2005

14  S-3/A and 2006 S-3, and might even be purchased by the administrator on the open

15  market.[9]  As such, an allegation that a plaintiff purchased shares pursuant to the

16  DRIP could just as plausibly be read to mean a purchase from the open market –

17  plainly not a purchase that could give rise to a § 11 claim.

18      Nor does the CAC attach proper certifications attesting, as to each alleged

19  purchase of SWC shares, to the specific registration statements under which the

20  "Securities Act Plaintiffs" claim to have made those purchases.  Even plaintiffs'

21  authority acknowledges that compliance with the certification requirements must

22  occur by the time that the Court has appointed a lead plaintiff.  *Carson v. Merrill*

23  [9] The DRIP expressly provides that stock may be obtained from virtually any

24  source, stating:  "We may, without giving you prior notice, change our

25  determination as to whether the Administrator will purchase shares of common
   stock directly from us or in the open market or in privately negotiated transactions

26  from third parties, which will affect whether such shares will be sold to you at a

27  discount."  KPMG RJN, Ex. A (2005 SEC Form S-3/A) at p. 8 of 39; *see also id.* at
   p. 18 of 39.  Contrary to plaintiffs' assertion, there was no requirement that SWC

28  sell newly registered shares to DRIP participants.

1 | *Lynch, Pierce, Fenner & Smith Inc.*, 1998 U.S. Dist. LEXIS 6903, *12 (W.D. Ark.
2 | March 30, 1998).  The Court appointed lead plaintiffs here on or about February 12,
3 | 2009.

4 |   The Opposition only reinforces the conclusion that the Securities Act
5 | Plaintiffs lack standing to maintain their §11 claim against KPMG.  Plaintiffs
6 | implicitly concede the deficiency of their CAC by belatedly submitting an
7 | inadmissible declaration of their counsel that merely purports to "summarize[]"
8 | plaintiffs' alleged purchases in chronological order and asserts that such purchases
9 | were made "pursuant to" the DRIP and "respective registration statements," and
10 | therefore impermissibly leaves the Court to *presume* that each alleged purchase
11 | links to registration statements and amendments filed during the same period.  *See*
12 | Goldberg Declaration ¶ 5 & Ex. 4 thereto.[10]  Such presumptions do not satisfy
13 | plaintiffs' burden, and *counsel's* declaration is no substitute for either *plaintiffs'*
14 | certification requirement or their obligation to trace their alleged purchases *in their*
15 | *complaint*.  Instead, this declaration simply confirms that, as shown above, the vast
16 | majority of the alleged purchases of the Securities Act Plaintiffs occurred outside of
17 | the applicable repose period, and still fails to address the likelihood that stock
18 | purchases "pursuant to the DRIP" could just as easily have been made on the open
19 | market and *not* traceable to *any* registration statement, much less the ones alleged in
20 | the CAC.  In sum, the improper Goldberg Declaration fails to cure plaintiffs'
21 | defective pleading, and only emphasizes plaintiffs' lack of standing.  *See also*
22 | KPMG's Evidentiary Objections to Goldberg Declaration (filed concurrently
23 | herewith).

24 |

---

25 | [10] The Goldberg declaration states that Exhibit 4 "is a true and correct copy of a
summarization of named plaintiffs' purchases of SouthWest Water Company's
26 | common stock pursuant to the Company's Dividend Reinvestment Plan (the
"DRIP") and respective registration statements."  Goldberg Decl. ¶5. This statement
27 | is plainly not based on personal knowledge, is pure hearsay and should be
28 | disregarded.

## 2. Plaintiffs' 2005 Acquisitions Cannot Be Maintained As a §11 Claim

Moreover, plaintiffs' lack of standing is further emphasized by simple mathematics relating to their alleged purchases in 2005: the number of shares purchased by DRIP participants in that year exceeds by nearly 300,000 the number of shares that were registered by the 2005 S-3/A. Specifically, only 500,000 shares were registered by the 2005 S-3/A (*see* KMPG RJN, Ex. A at p. 4 of 39; see also CAC ¶ 71), whereas, "according to the 2005 10-K [at F-5], the Company issued, in or about 2005, 796,000 shares pursuant to the Plan . . . ."[11] CAC ¶ 92. As a consequence, *it would have been mathematically impossible for the Securities Act Plaintiffs to have purchased 796,000 shares through the DRIP in 2005 pursuant to the 2005 S-3/A*, and their attempt to trace all of their alleged purchases to the 2005 S-3/A is therefore similarly impossible.[12] It is clear that the 296,000 excess shares could not have been acquired by the DRIP between January 1, 2005, and April 4, 2005, when the 2005 registration statement was filed —the CAC alleges that, during that period, "the Company . . . received proceeds from 'dividend reinvestment, employee stock purchase and stock option plans' of $202,000." CAC ¶ 92. Based on SWC's trading price during that period, proceeds of $202,000 would have come from the sale of only 19,727 shares at best, thereby leaving 276,273 shares unaccounted for.[13] Moreover, any purchase made prior to the April 4, 2005, registration statement is time-barred under any analysis for reasons

---

[11] Thus, a discrepancy of 296,000 shares exists between the number of shares that were registered and the sold to the DRIP in 2005. This difference can only be explained by the fact that *the DRIP must have collected a pool of stock from sources other than the 2005 S-3/A.*

[12] The "post-effective amendments" do not purport to register additional shares, but rather only maintain the registration and continuous offering of previously-registered shares. Thus, they do not and cannot create a new source of shares to explain the apparent shortfall during 2005.

[13] The lowest price during this time period was $10.24 per share. *See* KPMG's Supplemental Request for Judicial Notice, Exh. "O".

1   previously discussed.  It is of no help to plaintiffs in trying to satisfy the tracing

2   requirement by pointing to stale registration statements.

3        The terms of the DRIP Plan also make clear that the 2005 DRIP acquisitions

4   must have come from sources in addition to the 2005 registration statement.  The

5   DRIP Plan expressly permitted the DRIP to acquire SWC shares from virtually any

6   source, including open market purchases.  Thus, the mere fact that the Securities

7   Act Plaintiffs allegedly participated in the DRIP does not mean that their purchases

8   were necessarily made pursuant to any particular registration statement or any

9   registration statement at all – or that they can trace their alleged purchases to any

10  particular registration statement, much less one within any applicable period of

11  repose.

12       Simply put, the significant discrepancy between the number of shares

13  registered and sold to the DRIP in 2005 can only be explained by the indisputable

14  fact that the Securities Act Plaintiffs must have acquired shares other than the

15  500,000 shares registered by the 2005 Form S-3/A.  This shortcoming is fatal to

16  plaintiffs' standing to assert their §11 claim.

17  **D.    THE §11 CLAIM AGAINST KPMG FAILS TO PLEAD AN**

18  **      ACTIONABLE MISSTATEMENT OR OMISSION**

19       KPMG's motion also demonstrated that plaintiffs failed to state a claim under

20  § 11 by failing to plead the essential element of "falsity" with requisite

21  contemporaneous factual allegations and not, as plaintiffs do, through hindsight

22  pleading.  As shown below, the mere allegation of a restatement is insufficient to

23  plead contemporaneous falsity for §11 purposes, particularly where, as here, the §11

24  claim is premised on an auditor's statements of opinion involving matters of

25  judgment[14] *and the restatement represents a decision subsequently made by the*

26  _____

27  [14] Auditors undquestionably exercise judgment in rendering an opinion.  *E.g.,*
    *Mishkin v. Peat, Marwick, Mitchell & Co.*, 744 F. Supp. 531, 538 (S.D.N.Y. 1990)

28  ("An auditor who undertakes to examine the books and audit the accounts of a client

1  *company and its new auditors*.  Management's post-hoc, judgment-based

2  determinations – in consultation with a successor auditor – regarding certain

3  accounting treatments are not sufficient to sustain a claim that KPMG's *prior*

4  opinions regarding management's *prior* accounting treatments were false, let alone

5  unreasonable when made or issued in bad faith.  *Zirkin v. Quanta Capital Holdings*

6  *Ltd.*, 2009 U.S. Dist. LEXIS 4667, *29 (S.D.N.Y. Jan. 22, 2009); *In re CIT Group,*

7  *Inc. Sec. Litig.*, 349 F. Supp. 2d 685, 690-91 & n.6 (S.D.N.Y. 2004).

8       The failure to meet this fundamental pleading requirement renders the CAC

9  legally insufficient under both Rule 8(a) and Rule 9(b).  *See Yu v. State Street Corp.*,

10  2010 U.S. Dist. LEXIS 17147, *21-*22 (S.D.N.Y. Feb. 25, 2010) ("the accuracy of

11  offering documents must be assessed in light of information available at the time they

12  were published") (citing, *inter alia*, *Ashcroft v Iqbal*, 129 S.Ct. 1937, 1950 (2009), and

13  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Accordingly, the CAC does

14  not even satisfy Rule 8(a), much less the heightened pleading requirements of Rule

15  9(b), and therefore should be dismissed.

16       **1.**    **The Heightened Pleading Requirements of Rule 9(b) Apply**

17       Plaintiffs fail in their attempt to lower the bar for themselves by insisting that

18  they are exempt from the heightened pleading requirements of FED. RULE CIV. P.

19  9(b).  As demonstrated in KPMG's motion, the CAC unquestionably sounds in

20  fraud.  *See* KPMG Mot. at 18-20; *see also*, CAC ¶¶ 13, 17, 100, 187, 189, 207, Prayer

21  does not guarantee the correctness of the accounts. He does undertake to use skill

22  and due professional care and to exercise good faith and to observe generally

23  accepted auditing standards and professional guidelines, with the appropriate

24  reasonable, honest judgment that a reasonably skillful and prudent auditor would use

25  under the same or similar circumstances.  He is not responsible for mere error of

26  judgment. Reasonable adherence to the standards is a matter calling for application

27  of experience, skill and the exercise of independent judgment.  The standards

28  concern themselves not only with the auditor's professional qualities but also pro-

vide that judgment may be exercised by him in the performance of his examination

and in his report.  Deviation from standards does not perforce thereof spell

negligence in an audit, nor are innocent blunders culpable fault.").

¶ (b).  Even the Opposition asserts that KPMG issued untrue opinions knowing such opinions were *subjectively false*.  *See* Opp. at 15 n.14.  By so doing, plaintiffs clearly seek to maintain allegations that would purport to demonstrate that KPMG possessed a fraudulent state of mind.  Since plaintiffs have clearly attempted to draft allegations sounding in fraud, the CAC must therefore satisfy Rule 9(b)'s stringent pleading requirements as shown in KPMG's motion.

Plaintiffs also fail to escape the overwhelming weight of authority – including in the specific context of § 11 claims – holding that the mere inclusion of a disclaimer is not sufficient to avoid Rule 9(b)'s particularity requirements.  *See* KPMG Mot. at 19; *see also Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006); *In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1405 n.2 (9th Cir. 1996), *cert. denied sub nom., Anderson v. Clow*, 520 U.S. 1103 (1997); *In re Axis Capital Holdings Ltd.*, 456 F. Supp. 2d 576, 598 (S.D.N.Y. 2006); *In re Stratosphere Corp. Sec. Litig.,* 1 F. Supp. 2d 1096, 1104 (D. Nev. 1998). Accordingly, plaintiffs' self-serving disavowals of fraud are similarly insufficient and the CAC must be pled with particularity.

### 2.   Plaintiffs' Allegations Fail To Satisfy Either Rule 8(a) or 9(b)

#### a.   The CAC Fails to Demonstrate That Any Statement Or Opinion Made By KPMG Was Subjectively False When Made

Plaintiffs do not – because they cannot – identify any allegations of *contemporaneous* facts in the CAC that would support a finding that, *at the time that* KPMG conducted its audits and issued its opinions, KPMG did not actually believe those opinions, or that there was no basis for those opinions.  Plaintiffs do not dispute that the challenged statements contained in KPMG's audit opinions and reports on internal controls (as well as the reports themselves) involved matters of opinion, and the alleged GAAP violations upon which plaintiffs' §11 claim against KPMG is based concern matters involving estimates and/or probabilities that required substantial judgment concerning the application of accounting principles.

1  *See* CAC ¶¶ 40, 136, 138-40, 142-47, 149-51.  As previously demonstrated, such

2  statements are only actionable under the securities laws if plaintiff can allege that

3  they were both objectively and subjectively false when made.   The lack of such

4  allegations is fatal to their claim.  *See In re MobileMedia Sec. Litig.*, 28 F. Supp. 2d

5  901, 924 (D.N.J. 1998)  ("Section 11 and Section 12(a)(2) claims must allege

6  material misrepresentations or omissions based upon the facts as they existed at the

7  time of the offering"); *see also Panther Partners, Inc. v. Ikanos Communs., Inc.*,

8  538 F. Supp. 2d 662, 673 (S.D.N.Y. 2008) ("'backwards' pleading – an attempt to

9  allege liability for disclosures not made because the material fact was unknowable

10  or had not even occurred as of the critical date" – fails to state a claim under 1933

11  Act).  *Cf. also CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP,* 562 F. Supp. 2d

12  511, 564 (S.D.N.Y. 2008) ("Statements of opinion may be materially false and

13  misleading if the opinion is both objectively and subjectively false") (citations

14  omitted); *In re Textainer Partnership Sec. Litig.*, 2005 U.S. Dist. LEXIS 40974,

15  *29, Fed. Sec. L. Rep. (CCH) P93,634 (N.D. Cal. 2005) ("All of the cases the Court

16  has located that have addressed the issue since *Virginia Bankshares* have concluded

17  that a defendant may be liable for statements of opinion only if (1) the speaker did

18  not actually hold the opinion, and (2) the opinion was objectively false or

19  misleading") (citations omitted); *see also In re New Century*, 588 F. Supp. 2d 1206,

20  1233 (C.D. Cal. 2008); *Reiger v. Altris Software, Inc.*, 1999 U.S. Dist. LEXIS 7949,

21  *16 (S.D. Cal. Apr. 30, 1999); *Edward J. Goodman Life Income Trust*, 595 F. Supp.

22  2d at 1284.[15]

---

24  [15] Plaintiffs contend that the "objective-subjective" standard is somehow

25  inapplicable to auditor opinions.  Plaintiffs rely entirely for this proposition on a
single district court opinion in the *Washington Mutual* litigation.  *See* Opp. at 13-14

26  (quoting *In re Washington Mut., Inc. Sec., Deriv. & ERISA Litig.*, 2009 U.S. Dist.

27  LEXIS 99727, Fed. Sec. L. Rep. (CCH) P95,503 (W.D. Wash. Oct. 27, 2009 ("*Wa
Mu II*")).  Yet even plaintiffs' authority recognizes that a restatement is insufficient

28  by itself to satisfy §11's requirement to plead that "defendants believed or knew, at

1    The same deficient hindsight pleading dooms plaintiffs' claim with respect to

2   KPMG's internal control opinions.  *See* Opp. at 18.  As KPMG previously

3   demonstrated, the CAC pleads no specific, contemporaneous facts to support

4   plaintiffs' conclusory allegation that KPMG "knew or should have known" of

5   supposed internal control deficiencies during 2005, 2006 or 2007.  CAC ¶ 185.  In

6   response, plaintiffs merely reference these same conclusions and assert that the

7   restatement alone is sufficient to state a claim as to the internal control reports.

8   Opp. at 18.  Once again, plaintiffs cannot satisfy their burden of pleading falsity by

9   hindsight: the last opinion that KPMG issued was for 2007, and the fact that SWC

10  determined *during 2008* that its internal controls *in 2008* were inadequate does not

11  constitute a determination that the internal controls that existed in prior years were

12  inadequate in those prior years.  Thus, the CAC fails for its absence of

13  contemporaneous pleading of falsity with regard to KPMG's internal control

14  opinions.

15    Ultimately, the only "facts" alleged in support of the § 11 claim against

16  KPMG involve SWC's judgment-based decision during 2008-2009 to restate prior

17  years' financial statements, and their determination during 2008 that their internal

18  controls were deficient during 2008.  Such facts do not speak to the veracity of the

19  opinions of KPMG that were published in 2005-2007, at the time that the original

20  financial statements were issued by SWC.  Rather, all that plaintiffs can and do say

21

22  the time the Merger Registration Statement was signed, that Brooks' financial

23  statements contained material misstatements or otherwise failed to comport with

    GAAP."  *In re Brooks Automation, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 88045,

24  *49, Fed. S. L. Rep. (CCH) P94,567 (D. Mass. Nov. 6, 2007) (dismissing claim

25  against auditor).  Contrary to plaintiffs' argument, numerous decisions have applied

    the "opinion" standard to claims against auditors in securities litigation.  *See, e.g.*,

26  *Wa Mu I*, 259 F.R.D. at 506; *Edward J. Goodman Life Income Trust*, 595 F. Supp.

27  2d 1253, 1281-82 (M.D. Fla. 2009) (applying objective-subjective falsity standard to

    "unqualified" audit opinion); *Kelley v. Rambus, Inc.,* 2008 U.S. Dist. LEXIS

28  100319, *41, Fed. Sec. L. Rep. (CCH) P95,019 (N.D. Cal. Dec. 9, 2008).

is that, because *SWC* later decided to restate prior years' financial statements, KPMG's audit and internal control opinions regarding those prior financials *must have been wrong*.  That is classic, impermissible, *hindsight pleading,* insufficient under the federal securities laws as a matter of law.

> b.  A Restatement Does Not Necessarily Mean That Plaintiffs Have Satisfactorily Alleged That KPMG's Opinion Was False When Made

Federal courts increasingly have rejected plaintiffs' arguments here in holding that a decision to restate is *not* sufficient to plead falsity or materiality under the federal securities laws, particularly against the auditor.  *See In re Metawave Communs. Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1079 (W.D. Wash. 2003) ("Plaintiffs contend that Metawave's restatement is an admission that it issued false and misleading financial reports in violation of GAAP and its own internal accounting policies . . .  Plaintiffs' contention that [the company's] restatement is an admission that Defendants issued false and misleading financial reports is without merit."); *J&R Marketing, SEP v. General Motors Corp.*, 2007 U.S. Dist. LEXIS 13227, at *38-39 (E.D. Mich. Febr. 27, 2007) ("Plaintiffs make a gross misrepresentation of their own when they assert '[a] restatement of financial results raises a presumption of both falsity and materiality for pleading purposes.'"  Concluding that, "[w]hile these changes may have been material from an accounting perspective, Plaintiffs' brief is **bereft of any legal authority to support its attempted alchemy of transforming an accounting standard into a principle of federal securities  law,** so this argument is without merit.") (emphasis added)*, aff'd*, 519 F.3d 552 (6th Cir. 2008).

It bears emphasis that SWC's decision to restate was made *after* KPMG's engagement as SWC's auditor ended, and *after* SWC decided to engage PWC as its new outside auditor.  Indeed, plaintiffs misstate the facts when they assert that KPMG consented to, the restatement.  Opp. at 3.  Plaintiffs grossly mischaracterize

KPMG's April 1, 2008, letter to SWC, which simply acknowledged (consistent with SEC disclosure rules) the change in outside auditors and did not – because it *could not* – express any opinion or view whatsoever regarding a restatement *that had not yet happened and was only first announced by SWC seven months later.* CAC ¶ 94; Goldberg Decl., Exh. 2.

Plaintiffs' sole authority for the proposition that the restatement may somehow be imputed to KPMG stands for no such proposition and is wholly distinguishable. *In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077, 1084 (N.D. Cal. 2001), *cited in* Opp. at 19. In *Cylink,* the court found allegations against a corporate officer were sufficiently stated since the complaint "describe[d] in detail five example transactions for which revenue was allegedly recognized prematurely under GAAP," in addition to a restatement. *Cylink* is readily distinguishable since it did not involve an outside auditor, much less one that had not rendered an opinion on the restated financial statements. *See, e.g., In re Atlas Mining Sec. Litig.*, 670 F. Supp. 2d 1128, 1133 (D. Id. 2009) (dismissing securities fraud claim against auditor despite restatement; court rejected plaintiffs' argument that "there is no doubt whatsoever that a restatement of audited financial statements constitutes an admission of falsity and materiality," and expressly distinguished *Cylink*: "That case, however, is not on point as it dealt with multiple accounting misstatements by the company's senior officers and not, as here, with an outside auditor's review of financial statements"); *Id*. at 1134 (noting, in context of scienter pleading requirement: "CBN was employed as an outside auditor and therefore the pleading standard is 'especially stringent.' [citations omitted]  One reason for this has been stated as follows: 'outsider auditors have more limited information than, for example, the committee members who oversee the audit. . . [and] [f]urther an auditor's job requires complex and subjective professional judgments that courts are not ideally positioned to second guess'"). Because SWC's restatement is the only "fact" alleged by plaintiffs that purports to satisfy the pleading requirements of

23

1    either Rule 8(a) or 9(b), and that "fact" is insufficient here, KPMG's motion should

2    be granted for this reason as well.

3                    **III.    <u>CONCLUSION</u>**

4            KPMG respectfully renews its request that the Court dismiss Claim II against

5    KPMG on the grounds that plaintiffs' claim is time-barred under § 13 of the

6    Securities Act or, in the alternative, for failure to state a claim against KPMG

7    pursuant to FED. R. CIV. P. 8(a) and 12(b)(6), failure to plead fraud with

8    particularity pursuant to FED. R. CIV. P. 9(b), and failure to plead legal standing

9    under the Securities Act pursuant to FED. R. CIV. P. 12(b)(1) and (6).

10   Dated: April 15, 2010                    ROBERT A. MEYER
                                              SAUL D. BRENNER
11                                            LOEB & LOEB LLP

12                                            By: /s/ Robert A. Meyer _____
13                                               Robert A. Meyer
                                                 Attorneys for Defendant
14                                               KPMG LLP