1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT
10         CENTRAL DISTRICT OF CALIFORNIA

11 ROBERT G. PERRIN and DIANE L.)    2:08-cv-7844-JHN-AGRx
   PERRIN, Individually and on Behalf of)
   All Others Similarly Situated,    )
12                                     )
13              Plaintiffs,            )   **OMNIBUS ORDER GRANTING**
                                       )   **MOTIONS TO DISMISS AND**
14 vs.                                 )   **DENYING MOTION FOR**
                                       )   **PARTIAL SUMMARY JUDGMENT**
15                                     )
16 SOUTHWEST WATER COMPANY, )
   ANTON C. GARNIER, MARK A.    )
17 SWATEK, CHERYL L. CLARY,      )
   PETER J. MOERBEEK and KPMG )
18 LLP,                                )
                                       )
19                                     )
              Defendants.              )
20                                     )
                                       )
21 _____)

22        This matter is before the Court on Defendants SouthWest Water

23 Company's ("SWWC" or "the Company"), Anton C. Garnier's, Mark A.

24 Swatek's, Cheryl L. Clary's, Peter J. Moerbeek's ("the individual defendants")

25 (collectively "Southwest Defendants") and KPMG's (Collectively "Defendants")

26 Motions to Dismiss the Consolidated Amended Class Action Securities

27 Complaint ("CAC") (docket nos. 38 & 43), and defendant SWWC's Motion for

28 Partial Summary Judgment (docket no. 34). The Court has considered the

   moving, opposition, and reply documents submitted in connection with these

Motions and deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); Local Rule 7-15.  Accordingly, the hearing set for June 21, 2010 was taken off calendar.  For the reasons set forth below, the Motion for Partial Summary Judgment is DENIED, the Motion to Dismiss Claim II is GRANTED, and the Motion to Dismiss the Amended Complaint is GRANTED. The Court also hereby GRANTS KPMG's unopposed Motion for Joinder in SWWC's Motions.  (Docket no. 45.)

## I.  EVIDENTIARY RULINGS

Defendants request that the Court take judicial notice of, *inter alia*, a variety of SEC filings, publicly filed documents from other federal court proceedings, accounting rules, analyst reports, and select Sarbanes-Oxley certifications ("SOX Certifications").  These items are either (a) publicly filed records, (b) information, the accuracy of which cannot be reasonably questioned, or (c) documents on which the allegations in Plaintiff's CAC necessarily rely. Accordingly, the Court GRANTS Defendants' requests for judicial notice (docket nos. 42, 64).  Further evidentiary objections either relate to evidence not necessary for purposes of addressing these motions, or shall be addressed in the discussion below.

## II.  FACTS AND LEGAL PROCEEDINGS

The following undisputed facts are gleaned from  Plaintiffs' CAC, which was filed after a consolidation of several related matters pending before the Court. This is a putative class action on behalf of all persons or entities who purchased or otherwise acquired the common stock of SWWC between May 10, 2005 and November 10, 2008, inclusive (the "Class Period").  (CAC ¶ 1.)  Distilled to its essence, the CAC alleges that SWWC's July 9, 2009 restatement ("the Restatement") of its prior years' financial statements rendered those prior

financial statements "false and misleading" when issued, and by extension, that SWWC's auditor, KPMG, issued audit opinions and reports on SWC's internal controls that were "false and misleading" when issued.  The Lead Plaintiffs in this action are Richard J. Hemmer, Paul M. Zatulove, Gus Karozos, and Lionel Patenaude ("the Hemmer Group").  These individuals "suffered damages as a result of their purchases or other acquisitions of the common stock of SouthWest as detailed in their Certificates of Named Plaintiffs previously filed with the Court." (CAC ¶ 25.)  Plaintiffs Nelson W. Bush, Joseph Yeatte and Thomas Moshier (the "Securities Act Plaintiffs") purchased stock pursuant to the Company's Dividend Reinvestment and Stock Purchase ("DRIP") Plan, as amended (the "Plan").  (CAC ¶ 26.)  Finally, Plaintiff Howard Fosman "suffered damages as a result of his purchases or other acquisitions of the common stock of SouthWest[.]"  This Order shall hereinafter refer to "Plaintiffs" collectively.

SWWC is a company that provides water, wastewater treatment, and public works in nine states.  SWWC and its subsidiaries provide a range of services including water production, treatment and distribution, wastewater collection and treatment, utility billing and collection, utility infrastructure construction management, and public works services.  (CAC ¶ 28.)  KPMG was SWWC's auditor from approximately 1993 until it was replaced after the December 31, 2007 audit.  (CAC ¶ 35.)  Defendant Anton Garnier was the CEO and Chairman of SWWC's Board of Directors until his resignation on May 15, 2006. (CAC ¶ 29.)  Defendant Mark Swatek became the CEO when Garnier resigned in 2006 and remains in that position today.  (CAC ¶ 30.)  Defendant Cheryl Clary, a certified public accountant, joined SWWC in October 2004 as Chief Financial Officer, a position she held until May 2009, when she became Senior Vice President of Finance.  (CAC ¶ 31.)  Defendant Moerbeek, also a certified public accountant, was SWWC's President and Chief Operating Officer until he resigned in June 2006.  (CAC ¶ 32.)

On November 10, 2008, SWWC announced that its financial statements for 2005, 2006, 2007, and the first two quarters of 2008 would be reaudited by PricewaterhouseCoopers LLP ("PwC") and restated.  (CAC ¶¶ 4, 5, 405–06.) The Company acknowledged that it had committed widespread accounting errors and made "inappropriate accounting decisions" over the previous years, which had inflated the Company's financial health.  (CAC ¶¶ 3, 171, 406.)  The CAC alleges that Defendants 1) capitalized costs that should have been expensed; 2) failed to eliminate intercompany profits; 3) under-appreciated assets; 4) recognized revenue on the cash basis instead of the accrual basis; 5) failed to account for existing liabilities; and 6) improperly accounted for acquisitions, among other violations of GAAP.  (CAC ¶¶ 2, 127-61, 239.)  The Company also revealed that its financial internal controls system had suffered from fifteen material weaknesses during the Class Period including its failure to "maintain an environment that consistently emphasized strict adherence to generally accepted accounting principles."  (CAC ¶¶ 3, 171.6.) The fifteen material weaknesses are summarized as follows:

1. Did not maintain an effective control environment because of the following material weaknesses:

- Did not maintain an environment that consistently emphasized strict adherence to GAAP;

- Did not maintain sufficient complement of resources with an appropriate level of accounting knowledge;

- Did not maintain complete and accurate business documentation;

2. Did not maintain effective monitoring of controls over areas including period end financial reporting process, acquisition accounting, goodwill, regulatory accounting, stock-based compensation, property, plant and equipment, estimates and accruals;

3. Did not maintain effective controls over risk assessments;

4. Did not maintain and communicate sufficient and consistent accounting policies with respect to generally accepted accounting principles;

5. Did not maintain effective controls over the recording of journal entries both recurring and non-recurring;

6. Did not maintain effective controls over the completeness and accuracy of key spreadsheets and system-generated reports;

7. Did not maintain effective controls over the application of GAAP commensurate with financial reporting requirements;

8. Did not maintain effective controls over the completeness and accuracy of our accounting for acquisitions;

9. Did not maintain effective controls over the completeness, accuracy and valuation of our accounting estimates related to our claims process associated with medical, automobile and workers' compensation self-insurance;

10. Did not maintain effective controls over the completeness and accuracy of our accounting for the impairment of goodwill.

11. Did not maintain effective controls over the completeness and accuracy of our accounting for regulated entities;

12. Did not maintain effective controls over the accuracy and valuation of stock-based compensation;

13. Did not maintain effective controls over the completeness and accuracy of property, plant and equipment and related depreciation expense;

14. Did not maintain effective controls over the completeness and accuracy of unbilled utilities revenue;

15. Did not maintain effective controls to ensure the completeness of the recording of accounts payable and accrued liabilities, operating expenses and property, plant and equipment additions on a timely basis.

(CAC ¶ 171.)

As a result of the restatement, revenue was adjusted downward for the years 2004, 2005, 2006, and 2007.  (CAC ¶ 55.)  Operating income, net income, and income from continuing operations were also cut for the years 2004, 2005, and 2006. (*Id.*)  Retained earnings for 2005, 2006, and 2007 were each cut: from $22.2 million to $5 million for 2005, from $27 million to $6.3 million for 2006, and from $13.3 million to $2.2 million for 2007.  (CAC ¶¶ 62–64.)  Net cash for 2006 and 2007 were reduced to 21% and 26% of their previously reported levels, respectively.  (CAC ¶¶ 65–66.)

1

*Allegations*

2      On October 15, 2009, after several cases against Defendants were

3 consolidated, Plaintiffs filed the CAC.  The CAC pleads Claims for Relief

4 against: 1) The Southwest Defendants for violation of Section 11 of the Securities

5 Act of 1933 ("the Securities Act"), 15 U.S.C. § 77k; 2) KPMG for violations of

6 Section 11(a)(4) of the Securities Act 15 U.S.C. § 77k(a)(4); 3) The individual

7 defendants for violations of Section 15 of the Securities Act, 15 U.S.C. §77o.

8 The CAC also alleges that 1) the Southwest Defendants violated Section 10(b)

9 and Rule 10b-5 of the Securities Exchange Act of 1934, 15 U.S.C. § 78 *et seq.*

10 ("the Exchange Act"); 2) the Individual Defendants violated Section 20(a) of the

11 Exchange Act; 3) Violations of Section 20A of the Exchange Act on Behalf of

12 Plaintiff Fosman Against Defendants Garnier and Moerbeek.

13                    *Current Motions Pending Before the Court*

14      On January 12, 2010, the Southwest Defendants filed a Motion for Partial

15 Summary Judgment as to Claims I and III of the CAC (docket no. 34) and a

16 Motion to Dismiss the CAC in its entirety (docket no. 43).  KPMG filed a Motion

17 to Dismiss Claim II (docket no. 38).  On January 22, 2010, KPMG filed an

18 unopposed Motion for Joinder in the Southwest Defendants' Motion to Dismiss.

19 (Docket no. 45.)  Opposition and reply papers have since been filed.

20

21                    **III.  SECTION 11 CLAIMS**

22      Section 11 of the 1933 Securities Act creates a private remedy for "any

23 person acquiring" a security for which "any part of the registration statement,

24 when such part became effective, contained an untrue statement of a material fact

25 or omitted to state a material fact required to be stated therein or necessary to

26 make the statements therein not misleading." 15 U.S.C. § 77k(a).  "To prevail in

27 such an action, a plaintiff must prove (1) that the registration statement contained

28 an omission or misrepresentation, and (2) that the omission or misrepresentation

6

1    was material, that is, it would have misled a reasonable investor about the nature

2    of his or her investment." *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1161

3    (9th Cir. 2009) (citation and internal quotation marks omitted).

4                                *The Registration Statements*

5            Here, Plaintiffs' Section 11 allegations stem from "the Company's false

6    and misleading registration statements or prospectuses filed on Form S-3/A

7    [Amended Registration Statement] and S-3 [Registration Statement] on April 5,

8    2005 and April 19, 2006, respectively (and effective and/or amended for purposes

9    of this action on March 16, 2006, April 19, 2006, March 16, 2007, and March 31,

10   2008), and issued in connection with the Company's [DRIP Plan.]"  (CAC ¶ 1.)

11   The DRIP permits SWWC shareholders to elect to use a dividend declared by

12   SWWC to purchase SWWC common stock, sometimes at a discounted price,

13   rather than receiving the dividend in cash.  On April 5, 2005, the Company filed

14   on Form S-3/A "an amended registration statement (Registration No.

15   333-121426, dated April 4, 2005) for the issuance of 500,000 shares of the

16   common stock[.]" (CAC ¶ 71.)  On April 19, 2006, "the Company filed on Form

17   S-3 a registration statement for 1,462,514 shares, priced at $15.63 per share, to be

18   issued pursuant to the DRIP (Registration No. 333-133399)[.]" (CAC ¶ 81.)

19           The only allegations leveled against KPMG are for violations of Section 11

20   based upon KPMG's audit opinions and related reports on internal controls that

21   were included by SWWC in its SEC Form 10-K filings for 2005, 2006, and 2007,

22   and incorporated by reference into SWWC's registration statements (as

23   amended).  KPMG challenges the CAC on the following grounds: 1) the claim

24   against KPMG violates the three-year statute of repose applicable to claims

25   brought under Section 11; 2) the CAC does not allege with the necessary

26   specificity, among other elements, that KPMG made materially false statements

27   in registration statements of SWC; 3) the individual plaintiffs have failed to allege

28   sufficient facts to establish standing.  The SouthWest defendants challenge the

                                            7

Section 11 cause of action in a Motion for Partial Summary Judgment and in a Motion to Dismiss.

## A. Statute of Repose

Section 13 of the Securities Act establishes a statute of repose for Section 11 claims. 15 U.S.C. § 77m. The statute provides: "[i]n no event shall any such action be brought to enforce a liability created under section [11] . . . more than three years after the security was bona fide offered to the public[.]" *Id.* KPMG argues that the Section 11 cause of action was not asserted against them until the CAC was filed on October 15, 2009. Thus, the statute of repose began to run on the effective dates of the two registration statements at issue—April 5, 2005 and April 19, 2006—causing the clock to run out on or before April 5, 2008 and April 19, 2009, respectively. Plaintiffs counter that the Section 11 claim is timely because: (1) Plaintiffs bring their claim pursuant to the registration statements' post-effective amendments; and (2) Plaintiffs' Complaint relates back under Rule 15(c)(1)(B) to the two initially filed class action complaints that named KPMG.

### I. Whether Registration Statements Issued During the Class Period are "New" Offerings

Plaintiffs argue that the DRIPs are shelf registration statements. A court recently described the significance of shelf registration as follows:

> [I]n a shelf registration, the issuer files a registration with the SEC and then either (1) keeps this registration "on the shelf" by waiting until a later date to go effective; or (2) completes one offering of less than the authorized securities on the effective date and puts the registration statement on the shelf for further issuances at later dates. The delayed, continuous, or serial offerings may continue until they reach the total issuance authorized by the shelf registration.

*In re Countrywide Financial Corp. Securities Litigation*, 588 F. Supp. 2d 1132, 1164 (C.D. Cal. 2008). "[W]hen the registration is a 'shelf registration' under SEC Rule 415, the filing of a 'post-effective amendment shall be deemed to be a new registration statement relating to the securities offered therein[.]'" *In re*

1    *Metropolitan Securities Litigation*, 532 F. Supp. 2d 1260, 1284 (E.D. Wash.

2    2007) (quoting 17 C.F.R. § 229.512(a)(2)(1990)).  "Without § 229.512(a)(2), this

3    ongoing reporting requirement would be meaningless, since purchasers who

4    acquired securities in a shelf offering more than three years after the initial

5    registration would find their § 11 claims barred by the time limits of § 13, even if

6    they bought the securities in reliance on a fraudulent, post-effective amendment to

7    the registration."  *Finkel v. Stratton Corp.*, 962 F.2d 169, 174 (2d Cir. 1992).

8         Plaintiffs have submitted a declaration stating that the Securities Act

9    Plaintiffs purchased some of their securities in 2007, after the 2006 10-K

10   amendment, thereby acquiring their securities pursuant to those registration

11   statements and bringing their 2009 cause of action within a three year repose

12   period that would end in 2010.  KPMG challenges this declaration on the ground

13   it is a hearsay summary signed by Plaintiffs' attorney rather than a sworn

14   declaration pursuant to the Securities Acts' requirement that "[e]ach plaintiff

15   seeking to serve as a representative party" file a "sworn certification, which shall

16   be personally signed by such plaintiff" with the complaint that "sets forth all of

17   the transactions of the plaintiff in the security that is the subject of the complaint."

18   15 U.S.C. § 77z-1(a)(2)(A).

19        This argument is a non-starter.  The CAC alleges that the Securities Act

20   Plaintiffs represent "all members of the Class who purchased or otherwise

21   acquired SouthWest common stock issued pursuant to, or traceable to, the S-3/A

22   and S-3 registration statements, and post-effective amendments thereto, including,

23   but not limited to, the 2005, 2006, and 2007 10-Ks[.]" (CAC ¶ 196.)  Each of the

24   Securities Plaintiffs signed a sworn certification, attached to the CAC, that lists

25   securities purchased after the 2006 10-k.  Indeed, KPMG in its reply appears to

26   shift gears and merely asserts that *"a vast majority* of their purchases are

27   untimely[,]" and that the Securities Plaintiffs "are predicating their § 11 claim *in*

28

1    *large part* on purchases made pursuant to registration statements that became

2    effective outside the statute of repose." (Reply 1, 5, emphasis added.)

3         So, while Securities Plaintiffs are not time-barred by the limitations of the

4    Securities Act, they are only permitted to go forward in this litigation pursuant to

5    shares purchased within the repose period prior to the action filed against KPMG

6    on October 15, 2009.[1]

7    **B. Standing**

8         KPMG and the Southwest defendants advance similar arguments in an

9    attempt to dispose of the Section 11 cause of action on standing grounds.  KPMG

10   argues that Lead Plaintiffs have failed to allege explicitly that they purchased a

11   security issued pursuant to, or traceable to, the specific registration statement

12   containing an alleged material false statement or omission, thereby arguing that

13   the Complaint should be dismissed for failure to state a claim.  The SouthWest

14   defendants present a more reticulated argument, based on a similar assertion, in

15   their Motion for Partial Summary Judgment: "while on April 5, 2005 and April

16   19, 2006, SWWC filed registration statements for certain shares associated with

17   the DRIP Plan . . . , such shares were placed in the general reserve pool (together

18   with shares registered pursuant to other registration statements) and the actual

19   shares purchased by Plaintiffs pursuant to the DRIP Plan are not necessarily those

20   shares that were registered pursuant to the DRIP Registration Statements." (Mot.

21   2.)  SouthWest Defendants conclude that "[s]ince Plaintiffs cannot trace their

22

23   _____

24   [1]The Court rejects Plaintiffs' "relation back" argument as the only related actions filed
     against KPMG prior to October of 2009 were filed by different plaintiffs who were 1) not parties
25   in the CAC; and 2) sought to assert different claims that did not reference the registration statements
     upon which the current Section 11 claim is predicated.  *See, e.g.*, *David Harroch v. Southwest Water*
26   *Company et al.,* 2:08-cv-08088-FMC-AGR; *In re Syntex Corp. Securities Litigation*, 95 F.3d 922,
     935 (9th Cir. 1996) ("An amendment adding a party plaintiff relates back to the date of the original
27   pleading only when: 1) the original complaint gave the defendant adequate notice of the claims of
     the newly proposed plaintiff; 2) the relation back does not unfairly prejudice the defendant; and 3)
28   there is an identity of interests between the original and newly proposed plaintiff.")

1   SWWC stock to the DRIP Registration Statements, they do not have standing to

2   assert Section 11 claims." (*Id.*)

3   **1. Southwest Defendants's Motion for Summary Judgment**

4   *a. Legal Standard*

5         Summary judgment is appropriate if there is no genuine issue of material

6   fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

7   P. 56(c).  The moving party bears the initial responsibility of informing the court

8   of the basis of its motion and identifying those portions of "'pleadings,

9   depositions, answers to interrogatories, and admissions on file, together with the

10  affidavits, if any,' which it believes demonstrate the absence of a genuine issue of

11  material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91

12  L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)).  Where the nonmoving party

13  will have the burden of proof at trial, the movant can prevail merely by pointing

14  out that there is an absence of evidence to support the nonmoving party's case.

15  *See id.; see also Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099,

16  1106 (9th Cir. 2000) ("In order to carry its burden of production, the moving

17  party must either produce evidence negating an essential element of the

18  nonmoving party's claim or defense or show that the nonmoving party does not

19  have enough evidence of an essential element to carry its burden of persuasion at

20  trial.").  If the moving party meets its initial burden, the nonmoving party must

21  then set forth, by affidavit or as otherwise provided in Rule 56, "specific facts

22  showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Anderson v.*

23  *Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

24        The substantive law governing a claim determines whether a fact is

25  material.  *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630

26  (9th Cir. 1987); *see also Long v. County of Los Angeles,* 442 F.3d 1178, 1185 (9th

27  Cir. 2006) ("Material facts are those which may affect the outcome of the case.")

28  (internal citations omitted).  In judging evidence at the summary judgment stage,

1   the Court does not make credibility determinations or weigh conflicting evidence
2   and draws all reasonable inferences in the light most favorable to the nonmoving
3   party.  *T.W. Elec. Serv.*, 809 F.2d at 630–31; *see also Brookside Assocs. v. Rifkin*,
4   49 F.3d 490, 492–93 (9th Cir. 1995).  The evidence presented by the parties must
5   be admissible.  Fed. R. Civ. P. 56(e).  Mere disagreement or the bald assertion
6   that a genuine issue of material fact exists does not preclude the use of summary
7   judgment.  *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

8                           b. *CAC Allegations Regarding "Tracing"*

9           "[T]he pleading requirement [regarding traceability] is not elaborate.
10  Plaintiffs have not been required to explain how their shares can be traced;
11  general allegations that plaintiff purchased 'pursuant to' or traceable to false
12  registration statement have been held sufficient to state a claim."  *In re Global*
13  *Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 208 (S.D.N.Y. 2003) (citing
14  *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 285–286 (3d Cir.1992); *In re*
15  *Crazy Eddie Sec. Litig.*, 747 F. Supp. 850, 854–55 (E.D.N.Y. 1990); *In re AES*
16  *Corp. Sec. Litig.*, 825 F. Supp. 578, 592 (S.D.N.Y. 1993); *Neuberger v. Shapiro*,
17  Fed. Sec. L. Rep. 90, 261, 1998 WL 408877, at *2 (E.D. Pa. July 17, 1998)).
18  SouthWest Defendants are not able to direct the Court's attention to any authority
19  where summary judgment has been granted at the pleading stage of a Section 11
20  action.  *Cf. Persky v. Turley*, Nos. CIV 88-1830, CIV 88-2089, 1991 WL 327434,
21  at *7 (D. Ariz. Dec. 19, 1991) ("Before Plaintiffs will be able to recover under
22  section 11, Plaintiffs will have to trace their purchases of . . . stock to one of the
23  allegedly misleading registration statements.  At this [pre-discovery] juncture,
24  however, the Court cannot find that Plaintiffs can allege no facts showing that
25  Plaintiffs purchased their stock pursuant to one of the allegedly false registration
26  statements.").

27          Here, the CAC is replete with allegations that the relevant shares are
28  traceable to the misleading statements.  (*See* CAC ¶ 1 ("on behalf of  all persons

                                            12

1   or entities who acquired the common stock of SouthWest pursuant and/or

2   traceable to the Company's false and misleading registration statements  or

3   prospectuses filed on Form S-3/A and S-3 on April 5, 2005 and April 19, 2006,

4   respectively"); ¶ 26 ("Plaintiffs Nelson W. Bush, Joseph Yeatte and Thomas

5   Moshier, as evidenced by their Certificates of Named Plaintiffs (attached hereto),

6   purchased stock pursuant to the Company's Dividend Reinvestment and Stock

7   Purchase Plan, . . . issued pursuant or traceable to registration statements filed

8   and/or effective during the Class Period, and suffered damages"); ¶ 196 ("on

9   behalf of all members of the Class who purchased or otherwise acquired

10  SouthWest common stock issued pursuant to, or traceable to, the S-3/A and S-3

11  registration statements"); ¶ 207 ("on behalf of all members of the Class who

12  purchased or otherwise acquired securities pursuant to, or traceable to, the

13  Registration Statements, as amended or superceded on or after March 16, 2006").)

14         Because this matter is still in the pleading stage, SouthWest Defendants'

15  Motion for Partial Summary Judgment is hereby DENIED.  For the same reasons,

16  the Court will not dismiss the action pending against KPMG for lack of

17  Standing.[2]

18

19

20

21

22

23

24

25

26

27

28         [2]KPMG's arguments are similarly unavailing, but the Court, as discussed *supra*, will still
dismiss the complaint on KPMG's Motion.

## C. The Motions to Dismiss Section 11 Claims

### 1. Legal Standard

Rule 12(b)(6) permits a defendant to seek dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court must accept as true all material factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1229 (9th Cir. 2004). However, this tenet is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The Court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements. . ." *Id.* The Court, based on judicial experience and common-sense, must determine whether a complaint plausibly states a claim for relief. *Id.* at 1950. If the Court dismisses the complaint, it must decide whether to grant leave to amend. Denial of leave to amend is "improper unless it is clear that the complaint could not be saved by any amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc*., 416 F.3d 940, 946 (9th Cir. 2005).

### 2. Pleading Specificity

The heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA") do not apply to Section 11 claims, but plaintiffs are still required to allege their claims with particularity under Federal Rule of Civil Procedure 9(b) if their complaint "sounds in fraud." *Rubke*, 551 F.3d at 1161 (citation omitted). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

> To ascertain whether a complaint "sounds in fraud," the court must normally determine, after a close examination of the language and structure of the complaint, whether the complaint alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of a claim. Where . . . , however, a complaint employs the exact same factual allegations to allege violations of section 11 as it uses to allege fraudulent conduct under section 10(b) of the Exchange Act, we can assume that it sounds in fraud.

14

1   *Rubke*, 551 F.3d at 1161 (citations omitted).  Here, there can be little question that

2   the CAC sounds in fraud against the Southwest Defendants and against KPMG.

3   It is of no moment that Plaintiffs provide a disclaimer that the Section 11 claims

4   do not sound in fraud.  (CAC ¶¶ 197, 208.)  A court in the Northern District

5   articulated the following factors in determining whether an ostensible Section 11

6   claim sounds in fraud:

7   > [A]lthough plaintiffs separate allegations supporting their § 11 claims
>     from allegations supporting their § 10(b) claim, the § 11 allegations
8   > nevertheless reiterate the same alleged conduct and course of conduct
>     which underlie the § 10(b) claim. Further, as noted by defendants,
9   > plaintiffs allege that defendants engaged in "[]fraud" and a "fraudulent
>     [] scheme" resulting in misstated financial statements in the registration
10  > statement.  These same misstatements are alleged as violations in
>     plaintiffs' § 10(b) claim.  Although plaintiffs separate their § 11
11  > allegations from their § 10(b) claim, the added allegations primarily
>     assert additional purported misstatements in Exchange Act filings
12  > which are actionable under § 10(b) but not actionable under § 11.
>     Notably, the § 10(b) allegations incorporate all the allegations made in
13  > support of plaintiffs' Securities Act claims.

14  *In re Levi Strauss & Co. Securities Litigation*, 527 F. Supp. 2d 965, 979 (N.D.

15  Cal. 2007).  The CAC alleges knowing conduct on the part of KPMG, i.e. that

16  they "knew or should have known" of certain "inadequa[cies]" and "weaknesses

17  in internal controls" (*see* CAC ¶¶ 185–86) and "knowing[ly], recklessly or

18  negligently ignored" red flags (CAC ¶ 187).  Plaintiffs also made clear that they

19  incorporated the same facts for their Section 10 and Section 11 claims against the

20  SouthWest defendants.  (CAC ¶ 494.)  Therefore, Plaintiffs' Section 11 claims are

21  subject to the heightened pleading requirements of Rule 9.  Fraud allegations

22  must be accompanied by "the who, what, when, where, and how" of the

23  misconduct charged.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th

24  Cir. 2003).  "Allegations of non-fraudulent conduct need satisfy only the ordinary

25  notice pleading standards of Rule 8(a)." *In re Daou Systems, Inc*., 411 F.3d 1006,

26  1027 (9th Cir. 2005) (citations and internal quotation marks omitted).  In

27  addition, as discussed below, because KPMG's statements were opinions, claims

28  against them must also meet a heightened pleading requirement.

1          **3.  Allegations Against KPMG**

2          "[M]isleading opinions, not statements of fact, . . . can give rise to a claim

3    under section 11 only if the complaint alleges with particularity that the

4    statements were both objectively and subjectively false or misleading." *Rubke*,

5    551 F.3d at 1162.  Statements made by KPMG, as an auditor, were necessarily

6    matters of opinion.  It is not clear to this Court what statements Plaintiffs take

7    issue with, what opinions by KPMG were objectively and subjectively false and

8    misleading, and what additional facts Plaintiffs employ to reach this conclusion.

9    In their claim for relief, Plaintiffs state: "KPMG did not make a reasonable

10   investigation and did not possess reasonable grounds for believing that its

11   representations in its audit opinions and SouthWest's financial statements for

12   2004, 2005, 2006 and 2007 were true, did not omit any material facts and were

13   not materially misleading." (CAC ¶ 215.)  To find support for this allegation, one

14   must sift through the disjointed allegations against KPMG.  (*See*, *e.g.*, CAC ¶¶

15   179–80.)  For example, Plaintiffs allege that KPMG violated various professional

16   standards such as Generally Accepted Auditing Standards.  These allegations,

17   however, are conclusory and do not allege with particularity that any opinions by

18   KPMG were objectively and subjectively false or misleading.  (*See* CAC ¶¶

19   181–82 (listing standards in bullet points and baldly asserting that they are false.)

20   The closest Plaintiffs come to alleging objective and subjective falsity is an

21   allegation hinting that KPMG's 2004 pre-class assessment of SWWC's material

22   weaknesses somehow imparts subjective falsity onto KPMG's opinions regarding

23   class-period deficiencies.  (*See generally* CAC ¶¶ 185–90.)  This kind of

24   allegation is too speculative to form the basis of a Section 11 cause of action.

25          Plaintiffs also employ the tactic of block quoting swaths of KPMG's

26   opinions on matters such as the adequacy of SWWC's internal controls.  The

27   CAC then "cross-pleads" to other portions of the CAC to describe how KPMG's

28   opinions were false and misleading.  (*See* CAC ¶ 112–13.)  However, the cross-

1   referenced allegations do nothing more than refer to the restatement of SWWC's

2   financials, which gives no indication as to the objective or subjective nature of

3   KPMG's *opinions*.[3]

4       If Plaintiffs' allegations against KPMG are included in an amended

5   pleading, they must meet the heightened pleading requirements for auditors.

6   **4. Allegations Against SWWC**

7       Plaintiffs allege that "[Southwest] Defendants' liability under [section 11]

8   is predicated on the negligence of each Defendant in making statements and

9   omissions in the Registration Statements, which contained untrue statements and

10  omissions of material fact." (CAC ¶ 197.)  Plaintiffs' Section 11 allegations

11  related to statements made by SWWC, however, are presented in a manner that

12  makes it nearly impossible to discern which statements are alleged to be false.

13  (*See generally* CAC ¶¶ 71–195.)  The CAC eschews specificity by block quoting

14  SEC reports, accounting treatises, and the restatement, followed by vague

15  references to other portions of the CAC meant to indicate falsity.

16      To provide an example, under the heading titled "Untrue Statements of

17  Material Fact in Registration Statements," there appear only shell delineations of

18  which statements are false.  Part of the difficulty is that the reader must look up

19  cross-referenced portions of the CAC in order to discern which statements are

20  false and thus solve the proverbial puzzle presented by the CAC.  Plaintiffs quote

21  statements from the 2005 10-k regarding, *inter alia*, GAAP compliance.  (CAC ¶

22  93.)  In the next paragraph, Plaintiffs follow up with meandering cross-references

23  to various other portions of the CAC as proof of falsity, including six CAC cross-

24  references.  (CAC ¶ 94.)

25      Even more vexing is the CAC's tactic of inserting lengthy block quotes and

26  stating that the whole passage is materially false.  Then, when explaining why the

27  _____

28      [3]This "puzzle pleading" tactic shall be addressed in greater detail *supra*.

17

passage is false, the CAC broadly asserts that "at least the following" sampling of statements are false, without specifying exactly which purported statements show falsity.  For example, the CAC puts forth a very lengthy block quote from the 2005 10-K's "Report of Management On Internal Control Over Financial Reporting," which contains general statements that internal controls were effective.  (CAC ¶ 95.)  The CAC then presents the following:

> The immediately preceding statements were materially false and misleading when made for ***at least the reasons*** stated at *supra* ¶¶ 162–171,173, including that as contained in the 2008 10-K there were at least 15 material weaknesses in internal controls over financial reporting existing at December 31, and earlier, which caused massive restatements to the Company's financial statements for the years ended December 31, 2004, 2005, 2006, and 2007 and all interim periods included within those years and for the 2008 quarters ended March 31, 2008 and June 30, 2008.  Thus, ***at least the following statements*** contained in the foregoing quoted report were false and misleading when made[.]

(CAC ¶ 96; emphasis added.)  Thus, it is not even clear which statements Plaintiffs have elected to extract from the aforementioned block quote.

These problems make the task of sifting through the CAC overly burdensome for the Court and Defendants.  Ultimately, because the Court cannot decipher valid Section 11 claims from the CAC, the Court hereby DISMISSES these claims WITHOUT PREJUDICE.

## IV.  SECTION 10 CLAIMS

In the second half of the CAC, Plaintiffs claim that the SouthWest Defendants knowingly made material misrepresentations in their SEC filings during the class period.  The CAC, in both its Section 10 and Section 11 allegations, plainly violates Rule 8's requirement that pleadings include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. Proc. 8(a)(2).  The CAC, with its ***more than fifty*** lengthy block quotes from which the reader must divine relevant information, does not even come close to satisfying this standard.  The CAC—even given the complex nature

of a securities class action—is dismissible on this ground alone, but the Court will briefly address why the CAC's organization also does not comply with the PLSRA requirements.

**A. Heightened Pleading Requirement**

Generally, Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder "prohibit[] any person from using or employing any 'manipulative or deceptive device' in connection with the sale of a security." *In re Verifone Securities Litigation*, 11 F.3d 865, 868 (9th Cir. 1993) (citing 17 C.F.R. § 240.10b-5); *see also Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157, 128 S.Ct. 761, 768 (2008) ("Rule 10b-5 encompasses only conduct already prohibited by §10(b)."). A violation of Section 20(a) of the 1934 Act requires: "(1) a primary violation of federal securities laws . . . and (2) that the defendant exercised actual power or control over the primary violator." *Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). A primary violation consists of the "transactions giving rise to the alleged securities violation." *Id.* (internal citations omitted). Accordingly, if the CAC fails to articulate a Section 10(b) claim, Plaintiff's Section 20(a) claim must also be dismissed.

"In a typical §10(b) private action a plaintiff must prove (1) a material misrepresentation or omission by the defendant;[4] (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge*, 128 S. Ct. at 768. Regarding the scienter requirement, the Ninth Circuit has also explained that the required state of mind consists of defendants acting "with the intent to deceive or with deliberate recklessness as to the possibility of misleading investors." *Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982, 987 (9th Cir. 2008). In *Tellabs, Inc. v.*

---

[4]This requirement is also referred to as the "falsity" requirement.

1
2
3
4
5
6
7

*Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314, 127 S. Ct. 2499, 2504–05 (2007), the Supreme Court ruled that "[i]t does not suffice that a reasonable factfinder plausibly could infer from the complaint's allegations the requisite state of mind.  To qualify as 'strong' within the intendment of § 21D(b)(2), . . . an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."[5]

8

**B. Organization of the CAC/Puzzle Pleading**

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

The organizational problems set forth by the Court in the Section 11 discussion apply to the Section 10 causes of action as well.  The predominant problem with the CAC is inadequate organization and insufficient specificity to plead adequately falsity and the requisite level of scienter.  The Court will not in this Order undertake the unnecessary burden of assessing each of the Section 10 allegations and the corresponding deficiencies.  *See In re Autodesk, Inc. Securities Litigation,* 132 F. Supp. 2d 833, 842 (N.D. Cal. 2000) ("The court is unwilling . . . to search through the 51-page CAC as plaintiffs' counsel suggested, and also finds that it would be unfair to compel defendants to do so.  As the Ninth Circuit explained, '[a] complaint is not a puzzle . . . and we are loathe to allow plaintiffs to tax defendants, against whom they have leveled very serious charges, with the burden of solving puzzles in addition to the burden of formulating an answer to their complaint.'") (quoting *In re GlenFed Sec. Litig*, 42 F.3d 1541, 1554 (9th Cir. 1994)); *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1244 (N.D. Cal. 1998) (citing several "securities class action complaints, [in which] courts have repeatedly lamented plaintiffs' counsels' tendency to place the burden [ ] on the

25

26
27
28

[5]*Tellabs* suggests that while a high level of detail is required under the PSLRA, a court should look to the complaint as a whole, not to each individual scienter allegation[.]  Thus, *Tellabs* counsels us to consider the totality of circumstances, rather than to develop separately rules of thumb for each type of scienter allegation."  *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).

reader to sort out the statements and match them with the corresponding adverse facts to solve the 'puzzle' of interpreting Plaintiffs' claims" and refusing to do so where the plaintiff "failed to craft a Complaint in such a way that a reader can, without undue effort, divine why each alleged statement was false or misleading") (internal citations and quotations omitted).

Similar to the method used in their Section 11 allegations, Plaintiffs block quote large portions of SWWC's SEC filings, followed by blanket statements from the restatement announcement, and cross-reference other portions of the CAC.  Plaintiffs lay out a separate scienter section, CAC ¶¶ 419–88, making the fatal mistake of referring to defendants in the collective rather than asserting, for each defendant, how *his or her* particular statement was false and misleading at the time it was made and any attendant strong inference of scienter.  This is imperatively necessary in a case like this where the tenures of the individual defendants varied across the class period and the time during which the SEC filings were made.  In all future pleadings, the Plaintiffs must respond to the heightened pleading requirement, not with four-page block quotes, *see* CAC ¶ 466, but with a brief, succinct description of how scienter applies to *each* defendant in this matter.

The Section 10 claims are hereby DISMISSED WITHOUT PREJUDICE.

**C.  Claim 20(a) Claim**

Because the factual allegations in the CAC are not sufficient to articulate Section 10-b and Rule 10b-5 claims against Defendants, it follows that the Motion to Dismiss is also granted as to Plaintiff's Section 20(a) claims.

21

**D.  Leave to Amend**

The CAC is dismissed in its entirety.  Plaintiffs are hereby ordered to *strictly adhere to Rule 8(a)'s requirements* in any amended pleadings.  The amended complaint must contain a succinct, terse statement of each allegation.  Furthermore, Plaintiffs are instructed to adhere to the following instructions:

• Regarding the Section 11 allegations against KPMG, Plaintiffs must specifically set out how KPMG's *opinions* are false and misleading.

• Regarding all allegations, Plaintiffs must only reference the specific statements alleged to be false and misleading and not issue blanket, block quotes as a substitute for specific allegations.

• Excise all quotations and extraneous information not directly related to a specific count in the complaint.

**V.  CONCLUSION**

Defendant SWWC's Motion for Partial Summary Judgment is DENIED.  SouthWest Defendants' and KPMG's Motions to Dismiss the Consolidated Class Action Securities Complaint are GRANTED, and the Court DISMISSES WITHOUT PREJUDICE the CAC in its entirety.  Plaintiffs may file an amended complaint strictly adhering to the instructions of this Order by no later than **July 30, 2010**.  Failure to do so will result in this action being DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: June 30, 2010.

_____
Hon. Jacqueline H. Nguyen
UNITED STATES DISTRICT COURT